**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:

ACE American Insurance Corporation, a Pennsylvania corporation; Indemnity Insurance Company of North America, a Pennsylvania corporation; National Surety Corporation, an Illinois corporation; the American Insurance Company, an Ohio corporation;

        Plaintiffs,

v.

Aurora Organic Dairy Corporation, a Colorado corporation,

        Defendant.

**COMPLAINT FOR DECLARATORY RELIEF**

Plaintiffs, ACE American Insurance Corporation, Indemnity Insurance Company of North America, National Surety Corporation, and The American Insurance Company, for their Complaint for Declaratory Relief, state and alleges as follows:

1. Plaintiff ACE American Insurance Company ("ACE") is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.

2. Plaintiff Indemnity Insurance Company of North America ("IICNA") is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.

3. Plaintiff National Surety Corporation ("NSC") is an Illinois corporation with its principal place of business in Chicago, Illinois.

4. Plaintiff The American Insurance Company ("AIC") is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

5. Collectively ACE, IICNA, NSC, and AIC are referred to in this Complaint as the Insurers.

6. Aurora Dairy Corporation ("Aurora") is a Delaware corporation with its principal place of business in Colorado.

## JURISDICTION

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The Insurers and Aurora do not share a common state residence and the amount in controversy exceeds $75,000. The Insurers seek a declaration of their rights pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*

## BACKGROUND

8. Aurora is in the business of processing milk that has been certified as "organic." Through its dairy processing business, Aurora supplies milk that has been certified as organic to retailers. On information and belief, Aurora sells the milk it processes and

certifies as organic to retailers. The retailers then sell the milk under their own store brand or label.

9. Aurora has been named as a defendant in numerous consumer class actions in which the named plaintiffs seek certification of statewide and nationwide classes of individuals claiming to have sustained an economic loss because they paid a higher price for the milk processed by Aurora based on the allegedly false certification that it was "organic." It is alleged that because of the allegedly false certification that the milk was organic Aurora obtained more revenue for the milk than it would have obtained for non-organic milk. The plaintiffs in the pending class actions claim that Aurora has been "unjustly enriched" and should be required to disgorge to the class members the amount paid to purchase the milk that was falsely represented to be "organic." Aurora has requested that the Insurers provide it with a defense in the pending consumer class actions.

10. ACE, IICNA, and NSC have agreed to provide a defense to Aurora in the action captioned: <u>Katherine Mothershead and Leonie Lloyd v. Aurora Dairy Corporation d/b/a Aurora Organic Dairy</u>, Case No. 4:07-cv-01701, U.S.D.C. for the Eastern District of Missouri, filed October 7, 2007 (the "<u>Mothershead</u> action"). A true and correct copy of the Complaint in the <u>Mothershead</u> action is attached as Exhibit A to this Complaint.

11. In the <u>Mothershead</u> action ACE, IICNA and NSC reserved the right to deny coverage and withdraw from the defense based on certain terms and conditions of their

respective insurance contracts. The Insurers also reserved the right to recover back defense costs incurred if it is determined they had no duty to defend.

12.     To date, Aurora has not responded to the offers made by ACE, IICNA, and NSC to defend it in the Mothershead action.

13.     In this action the Insurers are seeking a declaration that they have no obligation to defend or indemnify Aurora in the Mothershead action.

## THE CGL POLICIES

14.     For the policy period August 1, 2002 – August 1, 2003, ACE provided general liability coverage to Aurora through policy number FO-139293, a copy of which is attached as Exhibit B. The general liability coverage issued to Aurora was renewed by ACE for the policy period August 1, 2003 – August 1, 2004 through the same policy number, FO-139293. During both policy periods, the coverage was subject to a $1,000,000 "each occurrence" limit of liability and a $2,000,000 aggregate.

15.     For the policy period August 1, 2002 – August 1, 2003, IICNA provided general liability coverage to Aurora through policy number FO-139292, a copy of which policy is attached as Exhibit C. For the policy period August 1, 2003 – August 1, 2004, IICNA provided general liability coverage to Aurora through policy numbers FO-146246 and FO-146297, copies of which are attached as Exhibits D and E, respectively. During both policy periods, the coverage was subject to a $1,000,000 "each occurrence" limit of liability and a $2,000,000 aggregate.

4

16. For the policy period May 1, 2005 – May 1, 2006, NSC provided general liability coverage to Aurora through policy number S 86 MXX 80843533. The general liability coverage issued to Aurora was renewed by NSC for the policy period May 1, 2006 – May 1, 2007 through policy number S 86 MXX 80859105. During both policy periods, the coverage was subject to a $1,000,000 "each occurrence" limit of liability and a $2,000,000 aggregate. Attached as Exhibit F is a true and correct copy of policy number S 86 MXX 80843533. Attached as Exhibit G is a true and correct copy of policy number S 86 MXX 80859105.

