**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KRISTINE MOTHERSHEAD and | ) | |
| LEONIE LLOYD, | ) | |
| Individually and on behalf of all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Cause No.: |
| | ) | |
| v. | ) | Division: |
| | ) | |
| AURORA DAIRY CORPORATION, | ) | |
| d/b/a Aurora Organic Dairy | ) | JURY TRIAL DEMANDED |
| **Serve:** | ) | |
| The Corporation Trust Company | ) | |
| Corporation Trust Center, 1209 Orange St. | ) | |
| Wilmington, DE 19801 | ) | |
| | ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

COME NOW Plaintiffs, individually and on behalf of a similarly situated class, and for their Class Action Complaint, by and through their attorneys, state that Aurora Dairy Corporation, doing business as Aurora Organic Dairy (hereinafter "Aurora") committed unfair and deceptive practices and was unjustly enriched by marketing and selling milk alleged to be organic, at prices much higher than non-organic milk, when Defendants knew or should have known that its milk did not meet the standards of organic certification.

## PARTIES

1. Plaintiff Kristine Mothershead is a resident of the City of St. Louis, Missouri.

2. Plaintiff Leonie Lloyd is a resident of the City of St. Louis.

3. Aurora is incorporated in Delaware and has its principle place of business in Colorado.

1

4. Aurora was founded by Mark Retzloff and Marc Peperzak in 2003. Boht Retzloff and Peperzak were former stakeholders in Horizon, another large factory organic milk producer. This year, Aurora is expected to have over $100 million in sales.

5. Store brand labels, like those produced by Aurora, account for about 10% of the total organic milk sold in the United States annually. Organic milk accounts for about 3% of all milk sales.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction in that the amount in controversy exceeds $5 million and Plaintiffs and Defendant are diverse in citizenship. 28 U.S.C.A. 1332(d)(2)

7. This Court has personal jurisdiction over Defendant because it engaged in the transaction of business within the Missouri, introduced products into the stream of commerce throughout Missouri, engaged in illegal activities in Missouri, and should have reasonably anticipated being subject to the jurisdiction of Missouri courts.

8. Venue is appropriate in this Court because Plaintiffs purchased the milk in St. Louis County and Defendant transacts business within this district, including the City of St. Louis and St. Louis County. A substantial part of the events occurred in this district. 28 U.S.C.A. 1391(a).

## JURY TRIAL DEMANDED

9. For all Counts in this Complaint, Plaintiffs seek a jury trial for all appropriate issues.

## GENERAL ALLEGATIONS

10. Ms. Mothershead purchased Kirkland Signature Organic milk from Costco, located at 4200 Rusty Rd, St Louis, MO 63128.

11. Ms. Mothershead has three small children who consumed the milk she purchased.

12. Ms. Mothershead began purchasing the Aurora produced milk approximately two years ago.

13. The milk was sold in a "three-pack" of half-gallon containers.

14. The Kirkland Signature milk purchased by Ms. Mothershead was produced by Aurora and sold under Costco's independent label.

15. Ms. Mothershead has purchased at least 30 gallons of milk produced by Aurora in the last two years.

16. She began purchasing Kirkland Signature Organic milk from Costco, 4200 Rusty Rd, St Louis, MO 63128,  approximately two years ago.

17. The milk was shared with her two young children.

18. The milk was sold in a "three-pack" of half-gallon containers.

19. The Kirkland Signature milk purchased by Ms. Lloyd was produced by Aurora and sold under Costco's store label.

20. Ms. Lloyd, in the last two years, has purchased at least one hundred and fifty gallons of milk produced by Aurora.

21. Ms. Lloyd washes out the cartons of milk and builds "blocks" out of them as toys for her children.  Two cartons produce one block. In approximately the last three months, Ms. Lloyd has purchased enough milk to allow her kids to produce 50 blocks.  Various photos of a sample container of milk produced by Aurora and purchased by Ms. Lloyd are

3

included as **Exhibits A-B**.  A photo of the "blocks" used by her children is included as **Exhibit C.**  Sample receipts containing proof of Ms. Lloyd's purchases are included as **Exhibit D.**

22. Both Ms. Lloyd and Ms. Mothershead purchased organic milk because they did not desire to ingest non-organic milk and did not wish to expose their families to non-organic milk.

23. Both Ms. Lloyd and Ms. Mothershead purchased organic milk, believing that such milk was produced in a way that promoted healthy and humane treatment of dairy cows.

24. Aurora is the country's largest private-label producer of organic milk and packages store-brand organic dairy products for Wal-Mart, Costco, Target, Safeway, Wild Oats, Publix and other grocery chains.

25. Aurora sells milk to other stores, but these stores sell the milk under their own store brand.

26. For example, Costco sells organic milk under its own label, Kirkland Signature.  The milk is produced by Aurora and distributed to Costco.  Aurora represents to Costco and Plaintiffs and Class that the milk is "organic."

27. Aurora is a newcomer to the organic dairy industry, beginning its operations in 2003.

28. Aurora's business model was to take traditional confinement dairies and convert them to organic dairies.

29. Aurora, as part of its development, purchased land in Platteville, Colorado.  It began operating a dairy farm in Platteville that consisted of approximately 4,200 cows.

30. The Platteville facility consisted of approximately 200 acres of farmland.

31. Aurora has additional dairies in Dublin, Texas and throughout Colorado.  The Dublin Facility at one time contained approximately 3,200 cows.

32. Aurora processes all of its milk in its milk plant located next to its Platteville, Colorado dairy farm.  Milk from the other ranches is transported to the Platteville facility by refrigerated trucks.

