**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:08-cv-01236-EWN**

**ACE AMERICAN INSURANCE CORPORATION, a Pennsylvania corporation,
INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania corporation,
NATIONAL SURETY CORPORATION, an Illinois corporation, and
THE AMERICAN INSURANCE COMPANY, an Ohio corporation,**

**Plaintiffs,**

**v.**

**AURORA DAIRY CORPORATION, d/b/a AURORA ORGANIC DAIRY, a Delaware corporation,**

**Defendant.**

---

**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF
DEFENDANT AURORA DAIRY CORPORATION TO
PLAINTIFFS' COMPLAINT FOR DECLARATORY RELIEF**

---

Defendant Aurora Dairy Corporation, d/b/a Aurora Organic Dairy ("Aurora" or "Defendant"), by its counsel, as and for its Answer, Affirmative Defenses and Counterclaims to the Complaint for Declaratory Relief of Plaintiffs ACE American Insurance Corporation ("ACE"), Indemnity Insurance Company of North America ("IICNA"), National Surety Corporation ("NSC"), and The American Insurance Company ("AIC") (collectively, the "Plaintiffs") states as follows:

      1.      Plaintiff ACE American Insurance Company ("ACE") is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.

**ANSWER:**

Aurora is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 1 and on that basis, denies them.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 1.

2.      Plaintiff Indemnity Insurance Company of North America ("IICNA") is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.

**ANSWER:**

Aurora is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 2 and on that basis, denies them.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 2.

3.      Plaintiff National Surety Corporation ("NSC") is an Illinois corporation with its principal place of business in Chicago, Illinois.

**ANSWER:**

Aurora is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 3 and on that basis, denies them.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 3.

4.      Plaintiff The American Insurance Company ("AIC") is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

**ANSWER:**

Aurora is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 4 and on that basis, denies them.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 4.

5.      Collectively ACE, IICNA, NSC, and AIC are referred to in this Complaint as the Insurers.

**ANSWER:**

Aurora admits that through this Complaint, Plaintiffs purport to refer to ACE, IICNA, NSC and AIC collectively as the "Insurers."  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 5.

6.       Aurora Dairy Corporation ("Aurora") is a Delaware corporation with its principal place of business in Colorado.

**ANSWER:**

Aurora admits the allegations in Paragraph 6.

7.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  The Insurers and Aurora do not share a common state residence and the amount in controversy exceeds $75,000.  The Insurers seek a declaration of their rights pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*.

**ANSWER:**

Aurora admits that Plaintiffs purport to assert jurisdiction pursuant to 28 U.S.C. § 1332. Aurora further admits that jurisdiction appears to exist under 28 U.S.C. § 1332, as Plaintiffs have alleged that none of them share a common state of residence with Aurora and that the amount in controversy exceeds $75,000.  Aurora further admits that Plaintiffs purport to seek a declaration of their rights pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, seq. Aurora denies that Plaintiffs are entitled to any relief whatsoever, including, but not limited to, the relief sought in Plaintiffs' Complaint.  Aurora specifically denies that Plaintiffs are entitled to a declaratory judgment regarding their obligation to indemnify Aurora, as such a declaration would be premature.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 7.

8.       Aurora is in the business of processing milk that has been certified as "organic." Through its dairy processing business, Aurora supplies milk that has been certified as organic to

3

retailers.  On information and belief, Aurora sells the milk it processes and certifies as organic to retailers.  The retailers then sell the milk under their own store brand or label.

**ANSWER:**

Aurora admits that it produces organic milk which is sold by various retailers under the respective retailers' store brands and labels, as well as through Aurora's own label, "High Meadow."  Aurora further admits that it markets and sells milk with the "USDA Organic" seal in accordance with the organic certifications issued to Aurora by two certifying agents -- the Colorado Department of Agriculture ("CDA") and Quality Assurance International ("QAI") -- acting pursuant to the authority vested in them by the United States Department of Agriculture ("USDA") under the Organic Food Production Act of 1990 ("OFPA") (7 U.S.C. 6501 et seq.) and the National Organic Program ("NOP") regulations (7 C.F.R. Part 205 et seq.).  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 8.

9.      Aurora has been named as a defendant in numerous consumer class actions in which the named plaintiffs seek certification of statewide and nationwide classes of individuals claiming to have sustained an economic loss because they paid a higher price for the milk processed by Aurora based on the allegedly false certification that it was "organic." It is alleged that because of the allegedly false certification that the milk was organic Aurora obtained more revenue for the milk than it would have obtained for non-organic milk.  The plaintiffs in the pending class actions claim that Aurora has been "unjustly enriched" and should be required to disgorge to the class members the amount paid to purchase the milk that was falsely represented to be "organic." Aurora has requested that the Insurers provide it with a defense in the pending consumer class actions.

**ANSWER:**

Aurora admits that it has been named in thirteen (13) consumer class actions (the "underlying actions"), which were filed in the courts of six (6) different states and have been consolidated pursuant to 28 U.S.C. § 1407 before the United States District Court for the Eastern District of Missouri in the action In re Aurora Dairy Corporation Organic Milk Marketing and

Sales Practice Litigation ("In re Aurora Dairy Corp.").  Aurora further admits that it tendered a

request that Plaintiffs provide it with a defense in the underlying actions.  By way of further

response, Aurora affirmatively states that allegations of bodily injury, property damage, personal

injury and/or advertising injury are included in the foregoing actions and that Plaintiffs have

wrongfully refused to defend Aurora in twelve of the thirteen underlying actions.  Aurora further

states that the allegations and claims in the underlying actions speak for themselves and, to the

extent that the allegations in Paragraph 9 vary therewith, Aurora denies those allegations.  Except

as expressly admitted, Aurora denies any remaining allegations in Paragraph 9.