17. The policies discussed in Paragraphs 14, 15 and 16 are referenced collectively in this Complaint as "the CGL Policies."

## COVERAGE UNDER THE CGL POLICIES

18. The relevant policy language included in each of the CGL Policies is identical and is being discussed collectively herein.

19. The insuring agreement that applies to "bodily injury" and "property damage" under the CGL Policies provided:

**Section I – Coverages**

**Coverage A Bodily injury and Property Damage Liability**

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or

>     **property damage** to which this insurance applies.  We will have the right and duty to defend the insured against any **suit** seeking those damages.  However, we will have no duty to defend the insured against any suit seeking damages for **bodily injury** or **property damage** to which this insurance does not apply.  We may at our discretion investigate any **occurrence** and settle any claim or **suit** that may result.  But:
>
>     (1)   The amount we will pay for damages is limited as described in Section III - Limits of Insurance; and
>
>     (2)   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
>
>   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.
>
>   b.   This insurance applies to **bodily injury** and **property damage** only if:

6

(1) The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**;

(2) The **bodily injury** or **property damage** occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is an Insured and no **employee** authorized by you to give or receive notice of an **occurrence** or claim, knew that the **bodily injury** or **property damage** had occurred, in whole or in part.  If such a listed insured or authorized **employee** knew, prior to the policy period, that the **bodily injury** or **property damage** occurred, then any continuation, change or resumption of such **bodily injury** or **property damage** during or after the policy period will be deemed to have been known prior to the policy period.

20. To fall within this insuring agreement to the CGL Policies the following requirements must be met:

7

- ▫ The insured must be legally required to pay damages as a result of "bodily injury" or "property damage" caused by an "occurrence";
- ▫ The "bodily injury" or "property damage" must occur during the policy period; and
- ▫ Prior to the policy period no insured can have had knowledge of the "bodily injury"; "property damage"; "occurrence"; "claim"; or "suit".

21. Coverage under the CGL Policies is provided only for "damages." The amounts sought by the plaintiffs in the underlying <u>Mothershead</u> action representing disgorgement or restitution do not constitute "damages" covered by the CGL Policies.

22. The term "property damage" in the CGL Policies is defined as follows:

> 17. **Property damage** means:
> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

8

23.     The economic losses complained of by the plaintiffs in the <u>Mothershead</u> action were not the result of physical damage to or loss of use of tangible property.

24.     The term "bodily injury" is defined in the CGL Policies as follows:

> 3.     **Bodily injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

25.     No plaintiff in the <u>Mothershead</u> action alleges that he or she sustained "bodily injury," "sickness" or "disease" as a result of Aurora's false certification that the milk it processed was "organic."

26.     The term "occurrence" is defined in the CGL Policies as follows:

> 13.    **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

27.     The Plaintiffs in the <u>Mothershead</u> action do not allege that they sustained "bodily injury" or "property damage" as a result of an "accident."

28.     The CGL Policies incorporate the following exclusion:

This insurance does not apply to:

> a.     Expected or Intended Injury
>
> **Bodily injury** or **property damage** expected or intended from the standpoint of the insured.  This exclusion does not apply to **bodily**

9

        **injury** resulting from the use of reasonable force to protect persons or property.

29.    To the extent damages were sought in the <u>Mothershead</u> action for "bodily injury" or "property damage" the exclusion for "bodily injury" or "property damage" that is expected or intended would preclude coverage.

30.    The insuring agreements in the CGL Policies that apply to the "personal injury and advertising injury" provide:

    **Coverage B Personal and Advertising Injury Liability**

    1.    **Insuring Agreement**

        a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of **personal and advertising injury** to which this insurance applies. We will have the right and duty to defend the insured against any **suit** seeking those damages. However, we will have no duty to defend the insured against any **suit** seeking damages for **personal and advertising injury** to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or suit that may result. But:

            (1)    The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

10

    (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

  b. This insurance applies to **personal and advertising injury** caused by an offense arising out of your business but only if the offense was committed in the **coverage territory** during the policy period.

31. The term "personal and advertising injury," is defined in the CGL Policies as follows:

  14. **Personal and advertising injury** means injury, including consequential **bodily injury**, arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or

11

        premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.    Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f.    The use of another's advertising idea in your **advertisement**; or

    g.    Infringing upon another's copyright, trade dress or slogan in your **advertisement**.