33. The milk is pasteurized, or ultra-pasteurized, processed into whole, 2%, 1% or skim milk, and "bottled" into half-gallon cartons.

34. In addition to providing labels for other stores, Aurora has its own label, High Meadows.  Upon information and belief, much of this milk is distributed through Publix.

35. All milk sold by Aurora is labeled and advertised as "organic."

36. Aurora actively markets the benefits of "organic" products on its website.  See, for example, http://www.auroraorganic.com/aodweb/site/itemcontent.aspx?icategoryid=6.

37. Aurora suggests that organic production benefits small farmers and preserves rural communities.

38. Aurora sells its milk at a lower price than almost all organic producers, large and small, and has allowed store labels to be sold at prices lower than those charged by other organic producers or distributors.

39. Aurora milked its cows three times per day and kept them confined in feed lots.

40. Small organic farmers generally milk their cows twice a day and allow them to graze.

41. Aurora's immense production of "organic" milk has glutted the market, driven down prices, and made it difficult for small farmers who produce real organic milk to compete.

42. Aurora was able to charge lower prices for its milk because it did not obey the rules regarding organic certification.

43. Scientific research has consistently confirmed that free grazing cows produce a higher quality and more nutritious milk than cows that are confined to feed lots. This is true even if the cows in the lots are fed organic grains.

44. Aurora's certification for its dairy farms was provided by Quality Assurance International (hereinafter "QAI").

## **AURORA'S ALLEGED ILLEGAL ACTIVITY**

45. Upon information and belief, Aurora has engaged in a number of activities which violate the standards for organic milk production as set out in  the Organic Food Products Act of 1990 (OFPA), as amended (7 U.S.C. 6501 et seq.) and the regulations pertaining to the Act, (7 C.F.R. 205.1 *et seq.*)

46. Various organic watchdog groups have voiced similar concerns, including the Cornucopia Institute and the Organic Consumers Association.

47.  The USDA has investigated Aurora and found significant problems.

48. Despite federal law outlining the requirements for organic certification of milk, despite complaints by non-profit groups and despite extended investigations, upon information and belief, Aurora, beginning in 2003 and continuing through the present, has continually labeled milk as "organic" when in fact it does not comply with organic requirements.

49. Specifically, upon information and belief, Aurora has violated organic certification standards in the following ways.

50. Aurora failed to provide a total feed ration that included pasture, failed to establish and maintain appropriate pasture conditions and failed to establish and maintain access to pasture, thereby violating 7 C.F.R. §§ 205.237(a), 205.238(a)(3) and 205.239(a)(2).

51. Aurora allowed conventional cows to be milked as organic before the cows completed the required one-year period of continuous organic management and purchased other conventional cows that had not been under organic management from at least the last third of gestation, thereby violating 7 C.F.R. § 205.236(a)(2).

52. Aurora often allowed "organic" cows to be managed at non-organic ranches, and then returned the cows to Aurora facilities for milking, thereby violating 7 C.F.R. §§ 205.236(b)(1).

53. At multiple facilities, Aurora used non-organic bedding materials for its cattle (which are animals which sometimes consumer their bedding), thereby violating 7 C.F.R. § 205.239(a)(3).

54. Aurora also failed to

   a)  maintain and provide adequate documentation to assure compliance with organic standards regarding things such as utilization of off-site facilities for management of cattle;  and

   b)  provide notice to certifying bodies regarding changes to its approved Organic System Plans.

55. Because of the actions described above, the milk produced by Aurora was not organic.

56. As such, Aurora mislabeled milk as organic when it was not.  This is a violation of the National Organic Program (NOP) regulations, (7 C.F.R. part 205), and constitutes a willful violation of 7 C.F.R. §§ 205.102, 205.200 and 205.400(a).

57. Some of the illegal activity engaged in by Aurora has been investigated by the USDA and non-profit organizations.

58. Despite these investigations, and clear evidence that Aurora willfully or negligently sold milk as "organic" when it was not, Aurora has taken no action to refund to consumers the profits it gained from representing that its milk was organic since 2003.

59. Upon information and belief, the mark-up that Aurora was able to gain from the sale of "organic" milk was significant, totaling millions of dollars per year.

## COUNT I
## UNJUST ENRICHMENT
### On Behalf of a Nationwide Class

60. Plaintiffs and Class hereby incorporate all preceding paragraphs as if fully stated herein.

61. Plaintiffs and Class paid prices for Defendant's milk that were much higher than the prices of non-organic milk.

62. Plaintiffs and Class did not receive organic milk in exchange for the price they paid.

63. The money received by Defendant from members of the proposed class, totaling tens of millions of dollars, constituted a benefit to Defendant.

64. Defendant knowingly received money from Plaintiffs and Class as result of the sale of its milk, which Defendant knew was not organic

65. Because the milk sold by Defendant was not organic, but was represented to be organic, it would be unjust for Defendant to retain the profits from the sale of its milk to Plaintiffs and Class.

66. The retention of the money by the Defendant is unfair to plaintiffs. To allow Defendant to retain those ill-gotten monies would constituteddamages to Plaintiffs and Class.

67. Plaintiffs and Class are entitled to restitution for any money they paid when they believed that they were buying organic milk produced by Defendant, when they were actually buying non-organic milk.

68. Plaintiffs and Class seek restitution as set out in the "Prayer for Relief – Count I" of this Complaint.

## CLASS ALLEGATIONS FOR COUNT I

69. Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant Federal Rule of Civil Procedure 23. The claims in Count II asserted are brought on behalf of a nationwide class of consumers.