      10.     ACE, IICNA, and NSC have agreed to provide a defense to Aurora in the action
captioned:  Katherine Mothershead and Leonie Lloyd v. Aurora Dairy Corporation d/b/a Aurora
Organic Dairy, Case No. 4:07-cv-01701, U.S.D.C. for the Eastern District of Missouri, filed
October 7, 2007 (the "Mothershead action").  A true and correct copy of the Complaint in the
Mothershead action is attached as Exhibit A to this Complaint.

**ANSWER:**

     Aurora admits that a true and correct copy of the complaint filed in Mothershead v.

Aurora Dairy Corporation d/b/a Aurora Organic Dairy, Case No. 4:07-cv-01701 (E.D. Mo. filed

October 7, 2007) ("Mothershead") is attached to Plaintiffs' Complaint as Exhibit A.  Aurora

further admits that ACE, IICNA and NSC agreed to pay defense costs incurred by Aurora in the

Mothershead action but, to date, they have refused to actually reimburse Aurora for any of the

costs it has incurred, in spite of repeated requests.  Except as expressly admitted, Aurora denies

any remaining allegations in Paragraph 10.

      11.     In the Mothershead action ACE, IICNA and NSC reserved the right to deny
coverage and withdraw from the defense based on certain terms and conditions of their
respective insurance contracts.  The Insurers also reserved the right to recover back defense costs
incurred if it is determined they had no duty to defend.

**ANSWER:**

Aurora admits that Plaintiffs purported to reserve certain "rights" in correspondence dated January 14, 2008 (sent by NSC and AIC) and January 28, 2008 (sent by IICNA and ACE), but Aurora expressly denies that such "rights" exist or that any such "reservation" was proper or appropriate. Aurora affirmatively states that the January 14, 2008 letter was not received by Aurora until on or about April 15, 2008 -- when NSC and AIC resent the letter to Aurora by e-mail -- due to the fact that the January 14, 2008 letter was sent to the wrong address by NSC and AIC. By way of further response, Aurora expressly denies that Plaintiffs have paid any defense costs whatsoever. Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 11.

12.     To date, Aurora has not responded to the offers made by ACE, IICNA, and NSC to defend it in the <u>Mothershead</u> action.

**ANSWER:**

Aurora denies the allegations in Paragraph 12.

13.     In this action the Insurers are seeking a declaration that they have no obligation to defend or indemnify Aurora in the <u>Mothershead</u> action.

**ANSWER:**

Aurora admits that through this lawsuit, Plaintiffs purport to seek a declaration that they have no obligation to defend or indemnify Aurora in the <u>Mothershead</u> action. Aurora denies that Plaintiffs are entitled to any relief whatsoever, including, but not limited to, the relief sought in their Complaint. By way of further response, Aurora affirmatively states that Plaintiffs' request for a declaration regarding their duty to indemnify Aurora is premature. Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 13.

14.     For the policy period August 1, 2002 – August 1, 2003, ACE provided general liability coverage to Aurora through policy number FO-139293, a copy of which is attached as Exhibit B.  The general liability coverage issued to Aurora was renewed by ACE for the policy period August 1, 2003 – August 1, 2004 through the same policy number, FO-139293.  During both policy periods, the coverage was subject to a $1,000,000 "each occurrence" limit of liability and a $2,000,000 aggregate.

**ANSWER:**

Aurora admits that ACE provided general liability coverage to Aurora during the policy periods and through the policy numbers listed in Paragraph 14.  Aurora further admits that a copy of Policy No. FO-139293 appears to be attached to the Complaint as Exhibit B.  Policy No. FO-139293 speaks for itself and, to the extent that the allegations in Paragraph 14 vary therewith, Aurora denies those allegations.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 14.

15.     For the policy period August 1, 2002 – August 1, 2003, IICNA provided general liability coverage to Aurora through policy number FO-139292, a copy of which policy is attached as Exhibit C.  For the policy period August 1, 2003 – August 1, 2004, IICNA provided general liability coverage to Aurora through policy numbers FO-146246 and FO-146297, copies of which are attached as Exhibits D and E, respectively.  During both policy periods, the coverage was subject to a $1,000,000 "each occurrence" limit of liability and a $2,000,000 aggregate.

**ANSWER:**

Aurora admits that IICNA provided general liability coverage to Aurora during the policy periods and through the policies listed in Paragraph 15.  Aurora further admits that copies of Policy Nos. FO-139292, FO-146246 and FO-146297 appear to be attached to the Complaint as Exhibits C, D and E, respectively.  Policy Nos. FO-139292, FO-146246 and FO-146297 speak for themselves and, to the extent that the allegations in Paragraph 15 vary therewith, Aurora denies those allegations.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 15.

16.     For the policy period May 1, 2005 – May 1, 2006, NSC provided general liability coverage to Aurora through policy number S 86 MXX 80843533.  The general liability coverage issued to Aurora was renewed by NSC for the policy period May 1, 2006 – May 1, 2007 through policy number S 86 MXX 80859105.  During both policy periods, the coverage was subject to a $1,000,000 "each occurrence" limit of liability and a $2,000,000 aggregate.  Attached as Exhibit F is a true and correct copy of policy number S 86 MXX 80843533.  Attached as Exhibit G is a true and correct copy of policy number S 86 MXX 80859105.

**ANSWER:**

Aurora admits that NSC provided general liability coverage to Aurora during the policy periods and through the policies listed in Paragraph 16.  Aurora further admits that at least portions of copies of Policy Nos. S 86 MXX 80843533 and S 86 MXX 80859105 appear to be attached to the Complaint as Exhibits F and G, respectively.  Policy Nos. S 86 MXX 80843533 and S 86 MXX 80859105 speak for themselves and, to the extent that the allegations in Paragraph 16 vary therewith, Aurora denies those allegations.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 16.

17.     The policies discussed in Paragraphs 14, 15 and 16 are referenced collectively in this Complaint as "the CGL Policies."