32.    No damages are sought in the <u>Mothershead</u> action for "personal and advertising injury" as those terms are defined in the CGL Policies.

33.    The CGL Policies incorporate the following exclusion:

This insurance does not apply to:

    g.    Quality or Performance of Goods - Failure to Conform to Statements

**Personal and advertising injury** arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your **advertisement**.

12

34.     To the extent damages were sought in the <u>Mothershead</u> action for "personal and advertising injury" the exclusion for Quality or Performance of Goods would preclude coverage.

## **THE AIC COVERAGE**

35.     AIC provided liability coverage to Aurora and certain related entities under policy number 643 FRM8025025, issued to Aurora Dairy Corp. for the period June 1, 2005 – June 1, 2006.  This policy was subject to a $1,000,000 limit of liability that applied to each occurrence and a $2,000,000 aggregate.  Policy number 643 FRM0664651 was issued to Aurora Organic Dairy of Texas, Inc., Aurora Dairy Corp., and TXAGR Real Estate Holdings, LLC for the period June 1, 2005 – June 1, 2006.  Policy number 643 FRM0664651 was subject to a $1,000,000 limit of liability that applied to each occurrence and a $2,000,000 aggregate.  Policy number 643 FRM80253328 was issued to Aurora Dairy Corp. for the period June 1, 2006 – June 1, 2007 and was subject to a $1,000,000 limit of liability that applied to each occurrence and a $2,000,000 aggregate.  Policy number 643 FRM06646251 was issued to Aurora Organic Dairy of Tx., Inc., Aurora Dairy Corp. and TXAGR Real Estate Holdings, LLC for the period June 1, 2006 – June 1, 2007 and was subject to a $1,000,000 limit of liability that applied to each occurrence and a $2,000,000 aggregate.  The policies described in this Paragraph will be referenced in this Complaint as the AIC Policies.

36.     The insuring agreement and definitions found in the AIC Policies do not differ materially from the insuring agreement and definitions in the ACE, IICNA, and NSC policies. In addition, the AIC Policies incorporate the following exclusion:

This insurance does not apply to:

> i.   Business Pursuits
>
>> **Bodily injury** or **property damage** arising out of or in connection with a business engaged in by an **insured**. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the business.
>>
>> This exclusion does not apply to an insured minor involved in self-employed business pursuits that are occasional or part-time and customarily undertaken on that basis by minors.

37.     The term "business" is defined in the AIC Polices as follows:

> 3.   **Business** means a trade, profession, occupation, enterprise or activity, other than **farming** or **custom farming**, which is engaged in for the purpose of monetary or other compensation

38. Aurora's potential liability in the Mothershead action arises out of the certifications it made as a processor and wholesaler of organic milk. The "Business Pursuits" exclusion in the AIC Policies precludes coverage for the relief sought in the Mothershead action.

## THE CONTROVERSY

39. There is a real and justiciable controversy between Aurora and the Insurers as to whether or not the relief sought in the Mothershead action is potentially covered. On information and belief Aurora contends that ACE, IICNA and NSC are obligated to provide it with a defense in the Mothershead action. The Insurers contend that the relief requested in the Mothershead action is not covered and they have no obligation to defend Aurora.

## RELIEF REQUESTED

40. ACE, IICNA, NSC, and AIC incorporate by reference the allegations set out in paragraphs 1 - 39 of this Complaint.

41. ACE, IICNA NSC, and AIC seek a declaration that they have no duty to defend or indemnify Aurora in the Mothershead action under the commercial liability policies described in this Complaint.

**WHEREFORE**, ACE, IICNA, NSC, and AIC request:

    1.    A declaration that they have no duty to defend or indemnify Aurora in the Mothershead action;

2. A declaration that they are entitled to recover back any amounts paid to defend Aurora in the <u>Mothershead</u> action; and

3. Such other and further relief as this Court may deem just and appropriate.

Respectfully submitted this 9th day of June, 2008.

SANDERS & PARKS, P.C.

By  s/ Garrick L. Gallagher
Garrick L. Gallagher
Garrick.Gallagher@SandersParks.com
Debora L. Verdier
Debora.Verdier@SandersParks.com
1300 SCF Tower
3030 North Third Street
Phoenix, Arizona  85012-3099
(602) 532-5600
Attorneys for ACE and IICNA

and

HINSHAW & CULBERTSON, L.L.P.

By  s/ Bethany K. Culp
Bethany K. Culp
bculp@hinshawlaw.com
Paulette S. Sarp
psarp@hinshawlaw.com
333 South Seventh Street, Suite 2000
Minneapolis, Minnesota  55402
(612) 334-2596
Attorneys for NSC and AIC

121208302v1 882500