70. The class is defined and described as follows:

> **All persons who, in the United States, since January 1, 2003, purchased milk which was produced by Aurora and contained, anywhere on the carton or container, the word "organic."**
>
> Excluded from the proposed class are Defendant and its officers, directors, and employees, as well as employees of any of defendant's subsidiaries, affiliates, successors or assignees.  Also excluded are the immediate family members of the above persons.  Also excluded is any trial judge who may preside over this case.

71. The requirements for maintaining this action as a class action are satisfied, as set forth immediately below:

72. The proposed class is so numerous and so geographically dispersed that the individual joinder of all absent class members is impracticable. While the exact number of absent class members is unknown to Plaintiffs at this time, it is ascertainable by appropriate discovery and Plaintiffs, upon information and belief, alleges that the proposed class may include thousands of members. The requirement of numerosity is therefore satisfied.

73. Common questions of law or fact exist as to all proposed class members and predominate over any questions which affect only individual members of the proposed class. These common questions of law or fact include:

    a.   Whether Defendant failed to provide a total feed ration that included pasture;

b.    Whether Defendant entered conventional dairy animals into organic milk production before they completed one year of continuous organic management;

c.    Whether Defendant labeled and represented milk as organically produced when such milk was not produced and handled in accordance with the National Organic Program regulations;

d.    Whether Defendant failed to maintain adequate records under NOP regulations;

e.    Whether all milk produced by Aurora was tainted;

f.    Whether Aurora misrepresented its milk to the retailers and customers who purchased it;

g.    Whether Plaintiffs and Class were damaged by paying organic prices for non-organic milk;

h.    Whether Defendant's milk was "organic."

i.    Whether Plaintiffs and Class are entitled to damages;

j.    Whether Defendant's conduct rises to the level of willfulness so as to justify punitive damages;

k.    Whether an injunction in necessary in order to prevent Aurora from continuing to engage in illegal activity.

74. The claims of the Plaintiffs are typical of the claims of the class.  Plaintiffs purchased milk produced by Aurora that was labeled organic.  Plaintiffs paid a higher price for the "organic" milk than they would have for non-organic milk.

75. Plaintiffs will fairly and adequately represent the interests of the members of the class. Plaintiffs have no interest adverse to the interests of the members of the class. Plaintiffs have retained competent attorneys who have experience in class action litigation.

76. A class action is a superior method for the fair and efficient adjudication of this controversy. The adjudication of a separate action by individual members of the class would create a risk of a) inconsistent or varying adjudications with respect to individual members of the class; or b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.  Upon information and belief, Aurora has provided its falely labeled milk to hundreds of thousands, perhaps millions, of individuals.  In addition, a nationwide class will allow for the resolution of identical claims in an efficient manner that avoids fragmented state-by-state litigation in which inconsistent results could occur.  There is no meaningful deviation between unjust enrichment laws throughout the country.

77. Questions of law or fact common to the members of the class predominate over any questions affecting only individual members.  There is no special interest in the members of the class individually controlling the prosecution of separate actions; the damages sustained by individual class members is relatively small; and the expense and burden of individual litigation make it impossible for the class members individually to address the wrongs done to them.

78. There will be no difficulty in managing this lawsuit as a class action. Evidence relating to Aurora's alleged violations will be applicable to all members of the class; there are accepted means for notifying class members who purchased the milk in question and much of the evidence regarding the alleged violations has been chronicled by governmental and non-profit agencies.

## PRAYER FOR RELIEF – COUNT I

Plaintiffs and Class request that the Court enter judgment in their favor and against Defendant as follows:

a.  Ordering that this action be maintained as a class action pursuant to this Court's powers under Federal Rule of Civil Procedure 23(c) and defining the class as:

> **All persons who, in the United States, since 2003, purchased milk which was produced by Aurora and contained, anywhere on the carton or container, the word "organic."**
> Excluded from this proposed class are defendant and its officers, directors, and employees, as well as employees of any of defendant's subsidiaries, affiliates, successors or assignees. Also excluded are the immediate family members of the above persons. Also excluded is any trial judge who may preside over this case.

b.  Ordering that Defendant disgorge all money paid by Plaintiffs and Class for Defendant's fake organic milk , returning such money to the Plaintiffs and the Class;

c.  Certifying Plaintiffs as class representatives and appointing Plaintiffs' counsel as counsel for the Class;

d.  Awarding Plaintiffs and Class compensatory damages, to include any fees and interest illegally charged, and further awarding any damages caused by such payments;

e.  Awarding Plaintiffs and Class their consequential and incidental damages;

f.  Awarding Plaintiffs and Class pre-judgment and post-judgment interest as provided by law;

g.   Awarding Plaintiffs and Class punitive damages as provided by law;

h.   Imposing a constructive trust and equitable lien against all money paid by the Class to and

wrongfully withheld by Defendant;

i.   Entering a Preliminary and Permanent Injunction prohibiting Defendant from engaging in the

illegal activities identified in this Complaint;

j.   Entering an Order that defendant abide by the terms of the spoliation letter attached to the

Complaint (**Exhibit E**);

k.   Enjoining Defendant from continuing to engage in the unlawful activities described herein,

specifically including any labeling of milk as organic when it is not;

l.   Awarding Plaintiffs and Class such other and further relief as may be just and proper.


## COUNT II
### Violations of Mo.R.S. 407.010 *et seq.*
### On Behalf of a Class of Missouri Consumers

79.   Plaintiffs and Class hereby incorporate all preceding paragraphs as if fully stated herein.

80.   Plaintiffs and Class purchased organic milk produced by Aurora.

81.   This milk was purchased for personal or household use.

82.   The milk constitutes a "good."

83.   The milk purchased by Plaintiffs and Class contained the word "organic" in its name or

on its labeling.