**ANSWER:**

Aurora admits that in their Complaint, Plaintiffs purport to refer to the policies discussed in Paragraphs 14, 15 and 16 of the Complaint collectively as "the CGL Policies."  Aurora affirmatively states that the policies identified in Paragraph 17 vary.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 17.

18.     The relevant policy language included in each of the CGL Policies is identical and is being discussed collectively herein.

**ANSWER:**

The CGL Policies speak for themselves and, to the extent that the allegations in

Paragraph 18 vary therewith, Aurora denies those allegations.  Except as expressly admitted,

Aurora denies any remaining allegations in Paragraph 18.

19.     The insuring agreement that applies to "bodily injury" and "property damage"
under the CGL Policies provided:

**Section I — Coverages**

**Coverage A Bodily injury and Property Damage Liability**

1.     **Insuring Agreement**

a.     We will pay those sums that the insured becomes legally obligated
to pay as damages because of **bodily injury** or **property damage**
to which this insurance applies.  We will have the right and duty to
defend the insured against any **suit** seeking those damages.
However, we will have no duty to defend the insured against any
suit seeking damages for **bodily injury** or **property damage** to
which this insurance does not apply.  We may at our discretion
investigate any **occurrence** and settle any claim or **suit** that may
result.  But:

(1)     The amount we will pay for damages is limited as
described in Section III - Limits of Insurance; and

(2)     Our right and duty to defend ends when we have used
up the applicable limit of insurance in the payment of
judgments or settlements under Coverages A or B or
medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is
covered unless explicitly provided for under Supplementary Payments -
Coverages A and B.

b.     This insurance applies to **bodily injury** and **property damage**
only if:

(1)     The **bodily injury** or **property damage** is caused by an
**occurrence** that takes place in the **coverage territory**;

9

(2)    The **bodily injury** or **property damage** occurs during the policy period; and

(3)    Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is an Insured and no **employee** authorized by you to give or receive notice of an **occurrence** or claim, knew that the **bodily injury** or **property damage** had occurred, in whole or in part.  If such a listed insured or authorized **employee** knew, prior to the policy period, that the **bodily injury** or **property damage** occurred, then any continuation, change or resumption of such **bodily injury** or **property damage** during or after the policy period will be deemed to have been known prior to the policy period.

**ANSWER:**

The CGL Policies speak for themselves and, to the extent that the allegations in Paragraph 19 vary therewith, Aurora denies those allegations.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 19.

20.    To fall within this insuring agreement to the CGL Policies the following requirements must be met:

☐    The insured must be legally required to pay damages as a result of "bodily injury" or "property damage" caused by an "occurrence";

☐    The "bodily injury" or "property damage" must occur during the policy period; and

☐    Prior to the policy period no insured can have had knowledge of the "bodily injury"; "property damage"; "occurrence"; "claim"; or "suit".

**ANSWER:**

Paragraph 20 is a legal conclusion for which no answer is required.  To the extent an answer is required, Aurora states that the CGL Policies speak for themselves and, to the extent that the allegations in Paragraph 20 vary therewith, Aurora denies those allegations.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 20.

21.     Coverage under the CGL Policies is provided only for "damages."  The amounts sought by the plaintiffs in the underlying <u>Mothershead</u> action representing disgorgement or restitution do not constitute "damages" covered by the CGL Policies.

**<u>ANSWER</u>:**

Aurora denies the allegations in Paragraph 21.

22.     The term "property damage" in the CGL Policies is defined as follows:

17.     **Property damage** means:

    a.     Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.     Loss of use of tangible property that is not physically injured.   All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

**<u>ANSWER</u>:**

The CGL Policies speak for themselves and, to the extent that the allegations in

Paragraph 22 vary therewith, Aurora denies those allegations.  Except as expressly admitted,

Aurora denies any remaining allegations in Paragraph 22.

23.     The economic losses complained of by the plaintiffs in the <u>Mothershead</u> action were not the result of physical damage to or loss of use of tangible property.

**<u>ANSWER</u>:**

Aurora denies the allegations in Paragraph 23.

24.     The term "bodily injury" is defined in the CGL Policies as follows:

3.     **Bodily injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**ANSWER:**

The CGL Policies speak for themselves and, to the extent that the allegations in Paragraph 24 vary therewith, Aurora denies those allegations.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 24.

25.     No plaintiff in the <u>Mothershead</u> action alleges that he or she sustained "bodily injury," "sickness" or "disease" as a result of Aurora's false certification that the milk it processed was "organic."

**ANSWER:**

Aurora denies the allegations in Paragraph 25.

26.     The term "occurrence" is defined in the CGL Policies as follows:

13.     **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**ANSWER:**

The CGL Policies speak for themselves and, to the extent that the allegations in Paragraph 26 vary therewith, Aurora denies those allegations.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 26.

27.     The Plaintiffs in the <u>Mothershead</u> action do not allege that they sustained "bodily injury" or "property damage" as a result of an "accident."

**ANSWER:**

Aurora denies the allegations in Paragraph 27.

28.     The CGL Policies incorporate the following exclusion:

This insurance does not apply to:

a.      Expected or Intended Injury

**Bodily injury** or **property damage** expected or intended from the standpoint of the insured.  This exclusion does not apply to **bodily**

12

**injury** resulting from the use of reasonable force to protect persons or property.

**ANSWER:**

The CGL Policies speak for themselves and, to the extent that the allegations in Paragraph 28 vary therewith, Aurora denies those allegations.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 28.

29.     To the extent damages were sought in the <u>Mothershead</u> action for "bodily injury" or "property damage" the exclusion for "bodily injury" or "property damage" that is expected or intended would preclude coverage.

**ANSWER:**

Aurora denies the allegations in Paragraph 29.