84.   Upon information and belief, the milk produced and labeled by Aurora was not organic

pursuant to the OFPA and accompanying regulations.

85.   Similarly, if Aurora produced any milk that happened to be organic due to fortune, it had

no way to identify what milk was organic what milk was not.  Despite this, it represented

to Plaintiffs and Class that its milk was organic.

86. Aurora failed to disclose that its milk was not organic.  This was deceptive, unfair, and a material omission.

87. Plaintiffs and Class purchased the milk at a price that was much higher than the market price for non-organic milk.

88. The representations made by Defendant and described above constitute an unfair and deceptive business practice in violation of Missouri Revised Statute 407.010 *et seq.*

89. Defendant's unfair and deceptive practices were committed willfully and with full knowledge of the illegality of the acts.

90. As a result of Defendants' illegal practices, Plaintiffs and Class suffered ascertainable loss in that they:

   a.   Paid an inflated price for the milk they purchased;

   b.   Were tricked into buying "organic" milk that wasn't organic.

   c.   Exposed themselves, their family and friends to pesticides, hormones, antibiotics and other chemicals which were prohibited under organic standards; and

   d.   Were coerced into supporting a factory farm which treated animals inhumanely in violation of organic standards that requires otherwise.

91. Plaintiffs and Class seek relief as described in "Prayer for Relief- Counts II ."


## CLASS ALLEGATIONS FOR COUNT II

92. Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant Federal Rule of Civil Procedure 23. The claims in Count II are brought on behalf of a statewide class of consumers.

93. The class is defined and described as follows:

**All Missouri residents who, since 2003, purchased milk which was produced by Aurora and contained, anywhere on the carton or container, the word "organic."**

Excluded from the proposed class are Defendant and its officers, directors, and employees, as well as employees of any of defendant's subsidiaries, affiliates, successors or assignees.  Also excluded are the immediate family members of the above persons.  Also excluded is any trial judge who may preside over this case.

94. The requirements for maintaining this action as a class action are satisfied, as set forth immediately below.

95. The proposed class is so numerous and so geographically dispersed that the individual joinder of all absent class members is impracticable. While the exact number of absent class members is unknown to Plaintiffs at this time, it is ascertainable by appropriate discovery and Plaintiffs, upon information and belief, alleges that the proposed class may include thousands of members. The requirement of numerosity is therefore satisfied.

96. Common questions of law or fact exist as to all proposed class members and predominate over any questions which affect only individual members of the proposed class. These common questions of law or fact include:

   a.  Whether Defendant failed to provide a total feed ration that included pasture;

   b.  Whether Defendant entered conventional dairy animals into organic milk production before they completed one year of continuous organic management;

   c.  Whether Defendant labeled and represented milk as organically produced when such milk was not produced and handled in accordance with the National Organic Program regulations;

   d.  Whether Defendant failed to maintain adequate records under NOP regulations;

    e.   Whether all milk produced by Aurora was tainted;

    f.   Whether Defendant's milk was "organic."

    g.   Whether Aurora misrepresented its milk to the retailers and customers who purchased it;

    h.   Whether Plaintiffs and Class were damaged by paying organic prices for non-organic milk;

    i.   Whether Plaintiffs and Class were injured;

    j.   Whether Plaintiffs and Class are entitled to damages;

    k.   Whether Defendant's conduct rises to the level of willfulness so as to justify punitive damages;

    l.   Whether an injunction in necessary in order to prevent Aurora from continuing illegal activity.

97. The claims of the Plaintiffs are typical of the claims of the class.  Plaintiffs purchased milk produced by Aurora that was labeled organic.  Plaintiffs paid a higher price for the "organic" milk than she would have for regular milk.

98. Plaintiffs will fairly and adequately represent the interests of the members of the class. Plaintiffs have no interest adverse to the interests of the members of the class. Plaintiffs have retained competent attorneys who have experience in class action litigation.

99. A class action is a superior method for the fair and efficient adjudication of this controversy. The adjudication of a separate action by individual members of the class

would create a risk of a) inconsistent or varying adjudications with respect to individual members of the class; or b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.  Upon information and belief, Aurora has transacted business with thousands of individuals.

100.     Questions of law or fact common to the members of the class predominate over any questions affecting only individual members.  There is no special interest in the members of the class individually controlling the prosecution of separate actions; the damages sustained by individual class members is relatively small; and the expense and burden of individual litigation make it impossible for the class members individually to address the wrongs done to them.

101.     There will be no difficulty in managing this lawsuit as a class action.  Evidence relating to Aurora's alleged violations will be applicable to all members of the class, there are accepted means for notifying class members who purchased the milk in question, the class is comprised of people who purchased Defendant's "organic" milk in Missouri, and much of the evidence regarding the alleged violations has been chronicled by governmental and non-profit agencies.