30.     The insuring agreements in the CGL Policies that apply to the "personal injury and advertising injury" provide:

**Coverage B Personal and Advertising Injury Liability**

1.     **Insuring Agreement**

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of **personal and advertising injury** to which this insurance applies.  We will have the right and duty to defend the insured against any **suit** seeking those damages. However, we will have no duty to defend the insured against any **suit** seeking damages for **personal and advertising injury** to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or suit that may result. But:

(1)     The amount we will pay for damages is limited as described in Section III — Limits of Insurance; and

(2)     Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b. This insurance applies to **personal and advertising injury** caused by an offense arising out of your business but only if the offense was committed in the **coverage territory** during the policy period.

**ANSWER:**

The CGL Policies speak for themselves and, to the extent that the allegations in Paragraph 30 vary therewith, Aurora denies those allegations. Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 30.

31. The term "personal and advertising injury," is defined in the CGL Policies as follows:

14. **Personal and advertising injury** means injury, including consequential **bodily injury**, arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your **advertisement**; or

g. Infringing upon another's copyright, trade dress or slogan in your **advertisement**.

**ANSWER:**

The CGL Policies speak for themselves and, to the extent that the allegations in

Paragraph 31 vary therewith, Aurora denies those allegations.  Except as expressly admitted,

Aurora denies any remaining allegations in Paragraph 31.

32.     No damages are sought in the <u>Mothershead</u> action for "personal and advertising injury" as those terms are defined in the CGL Policies.

**ANSWER:**

Aurora denies the allegations in Paragraph 32.

33.     The CGL Policies incorporate the following exclusion:

This insurance does not apply to:

g.      Quality or Performance of Goods - Failure to Conform to
        Statements

        **Personal and advertising injury** arising out of the failure of goods,
        products or services to conform with any statement of quality or
        performance made in your **advertisement**.

**ANSWER:**

The CGL Policies speak for themselves and, to the extent that the allegations in

Paragraph 33 vary therewith, Aurora denies those allegations.  Except as expressly admitted,

Aurora denies any remaining allegations in Paragraph 33.

34.     To the extent damages were sought in the <u>Mothershead</u> action for "personal and advertising injury" the exclusion for Quality or Performance of Goods would preclude coverage.

**ANSWER:**

Aurora denies the allegations in Paragraph 34.

35.     AIC provided liability coverage to Aurora and certain related entities under policy number 643 FRM8025025, issued to Aurora Dairy Corp. for the period June 1, 2005 – June 1, 2006.  This policy was subject to a $1,000,000 limit of liability that applied to each occurrence and a $2,000,000 aggregate.  Policy number 643 FRM0664651 was issued to Aurora Organic

Dairy of Texas, Inc., Aurora Dairy Corp., and TXAGR Real Estate Holdings, LLC for the period June 1, 2005 – June 1, 2006.  Policy number 643 FRM0664651 was subject to a $1,000,000 limit of liability that applied to each occurrence and a $2,000,000 aggregate.  Policy number 643 FRM80253328 was issued to Aurora Dairy Corp. for the period June 1, 2006 – June 1, 2007 and was subject to a $1,000,000 limit of liability that applied to each occurrence and a $2,000,000 aggregate.  Policy number 643 FRM06646251 was issued to Aurora Organic Dairy of Tx., Inc., Aurora Dairy Corp. and TXAGR Real Estate Holdings, LLC for the period June 1, 2006 – June 1, 2007 and was subject to a $1,000,000 limit of liability that applied to each occurrence and a $2,000,000 aggregate.  The policies described in this Paragraph will be referenced in this Complaint as the AIC Policies.

**ANSWER:**

Aurora admits that AIC provided general liability coverage:

- to Aurora Dairy Corporation under Policy No. 6 43 FRM80250251 from June 1, 2005 through June 1, 2006;

- to Aurora Organic Dairy Texas, Inc. under Policy No. 6 43 FRM06646251 from June 1, 2006 through June 1, 2007; and

- to Aurora Dairy Corporation under Policy No. 6 43 FRM80255328 from June 1, 2006 through June 1, 2007.

Aurora further states that in their Complaint, Plaintiffs incorrectly identify the policies at issue as 643 FRM8025025, 643 FRM06646251, and 643 FRM80253328 and refer to them collectively as the "AIC Policies."  By way of further response, Aurora states that the correct policy numbers are apparently 6 43 FRM80250251, 6 43 FRM06646251 and 6 43 FRM80255328.  Policy Nos. 6 43 FRM80250251, 6 43 FRM06646251 and 6 43 FRM80255328 speak for themselves and, to the extent that the allegations in Paragraph 35 vary therewith, Aurora denies those allegations.

Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 35.

36.     The insuring agreement and definitions found in the AIC Policies do not differ materially from the insuring agreement and definitions in the ACE, IICNA, and NSC policies.  In addition, the AIC Policies incorporate the following exclusion:

This insurance does not apply to:

      i.      Business Pursuits

              **Bodily injury** or **property damage** arising out of or in connection with a business engaged in by an **insured**. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the business.

              This exclusion does not apply to an insured minor involved in self-employed business pursuits that are occasional or part-time and customarily undertaken on that basis by minors.

**ANSWER:**

Policy Nos. 6 43 FRM80250251, 6 43 FRM06646251 and 6 43 FRM80255328 speak for themselves and, to the extent that the allegations in Paragraph 36 vary therewith, Aurora denies those allegations. Aurora expressly denies that the insuring agreement and definition in the AIC Policies do not differ materially from the insuring agreement and the definitions found in the ACE, IICNA and NSC Policies. Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 36.

    37.      The term "business" is defined in the AIC Polices as follows:

      3.      **Business** means a trade, profession, occupation, enterprise or activity, other than **farming** or **custom farming**, which is engaged in for the purpose of monetary or other compensation.

**ANSWER:**

Policy Nos. 6 43 FRM80250251, 6 43 FRM06646251 and 6 43 FRM80255328 speak for themselves and, to the extent that the allegations in Paragraph 37 vary therewith, Aurora denies those allegations. Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 37.