## PRAYER FOR RELIEF – COUNT II

Plaintiffs and Class request that the Court enter judgment in their favor and against Defendant as follows:

a. Ordering that this action be maintained as a class action pursuant to this Court's powers under Federal Rule of Civil Procedure 23(c) and defining the class as:

**All Missouri residents who, since 2003, purchased milk which was produced by Aurora and contained, anywhere on the carton or container, the word "organic."**

b. Certifying Plaintiffs as class representatives and appointing Plaintiffs' counsel as counsel for the Class;

c. Awarding Plaintiffs and Class compensatory damages for their ascertainable losses, to include any fees and interest illegally charged, and further awarding any damages caused by such payments;

d. Awarding Plaintiffs and Class their consequential and incidental damages;

e. Awarding Plaintiffs and Class pre-judgment and post-judgment interest as provided by law;

f. Awarding Plaintiffs and Class punitive damages as provided by law;

g. Imposing a constructive trust and equitable lien against all money paid by the Class to and wrongfully withheld by Defendant;

h. Awarding Plaintiffs and Class attorneys' fees and costs as provided by law;

i. Entering a Preliminary and Permanent Injunction enjoining Defendant from continuing to engage in the unlawful activities described herein, specifically including any labeling of milk as organic when it is not;

j. Entering an Order that defendant abide by the terms of the spoliation letter attached to the Complaint (**Exhibit E**);

k. Awarding Plaintiffs and Class such other and further relief as may be just and proper.

<u>COUNT III</u>
## NEGLIGENCE
**On Behalf of a Class of Missouri Consumers**

102.     Plaintiffs and Class hereby incorporate all preceding paragraphs as if fully stated

herein.

103.     Defendant had a duty to describe its milk accurately and in compliance with the

requirements of the NOP.

104.     Defendant had a duty to make certain that its milk conformed to the

representations made by Defendant.

105.     Defendant had a duty to provide all pertinent information to consumers regarding

any possibility that Defendant's milk was not what it purported to be.

106.     Defendant breached its duty by indicating that its milk was "organic" when

Defendant knew or should have known that the milk was not organic, or that, in the

alternative, Defendant could not be certain what milk was organic and what milk was not.

107.     As a direct result of Defendant's negligence, Plaintiffs and Class suffered harm in

that they:

a.   Paid an inflated price for the milk they purchased;

b.   Were tricked into buying "organic" milk that wasn't organic.

c.   Exposed themselves, their family and friends to pesticides, hormones, antibiotics and

other chemicals which were prohibited under organic standards; and

d.   Were coerced into supporting a factory farm which treated animals inhumanely in

violation of organic standards that requires otherwise.

108.     Defendant's actions were the direct and proximate cause of Plaintiff's damages.

19

## CLASS ALLEGATIONS FOR COUNT III

109.     Plaintiffs bring this action on behalf of themselves and all others similarly situated

pursuant Federal Rule of Civil Procedure 23. The claims in Count II are brought on

behalf of a statewide class of consumers.

110.     The class is defined and described as follows:

**All Missouri residents who, since 2003, purchased milk which was
produced by Aurora and contained, anywhere on the carton or
container, the word "organic."**

Excluded from the proposed class are Defendant and its officers, directors, and
employees, as well as employees of any of defendant's subsidiaries, affiliates,
successors or assignees.  Also excluded are the immediate family members of the
above persons.  Also excluded is any trial judge who may preside over this case.

111.     The requirements for maintaining this action as a class action are satisfied, as set

forth immediately below.

112.     The proposed class is so numerous and so geographically dispersed that the

individual joinder of all absent class members is impracticable. While the exact number

of absent class members is unknown to Plaintiffs at this time, it is ascertainable by

appropriate discovery and Plaintiffs, upon information and belief, alleges that the

proposed class may include thousands of members. The requirement of numerosity is

therefore satisfied.

113.     Common questions of law or fact exist as to all proposed class members and

predominate over any questions which affect only individual members of the proposed

class. These common questions of law or fact include:

a.   Whether Defendant failed to provide a total feed ration that included pasture;

b.  Whether Defendant entered conventional dairy animals into organic milk production before they completed one year of continuous organic management;

c.  Whether Defendant labeled and represented milk as organically produced when such milk was not produced and handled in accordance with the National Organic Program regulations;

d.  Whether Defendant failed to maintain adequate records under NOP regulations;

e.  Whether all milk produced by Aurora was tainted;

f.  Whether Defendant's milk was "organic."

g.  Whether Aurora misrepresented its milk to the retailers and customers who purchased it;

h.  Whether Plaintiffs and Class were damaged by paying organic prices for non-organic milk;

i.  Whether Plaintiffs and Class were injured;

j.  Whether Plaintiffs and Class are entitled to damages;

k.  Whether Defendant's conduct rises to the level of willfulness so as to justify punitive damages;

l.  Whether an injunction in necessary in order to prevent Aurora from continuing illegal activity.

114.     The claims of the Plaintiffs are typical of the claims of the class.  Plaintiffs

purchased milk produced by Aurora that was labeled organic.  Plaintiffs paid a higher

price for the "organic" milk than she would have for regular milk.

115.     Plaintiffs will fairly and adequately represent the interests of the members of the

class. Plaintiffs have no interest adverse to the interests of the members of the class.

Plaintiffs have retained competent attorneys who have experience in class action

litigation.

116.     A class action is a superior method for the fair and efficient adjudication of this

controversy. The adjudication of a separate action by individual members of the class

would create a risk of a) inconsistent or varying adjudications with respect to individual

members of the class; or b) adjudications with respect to individual members of the class

which would as a practical matter be dispositive of the interests of the other members not

parties to the adjudications or substantially impair or impede their ability to protect their

interests.  Upon information and belief, Aurora has transacted business with thousands of

individuals.

117.     Questions of law or fact common to the members of the class predominate over

any questions affecting only individual members.  There is no special interest in the

members of the class individually controlling the prosecution of separate actions; the

damages sustained by individual class members is relatively small; and the expense and

burden of individual litigation make it impossible for the class members individually to

address the wrongs done to them.

118.     There will be no difficulty in managing this lawsuit as a class action.  Evidence

relating to Aurora's alleged violations will be applicable to all members of the class,

there are accepted means for notifying class members who purchased the milk in
question, the class is comprised of people who purchased Defendant's "organic" milk in
Missouri, and much of the evidence regarding the alleged violations has been chronicled
by governmental and non-profit agencies.