38.     Aurora's potential liability in the <u>Mothershead</u> action arises out of the certifications it made as a processor and wholesaler of organic milk.  The "Business Pursuits" exclusion in the AIC Policies precludes coverage for the relief sought in the <u>Mothershead</u> action.

**ANSWER:**

Aurora denies the allegations in Paragraph 38.

39.     There is a real and justiciable controversy between Aurora and the Insurers as to whether or not the relief sought in the <u>Mothershead</u> action is potentially covered.  On information and belief Aurora contends that ACE, IICNA and NSC are obligated to provide it with a defense in the <u>Mothershead</u> action.  The Insurers contend that the relief requested in the <u>Mothershead</u> action is not covered and they have no obligation to defend Aurora.

**ANSWER:**

Aurora admits that there is a real and justiciable controversy as to whether Plaintiffs have

a duty to reimburse Aurora for the cost of defense in the <u>Mothershead</u> action.  By way of further

response, Aurora expressly denies that there is a justiciable controversy as to whether or not

indemnification is owed to Aurora in the <u>Mothershead</u> action, because a determination as to

Plaintiffs' indemnity obligations would be premature at this juncture.  By way of further

response, Aurora admits that Plaintiffs claim they have no obligation to defend Aurora.  Aurora

affirmatively states that Plaintiffs do have an obligation to defend Aurora, and Plaintiffs' claim

to the contrary is made in bad faith.  Except as expressly admitted, Aurora denies any remaining

allegations in Paragraph 39.

40.     ACE, IICNA, NSC, and AIC incorporate by reference the allegations set out in paragraphs 1 - 39 of this Complaint.

**ANSWER:**

Aurora incorporates its answers to Paragraphs 1-39 as if set forth fully herein.

41.     ACE, IICNA NSC, and AIC seek a declaration that they have no duty to defend or indemnify Aurora in the <u>Mothershead</u> action under the commercial liability policies described in this Complaint.

**ANSWER:**

Aurora admits that through this lawsuit, Plaintiffs purport to seek a declaration that they have no obligation to defend or indemnify Aurora in the <u>Mothershead</u> action. Aurora denies that Plaintiffs are entitled to any relief whatsoever, including, but not limited to, the relief sought in their Complaint. Aurora further denies that Plaintiffs are entitled to a declaratory judgment regarding their obligation to indemnify Aurora, as such a declaration would be premature. Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 41.

**WHEREFORE**, ACE, IICNA, NSC, and AIC request:

1.  A declaration that they have no duty to defend or indemnify Aurora in the <u>Mothershead</u> action;

2.  A declaration that they are entitled to recover back any amounts paid to defend Aurora in the <u>Mothershead</u> action; and

3.  Such other and further relief as this Court may deem just and appropriate.

**ANSWER:**

Aurora denies that Plaintiffs are entitled to any relief whatsoever, including, but not limited to, the relief requested in Plaintiffs' Complaint. Aurora specifically denies that Plaintiffs have paid any amounts for the defense of the <u>Mothershead</u> litigation, in spite of Aurora's repeated requests. Aurora further denies that Plaintiffs are entitled to a declaration regarding their duty to indemnify Aurora, as such a declaration would be premature at this juncture. Except as expressly admitted, Aurora denies any remaining allegations in the preceding Paragraph.

## FIRST AFFIRMATIVE DEFENSE

1.  The Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

2.      The claims of Plaintiffs are barred, in whole or in part, by the doctrines of waiver,

estoppel and/or laches.

## THIRD AFFIRMATIVE DEFENSE

3.      Plaintiffs may be barred, in whole or in part, from recovery because they have

made statements and/or taken actions that estop them from asserting their claims.

## FOURTH AFFIRMATIVE DEFENSE

4.      The claims of Plaintiffs are barred, in whole or in part, to the extent that they

engaged in unlawful, inequitable or improper conduct.

## FIFTH AFFIRMATIVE DEFENSE

5.      The claims of Plaintiffs are barred, in whole or in part, because Plaintiffs have

breached their duties to Aurora and their contractual obligations, including their duty of good

faith and fair dealing.

## SIXTH AFFIRMATIVE DEFENSE

6.      Plaintiffs' request for a declaration regarding their duty to indemnify Aurora is

barred as premature.

## SEVENTH AFFIRMATIVE DEFENSE

7.      Aurora has insufficient knowledge or information upon which to form a belief as

to whether it may have additional affirmative defenses that govern the claims asserted by

Plaintiffs.  Aurora, therefore, reserves the right to raise additional defenses as appropriate in the

future.

**AURORA DAIRY CORPORATION'S COUNTERCLAIMS TO
PLAINTIFFS' COMPLAINT FOR DECLARATORY RELIEF**

Defendant/Counterplaintiff Aurora Dairy Corporation, d/b/a Aurora Organic Dairy

("Aurora" or "Counterplaintiff"), by its counsel, as its Counterclaims against

Plaintiffs/Counterdefendants, ACE American Insurance Corporation ("ACE"), Indemnity

Insurance Company of North America ("IICNA"), National Surety Corporation ("NSC"), and

The American Insurance Company ("AIC") (collectively, the "Counterdefendants"), states as

follows:

### The Parties

1.      Aurora is a Delaware corporation with its principal place of business in Colorado.

2.      Upon information and belief, ACE is a Pennsylvania corporation with its principal

place of business in Pennsylvania.

3.      Upon information and belief, IICNA is a Pennsylvania corporation with its

principal place of business in Pennsylvania.

4.      Upon information and belief, NSC is an Illinois corporation with its principal

place of business in Illinois.

5.      Upon information and belief, AIC is an Ohio corporation with its principal place

of business in Ohio.

### Jurisdiction and Venue

6.      This Court has jurisdiction based on diversity of citizenship pursuant to 28 U.S.C.

§ 1332 and Fed. R. Civ. P. 13, as the parties are of diverse citizenship and the amount in

controversy exceeds $75,000.00, exclusive of interest and costs.  By filing a declaratory action

against Aurora in this Court, Counterdefendants have consented to personal jurisdiction before

this Court.  Venue in this District is proper pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events or omissions giving rise to this Counterclaim occurred in this District.