## PRAYER FOR RELIEF- COUNT III

Plaintiffs and Class request that the Court enter judgment in their favor and against
Defendant as follows:

l.  Ordering that this action be maintained as a class action pursuant to this Court's

powers under Federal Rule of Civil Procedure 23(c) and defining the class as:

**All Missouri residents who, since 2003, purchased milk which was
produced by Aurora and contained, anywhere on the carton or container,
the word "organic."**

a.  Certifying Plaintiffs as class representatives and appointing Plaintiffs' counsel as

counsel for the Class;

b.  Awarding Plaintiffs and Class compensatory damages for their ascertainable losses,

to include any fees and interest illegally charged, and further awarding any damages

caused by such payments;

c.  Awarding Plaintiffs and Class their consequential and incidental damages;

d.  Awarding Plaintiffs and Class pre-judgment and post-judgment interest as provided

by law;

e.  Awarding Plaintiffs and Class punitive damages as provided by law;

f.   Imposing a constructive trust and equitable lien against all money paid by the Class to
and wrongfully withheld by Defendant;

g.   Awarding Plaintiffs and Class attorneys' fees and costs as provided by law;

h.   Entering a Preliminary and Permanent Injunction enjoining Defendant from
continuing to engage in the unlawful activities described herein, specifically
including any labeling of milk as organic when it is not;

i.   Entering an Order that defendant abide by the terms of the spoliation letter attached to
the Complaint (**Exhibit E**);

j.   Awarding Plaintiffs and Class such other and further relief as may be just and proper.

**SIMON PASSANANTE, P.C.**

By: __/s/ John Campbell_____
       John Simon, # 4371
       Erich Vieth, #4608
       John Campbell, #543242
       701 Market Street, Suite 1450
       St. Louis, MO 63101
       314-241-2929
       Fax: 314-241-2029
       Email: jcampbell@simonpassanante.com







**COSTCO WHOLESALE**

#368  SO ST LOUIS

MEMBER #839098583001

| | | |
|---|---|---|
| 16? | CHILI TWIST | 10.99 Z |
| 14279 | CHOC MILK | 12.40 Z |
| 230002 | APPLE & EVE | 9.49 Z |
| 331222 | SOUR CREAM | 3.49 Z |
| 123089 | C/TYL . SUGP | 7.59 T |
| 123089 | C/TY... SUGP | .95 T |
| 926116 | ORGANIC MILK | 8.49 Z |
| 155534 | FRSI BOLIVIA | 12.59 Z |
| 155534 | FRSI BOLIVIA | 12.59 Z |
| 155534 | FRSI BOLIVIA | 12.59 Z |
| 155534 | FRE BOLIVIA | 12.59 Z |
| 19164 | HALF & HALF | 3.99 Z |
| 155962 | 36CT PIG EAR | 14.39 T |
| 155534 | FRSI BOLIVIA | 12.59 Z |
| 180646 | ORG. HOT DOG | 7.59 Z |
| 180646 | ORG. HOT DOG | 7.59 Z |
| 180646 | ORG. HOT DOG | 7.59 Z |
| 180646 | ORG. HOT DOG | 7.59 Z |
| 904849 | HOT DOG BL | 2.39 Z |
| 926116 | ORGANIC MILK | 8.49 Z |
| 621279 | ZIPLOC/FZ GA | 8.53 T |
| 29409 | PFBY WIPES | 14.99 T |
| 19221 | GARLIC BREAD | 3.99 Z |
| 25360 | KS DOG FD | 17.99 T |
| 184685 | CHICKEN SAUS | 12.99 Z |
| 77700 | MAPLE BACON | 11.79 Z |
| 127482 | MEATBALLS | 11.89 Z |
| 28462 | TYSON NUGGET | 11.?? Z |
| 38531 | MAR CHK BRST | 20.?? Z |
| 131105 | MOZZ STICK | 6.?? Z |
| 843323 | STRING CHES | 6.19 Z |
| 2140 | COLBY JACK | 7.99 Z |
| 24425 | LOW FAT CHZ | 3.95 Z |
| 27960 | KS FREECLEAR | 11.?? T |
| 873500 | CLOROX 2 LIQ | 9.69 T |
| 117776 | H2H BLUEBERY | 5.99 Z |

```
****  6.575          6.10
****  3.475          9.02
```

TOTAL        367.0?
VF    American Express    367.0?

XXXXXXXXXXXX1000        SWIPED
Seq#: 000907 Ref#: 501936
American Express    Resp:

APPROVED
AMOUNT: $34?.??

0368 006 00000000?  006

CHANGE        .00

TOTAL NUMBER OF ITEMS SOLD = 36
CASHIER: JACK        REG# 6
9/06/2007 10:52 0368 06 0051 85?

THANK YOU!
PLEASE COME AGAIN!