## The Insurance Policies

7.      Counterdefendants ACE, IICNA and NSC provided general commercial liability insurance to Aurora pursuant to the insurance policies identified in Paragraphs 14-16 of the Complaint, partial or full copies of which appear to be attached to the Complaint as Exhibits B-G.  Counterdefendant AIC provided general commercial liability coverage to Aurora pursuant to insurance policies identified in Paragraph 35 of Aurora's Answer.

## The ACE Policy

8.      ACE issued to Aurora general liability coverage Policy No. FO-139293 covering the period from August 1, 2002 through August 1, 2003, which policy was renewed for the policy period August 1, 2003 through August 1, 2004.

9.      The ACE policy requires, among other things, that ACE defend Aurora against any suits seeking damage for "bodily injury" or "property damage," caused by an "occurrence" within the "coverage territory" during the policy period and/or any suits seeking damages out of a "personal and advertising injury" within the "coverage territory."

10.      The ACE policy defines "bodily injury" as, inter alia, "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

11.      The term "property damage" is defined in the ACE policy as "a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible

property that is not physically injured.   All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

12.      The ACE policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

13.      The ACE policy defines the "coverage territory" as, among other areas, "the United States of America."

14.      The term "personal and advertising injury" is defined in the ACE policy as "injury, including consequential 'bodily injury,' arising out of one or more of the following offenses: . . . [o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; . . . [t]he use of another's advertising idea in your 'advertisement;' <u>or</u> . . . [i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'" (emphasis supplied).

15.      Aurora has complied with all applicable conditions of the ACE policy, including having paid all premiums due in connection with the ACE policy, as well as providing proper notice to ACE.

### The IICNA Policies

16.      IICNA issued to Aurora the general liability coverage Policy Nos. FO-139292, FO-146246 and FO-146297 covering the period from August 1, 2002 through August 1, 2004.

17.      The IICNA policies require, among other things, that IICNA defend Aurora against any suits seeking damage for "bodily injury" or "property damage," caused by an "occurrence" within the "coverage territory" during the policy period and/or any suits seeking damages out of a "personal and advertising injury" within the "coverage territory."

18.     The IICNA policies define "bodily injury" as, <u>inter</u> <u>alia</u>, "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

19.     The term "property damage" is defined in the IICNA policies as "a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured.   All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

20.     The IICNA policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

21.     The IICNA policies define the "coverage territory" as, among other areas, "the United States of America."

22.     The term "personal and advertising injury" is defined in the IICNA policies as "injury, including consequential 'bodily injury,' arising out of one or more of the following offenses . . .[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; . . . [t]he use of another's advertising idea in your 'advertisement;' <u>or</u>  . . . [i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'" (emphasis supplied).

23.     Aurora has complied with all applicable conditions of the IICNA policies, including having paid all premiums due in connection with the IICNA policies, as well as providing proper notice to IICNA.

**The NSC Policies**

24.     NSC issued to Aurora the general liability coverage Policy Nos. S86 MXX 80843533 and S86 MXX 80859105 covering the period from May 1, 2005 through May 1, 2007.

25.     The NSC policies require, among other things, that NSC defend Aurora against any suits seeking damage for "bodily injury" or "property damage," caused by an "occurrence" within the "coverage territory" during the policy period and/or any suits seeking damages out of a "personal and advertising injury" within the "coverage territory."

26.     The NSC policies define "bodily injury" as, inter alia, "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

27.     The term "property damage" is defined in the NSC policies as "a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured.   All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

28.     The NSC policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

29.     The NSC policies define the "coverage territory" as, among other areas, "the United States of America."

30.     The term "personal and advertising injury" is defined in the NSC policies as "injury, including consequential bodily injury, arising out of one or more of the following offenses: . . .  [o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; . . .

[t]he use of another's advertising idea in your advertisement; <u>or</u> . . .[i]nfringing upon another's copyright, trade dress or slogan in your advertisement."  (emphasis supplied; additional emphasis omitted).

31.     Aurora has complied with all applicable conditions of the NSC policies, including having paid all premiums due in connection with the NSC policies, as well as providing proper notice to NSC.

<b><u>The AIC Policies</u></b>

32.     AIC issued to Aurora and some of its related entities the general liability coverage Policy Nos. 6 43 FRM80250251, 6 43 FRM06646251 and 6 43 FRM80255328 covering the period from June 1, 2005 through June 1, 2007.

33.     The AIC policies require, among other things, that AIC defend Aurora against any suits seeking damage for "bodily injury" or "property damage" caused by an "occurrence" during the policy period and/or any suits seeking damages out of a "personal injury" during the policy period or "advertising injury" in the coverage territory during the policy period.

34.     The AIC policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

35.     The term "property damage" is defined in the AIC policies as "a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured.   All such loss of use shall be deemed to occur at the time of the occurrence that caused it." (emphasis omitted).

36.     The AIC policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

37.     The term "personal injury" is defined in the AIC policies as "injury, other than bodily injury, arising out of one or more of the following offenses: . . .[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or . . . [o]ral or written publication of material that violates a person's right of privacy." (emphasis supplied; additional emphasis omitted).

38.     The term "advertising injury" is defined in the AIC policies as "an injury arising out of one or more of the following offenses:  a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; b. Oral or written publication of material that violates a person's right of privacy; c. Misappropriation of advertising ideas or style of doing business; or d. Infringement of copyright, title or slogan."

39.     Aurora has complied with all applicable conditions of the AIC policies, including having paid all premiums due in connection with the AIC policies, as well as providing proper notice to AIC.