---

**COSTCO WHOLESALE**

#368  SO ST LOUIS

MEMBER #839098583001

| | | |
|---|---|---|
| 1950 | GRANOLA BARS | 10.79 C |
| 205827 | DRESS UP | 15.99 A |
| 205827 | DRESS UP | 15.99 A |
| 185764 | OATMEAL | 8.85 C |
| 32146 | KS FACIAL TION | 10.99 A |
| 24420 | COL COC CMZ | 5.39 C |
| 52905 | DIAPERS | 34.89 A |
| 201304 | PJ PREM/THU | 12.49 A |
| 149701 | TASTY BITE | 4.97 C |
| 31308 | KLX FAMILY | 11.05 A |
| 16091 | ORGANIC YOGRT | 8.79 C |
| 3120 | LARA BAR | 17.79 C |
| 218073 | ORGANIC MILK | 7.99 C |
| 218073 | ORGANIC MILK | 7.99 C |
| 1228 | CRM MUSHRM | 7.96 C |
| 218073 | ORGANIC MILK | 7.99 C |
| 218073 | ORGANIC MILK | 7.99 C |
| 120305 | ORGANC SYRUP | 18.99 C |
| 41114 | KSBUTTER QTR | 7.32 C |
| 33841 | BNLS/SL BRST | 13.00 C |
| 198546 | THAI KITCHEN | 6.99 C |
| 221796 | MAC & CHEESE | 8.49 C |
| 715336 | MUIR GLEN | 5.85 C |
| 28223 | ORGANIC CHDR | 10.94 C |
| 28223 | ORGANIC CHDR | 7.06 C |
| 22102 | KS CLBYJK 2# | 5.59 C |
| 205513 | CRAZY BONES | 9.79 C |
| 19164 | HALF & HALF | 3.45 C |
| 453917 | ALC 70% 2PK | 2.89 A |
| 124615 | COTTNNEL 220 | 8.49 A |
| 123152 | LYSOL WIPES | 12.69 A |
| 19221 | GARLIC BREAD | 3.99 C |
| 146853 | LAUGH COW | 7.99 C |
| 28714 | DEMI BAGUETT | 3.99 C |

```
         SUBTOTAL       336.21
      A  6.575            8.24
      C  3.475            7.32
```

TOTAL        351.77
VF    American Express    351.77

XXXXXXXXXXXX1000        SWIPED
Seq#: 000622 Ref#: 585573
American Express    Resp: AA

APPROVED
AMOUNT: $351.77

0368 006 0000000099 0053

CHANGE        .00

TOTAL NUMBER OF ITEMS SOLD = 34
CASHIER: SUMER S        REG# 6
9/7?/2007 11:33 0368 06 0053 99

THANK YOU!
PLEASE COME AGAIN!





```
COSTCO
WHOLESALE

#368 SO ST LOUIS
   MEMBER #839098583001

5 @ 8.49
   926118  ORGANIC MILK      42.45 Z
   25350   KS DOG FD **       17.99 T
   111033  DUCK JERKY          8.99 T
   30646   ELECTRSOL 85        9.53 T
   190975  CPN/30646           3.00-
   995718  SWIRL POPS          8.40 Z
   331222  SOUR CREAM          3.65 Z
   2881    CHNK TUNA           3.36 Z
   12224   KS TRAIL MIX        3.46 Z
   19161   HALF & HALF         3.46 Z
   30646   ELECTRSOL           9.53 T
   190975  CPN/30646           3.00-
   28839   SOCKEYE            14.56 Z
   960904  QUICHE VTY          9.99 Z
   34778   PARM STRAVEC       15.88 Z
   28223   ORGANIC CHDR        9.18 Z
   28223   ORGANIC CHDR        9.69 Z
   15550   SPONGE 15 PK        9.99 T
   19219   BAGUETTE            3.99 Z
   929145  ENCHILADA          11.99 Z
****   6.575                   3.64
****   3.475                   5.23
                      TOTAL   209.08
VF    American Express        209.08
----------------------------------
XXXXXXXXXXXX0      SWIPED
Seq#: 00505  Ref#: 5641 8
American Express      Resp: AA

       APPROVED
       AMOUNT  $209.08

   0368 06 0000000127 0048
----------------------------------
   CHANGE                    .00
   COUPONS TENDERED          6.00
TOTAL NUMBER OF ITEMS SOLD = 22
CASHIER: DENISE C        REG# 6
07/07/2007  10:39 0368 06 0048 127

     THANK YOU!
  PLEASE COME AGAIN!
```

```
COSTCO
WHOLESALE

#368 SO ST LOUIS
   MEMBER #839098583001

   159002  ORG RSN BRAN        9.72 Z
   207685  HEART HLTHY         7.79 Z
   12500   KSBLUEREAL          7.79 Z
   81834   DIAPER             12.39 T
   529054  DIAPER             34.89 T
   15989   KS BATH TISS       15.85 T
   191366  ORGTSTRPASTR        7.69 Z
   1905    FALL BULBS         13.99 T
   41114   KSBUTTER QTR        3.99 Z
   28839   SOCKEYE            18.97 Z
   22093   KS SHRPCHD2#        5.75 Z
   22102   KS CLBYJK 2#        5.45 Z
   22093   KS SHRPCHD2#        5.75 Z
   218073  ORGANIC MILK        8.49 Z
   19219   BAGUETTE            3.99 Z
   34307   ORGNC FRYERS       15.86 Z
   34307   ORGNC FRYERS       15.37 Z
   145704  ORG CARROTS         5.99 Z
   83333   GRN GRAPES          5.49 Z
   195876  DENTAL CHEWS       10.99 T
   147772  STOMP ROCKET       16.49 T
****   6.575                   6.87
****   3.475                   4.36
                      TOTAL   241.52
VF    American Express        241.52
----------------------------------
XXXXXXXXXXXX1000   SWIPED
Seq#: 000620 Ref#: 522176
American Express      Resp: AA

       APPROVED
       AMOUNT: $241.52

   0368 007 0000000099 0040
----------------------------------
   CHANGE                    .00
TOTAL NUMBER OF ITEMS SOLD = 21
CASHIER: SUPER S         REG# 7
07/30/2007  10:34 0368 07 0040 99

     THANK YOU!
  PLEASE COME AGAIN!
```

Exhibit E

October 4, 2007

Serve:

        The Corporation Trust Company
        Corporation Trust Center, 1209 Orange St
        Wilmington, DE 19801

To Legal Counsel of Aurora Dairy Corporation:

        Plaintiffs Kristine Mothershead and Leonie Lloyd have filed a class action against you, Aurora Dairy Corporation, d/b/a Aurora Organic Diary.