**The Underlying Actions**

40.     Aurora produces organic milk that is sold by various private label customers as well as through its own label, "High Meadow."  Aurora's organic milk is sold by retail grocery stores throughout the country.  Aurora markets and sells its milk with the "USDA Organic" seal in accordance with the organic certifications issued to Aurora by two certifying agents -- the Colorado Department of Agriculture ("CDA") and Quality Assurance International ("QAI") --

acting pursuant to the authority vested in them by the United States Department of Agriculture ("USDA") under the Organic Food Production Act of 1990 ("OFPA") (7 U.S.C. 6501 et seq.) and the National Organic Program ("NOP") regulations (7 C.F.R. Part 205 et seq.).  These certifications are and at all times have been valid and have never been suspended or revoked.

41.     Aurora has been named in thirteen consumer class actions filed in the courts of six different states.  In addition, consumers have also filed six class actions against some of Aurora's retailer customers, basing their complaints against the retailers on Aurora's alleged wrongdoing. These nineteen class actions were consolidated before the United States District Court for the Eastern District of Missouri by the Judicial Panel on Multidistrict Litigation pursuant to 28 U.S.C. § 1407 in the action In re Aurora Dairy Corp., Case No. 4:08-md-01907-ERW.

42.     The claimants in the underlying actions have alleged that Aurora sold milk labeled "organic" that contained contaminants and other non-organic compounds and that was not in fact produced in accordance with federal organic standards as detailed in OFPA and the NOP.  See, e.g., Freyre v. Aurora Dairy Corp., Case No. 07-cv-02183 (D. Colo., filed Oct. 17, 2007) at ¶¶ 8, 16-18; Still v. Aurora Dairy Corp., d/b/a Aurora Organic Dairy, 07-cv-02188 (D. Colo., filed Oct. 17, 2007) at ¶¶ 40, 53-54.  Based on these allegations, the claimants in the underlying actions have asserted a variety of causes of action, including causes of action for negligence and negligence per se.  See, e.g., Mothershead v. Aurora Dairy Corporation d/b/a Aurora Organic Dairy, Case No. 4:07-cv-01701 (E.D. Mo., filed Oct. 7, 2007) at ¶¶ 102-118 ("Mothershead"); Still v. Aurora Dairy Corp., d/b/a Aurora Organic Dairy, 07-cv-02188 (D. Colo., filed Oct. 17, 2007) at ¶¶ 97-104.

43.     The claimants in the underlying actions allege that they purchased organic milk because it is healthier and free of bovine growth hormone, antibiotics and pesticides.  See, e.g., White v. Aurora Dairy Corp., d/b/a Aurora Organic Dairy, 07-cv-9418 (S.D.N.Y., filed Oct. 19, 2007) at ¶ 10; Kaye v. Aurora Dairy Corp., d/b/a Aurora Organic Dairy, cv-07-4425 (E.D.N.Y., filed Oct. 23, 2007) at ¶ 9.  The claimants in the underlying actions further allege that the milk provided by Aurora that they purchased allegedly exposed them, their families and their friends to pesticides, hormones, antibodies and other chemicals and/or has generally caused them injury or damage.  See, e.g., Mothershead Compl. at ¶ 107.

44.     The pleadings in the underlying actions do not implicate, on their faces, any policy exclusions for "bodily injury."  See, e.g., Mothershead.

45.     Pursuant to the terms of the policies and as provided by law, Counterdefendants are obligated to assume the defense of Aurora in full and/or pay all defense-related costs, including attorneys' fees and supplemental expenses, with respect to the Mothershead action because allegations exist in the Mothershead action that state one or more claims falling within or potentially within the policy coverage.   This duty to defend further applies even if the allegations in the Mothershead action are groundless, false or fraudulent.

46.     Aurora provided Counterdefendants with timely notice of each of the underlying actions, along with copies of the complaints, and requested that Counterdefendants defend and indemnify Aurora.

47.     On or about January 14, 2008, NSC and AIC agreed to defend Aurora in the Mothershead action, but subsequently denied coverage for all other underlying actions that

comprise <u>In re Aurora Dairy Corp.</u>  NSC and AIC's letter, however, was sent to the wrong address by NSC and AIC and was not actually received by Aurora until April, 2008.

48.     On or about January 28, 2008, IICNA and ACE similarly agreed to defend Aurora in the <u>Mothershead</u> action, but subsequently denied coverage for all other underlying actions that comprise <u>In re Aurora Dairy Corp.</u>

49.     On or about April 15, 2008, NSC and AIC learned that they had sent their prior correspondence to the wrong address and re-sent their January correspondence to Aurora via e-mail, affirming that they would defend Aurora in the <u>Mothershead</u> action.

50.     Counterdefendants, however, have neither provided Aurora with any assistance in the defense of the <u>Mothershead</u> action nor paid any sums to Aurora for the defense of the <u>Mothershead</u> action, in direct violation of both the terms of the relevant policies and of Counterdefendants' representations to Aurora.

<strong><u>Count I – Declaratory Judgment</u></strong>

51.     Aurora realleges and incorporates herein by reference the foregoing Paragraphs 1 through 50 of its Counterclaim as if set forth fully herein.

52.     An actual controversy has arisen and now exists between Aurora and Counterdefendants concerning their respective rights, obligations and other interests under the policies.  Counterdefendants have at all relevant times been obligated under the policies to provide a complete and full defense to Aurora in the <u>Mothershead</u> action, which they have failed to do to date.

53.     Aurora seeks a judicial determination of the obligations of Counterdefendants to reimburse Aurora's costs of defense to date and to pay such further defined costs as Aurora may hereafter incur in connection with the <u>Mothershead</u> action.

54.     A prompt judicial determination is necessary and appropriate at this time in order that Aurora may ascertain its rights to a full and complete defense in the <u>Mothershead</u> action and its right to reimbursement for defense costs already incurred under the policies.