        By this notice, you and your client, Aurora Organic Dairy and its subsidiaries and affiliates are hereby given notice to preserve all documents (see definition of "documents" included below) that relate to any of the allegations in Plaintiff's Complaint.   During this litigation Plaintiffs will seek, through discovery, any documents pertaining to the allegations in the Complaint.   This may include documents that are not required to be retained to pursuant to any statutes.  Please take all steps necessary to ensure that all documents, tangible and electronic, are retained and that no procedures occur which could jeopardize any evidence pertaining to this case.   This specifically includes emails, instant messages that are recorded, and other non-conventional means of electronic communication.

Page –2 –
October 4, 2007

Access to the documents described above is necessary both in order to pursue class certification and in order to pursue the substantive allegations of this matter.

# Definition

The word "**document**" is used in the broad and liberal sense and means written, typed, printed, recorded or graphic matter, however stored, produced or reproduced, of any kind and description and whether an original, master, duplicate or copy, including, but not limited to, papers, notes, accounts, books, advertisements, letters, memoranda, notes of conversations, contracts, agreements, drawings, telegrams, electronic mail, tape recordings, communications, including inter-office and intra-office memoranda, reports, studies, working papers, corporate records, minutes of meetings, notebooks, bank deposit slips, bank checks, cancelled checks, diaries, diary entries, appointment books, desk calendars, photographs, transcriptions or sound recordings of any type of personal or telephone conversations or negotiations, meetings or conferences or things similar to any of the foregoing, and to include any data, information or statistics contained within any data storage modules, tapes, discs, diskettes, or other memory device, or other information retrievable from any storage systems, including, but not limited to, computer-generated reports and printouts. The word "**document**" also includes data compilations from which information can be obtained and translated, if necessary, by the respondent through detection devices in a reasonably usable form. If any document has been modified by the addition of notations or otherwise, or has been prepared in multiple copies which are not identical, each modified copy or un-identical copy is a separate "**document**."

Page –3 –
October 4, 2007

**Simon • Passanante, PC**

_____/s/ John Campbell_____
John Simon, # 4371.
Erich Vieth, #4608
John Campbell, #543242
Attorneys for Plaintiffs
701 Market St., Suite 1450
St. Louis, Missouri 63101
Telephone: (314) 241-2929
Facsimile: (314) 241-2029

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

|  |  |  |
|---|---|---|
| , | ) | |
| plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| , | ) | |
| defendant. | ) | |

# ORIGINAL FILING FORM

**THIS FORM MUST BE COMPLETED AND VERIFIED BY THE FILING PARTY WHEN INITIATING A NEW CASE.**

THIS CAUSE, OR A SUBSTANTIALLY EQUIVALENT COMPLAINT, WAS

PREVIOUSLY FILED IN THIS COURT AS CASE NUMBER_____

AND ASSIGNED TO THE HONORABLE JUDGE_____.

NEITHER THIS CAUSE, NOR A SUBSTANTIALLY EQUIVALENT COMPLAINT,

PREVIOUSLY HAS BEEN FILED IN THIS COURT, AND THEREFORE MAY BE

OPENED AS AN ORIGINAL PROCEEDING.

**The undersigned affirms that the information provided above is true and correct.**

Date:_____

_____
Signature of Filing Party

℠JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

**DEFENDANTS**

**(b)**  County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury - Med. Malpractice<br>☐ 365 Personal Injury - Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893  Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN   (Place an "X" in One Box Only)

☐ 1   Original Proceeding
☐ 2   Removed from State Court
☐ 3   Remanded from Appellate Court
☐ 4   Reinstated or Reopened
☐ 5   Transferred from another district (specify)
☐ 6   Multidistrict Litigation
☐ 7   Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing  (**Do not cite jurisdictional statutes unless diversity**):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse  (Rev. 11/04)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.**     **(a) Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

        (b) County of Residence.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

        (c) Attorneys.  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

 **II.**     **Jurisdiction**.  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; federal question actions take precedence over diversity cases.)

**III.**     **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**     **Nature of Suit**.  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.**     **Origin**.  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.

Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**     **Cause of Action**.  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity**.     Example:     U.S. Civil Statute: <u>47 USC 553</u>
                              Brief Description: <u>Unauthorized reception of cable service</u>

**VII.**     **Requested in Complaint**.  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**     **Related Cases**.  This section of the JS 44 is used to reference related pending cases if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.

AO 440 (Rev. 10/93)   Summons in a Civil Action

# United States District Court

## EASTERN DISTRICT OF MISSOURI

SUMMONS IN A CIVIL CASE

V.

CASE NUMBER:

TO: (Name and address of defendant)

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

an answer to the complaint which is herewith served upon you, within _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

_____
CLERK

_____
DATE

_____
(BY) DEPUTY CLERK

AO 440 (Rev. 10/93) Summons in a Civil Action

| RETURN OF SERVICE | |
|---|---|
| Service of the Summons and Complaint was made by me† | DATE |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

Served personally upon the defendant. Place where served:

Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left:

Returned unexecuted:

Other *(specify):*

STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____       _____
               *Date*                                  *Signature of Server*

                                                  _____
                                                  *Address of Server*

(1)   As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.