WHEREFORE, Aurora prays for judgment as follows:

A.      For a declaration that Counterdefendants have at all relevant times heretofore been obligated based on the allegations in the <u>Mothershead</u> action to provide a defense to Aurora for that lawsuit in accordance with the terms of the policies and shall continue to be so obligated; and

B.      For such other and further legal, equitable or other relief as this Court deems just and proper.

<u>**Count II – Claim for Breach of Contract**</u>

55.     Aurora realleges and incorporates herein by reference the foregoing Paragraphs 1 through 54 of its Counterclaim as if set forth fully herein.

56.     The policies require Counterdefendants to defend Aurora against claims for liability potentially covered by those policies, including, <u>inter alia</u>, claims for damages because of "bodily injury," "property damage," "personal injury" and/or "advertising injury."

57.     The claimants in the <u>Mothershead</u> action are seeking damages against Aurora for claims which are, at an absolute minimum, potentially or possibly within the coverage afforded by the policies issued by Counterdefendants.

58.     On the face of the complaint in the <u>Mothershead</u> action, none of the exclusions contained in the policies bars potential coverage for the claims made against Aurora in that lawsuit.

59.     By failing to defend Aurora in the <u>Mothershead</u> action, Counterdefendants have breached their duties under the policies.

60.     As a direct and proximate result of each such breach of the policies, Aurora has incurred and continues to incur substantial costs, including but not limited to attorneys' fees, expenses and costs in connection with the <u>Mothershead</u> action, as will be proven at or before the trial of this matter.

61.     Aurora has performed all conditions required of it under the policies issued to it by Counterdefendants.

WHEREFORE, Aurora prays for judgment as follows:

A.      For all of Aurora's costs of defense, including but not limited to attorneys' fees, expenses and costs, together with interest thereon running from the date such costs were incurred, in connection with the <u>Mothershead</u> action; and

B.      For such other and further legal, equitable or other relief as this Court deems just and proper.

### <u>Count III – Bad Faith Breach of an Insurance Contract</u>

62.     Aurora realleges and incorporates herein by reference the foregoing Paragraphs 1 through 61 of its Counterclaim as if set forth fully herein.

63.     By unreasonably failing to defend Aurora in the Mothershead action, Counterdefendants have (1) breached their contractual obligations to Aurora; (2) breached the implied duty of good faith and fair dealing; and (3) acted in bad faith.

64.     Counterdefendants' breach of their contractual obligations was in bad faith because, inter alia, Counterdefendants knew or should have known that there was no reasonable basis for Counterdefendants to fail to fulfill their duty to defend Aurora in the Mothershead action.

65.     By way of example, Counterdefendants conceded they had a duty to defend Aurora in the Mothershead action on or about January 14, 2008 and reaffirmed that duty on or about March 6, 2008 and on or about April 15, 2008.  On or about June 11, 2008, however, Counterdefendants withdrew their commitment to defend Aurora, despite the fact that there had been no material changes to, developments in or new information regarding the Mothershead action since their prior correspondence with and commitment to Aurora.

66.     Moreover, Counterdefendants have failed and continue to fail to reimburse Aurora for any costs incurred by Aurora in the Mothershead action.

67.     As a direct and proximate result of Counterdefendants' bad faith, Aurora has been damaged and has incurred and continues to incur substantial costs, including, but not limited to, attorneys' fees, expenses and costs in connection with the Mothershead action.

68.     As a further result of Counterdefendants' bad faith refusal to satisfy their coverage obligation, Aurora was forced to file these Counterclaims and thereby incurred unnecessary legal fees and costs in order to obtain the coverage due to it under the policies issued by Counterdefendants.

WHEREFORE, Aurora prays for judgment as follows:

A.　　For all of Aurora's costs of defense, including but not limited to attorneys' fees, expenses and costs in connection with the <u>Mothershead</u> action, together with interest thereon running from the date such costs were incurred;

B.　　For Aurora's attorneys' fees and other reasonable and necessary expenses incurred in connection with this action;

C.　　For accrued interest on the amount of the judgment as provided by law;

D.　　For punitive damages; and

E.　　For such other and further legal, equitable or other relief as this Court deems just and proper.

## JURY DEMAND

Aurora hereby demands trial by jury on all claims asserted in the Complaint and Aurora's Counterclaims that are triable by a jury.

Dated:  July 28, 2008

Respectfully submitted,

**SANDER, INGEBRETSEN & PARISH, P.C.**


<u>s/Daniel F. Wake</u>
Daniel F. Wake
633 17th Street, Suite 1900
Denver, Colorado  80202
Telephone: (303) 285-5544
Facsimile: (303) 285-5301
Email: dwake@siplaw.com

Mark S. Mester
**LATHAM & WATKINS LLP**
Livia M. Kiser
233 South Wacker Drive
Suite 5800 Sears Tower
Chicago, Illinois  60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
Email: mark.mester@lw.com
livia.kiser@lw.com

**Attorneys For Defendant Aurora Dairy
Corporation, d/b/a Aurora Organic Dairy**

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of July, 2008, I electronically filed the foregoing Answer, Affirmative Defenses and Counterclaims of Defendant Aurora Dairy Corporation to Plaintiffs' Complaint for Declaratory Relief with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

- **Bethany K. Culp**
  bculp@hinshawlaw.com,dhaugen@hinshawlaw.com

- **Garrick Lloyd Gallagher**
  Garrick.Gallagher@SandersParks.com,Peggy.Bailey@SandersParks.com

- **Shushanie E. Kindseth**
  skindseth@hinshawlaw.com,llivingston@hinshawlaw.com

- **Debora L. Verdier**
  Debora.Verdier@SandersParks.com,Kimberly.Hensinger@SandersParks.com

s/Daniel F. Wake
Daniel F. Wake
Sander, Ingebretsen & Parish, P.C.
633 17th Street, Suite 1900
Denver, Colorado  80202
Telephone: (303) 285-5544
Facsimile: (303) 285-5301
Email: dwake@siplaw.com