# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:08-cv-01236-EWN-BNB

ACE American Insurance Corporation, a Pennsylvania corporation; Indemnity Insurance Company of North America, a Pennsylvania corporation; National Surety Corporation, an Illinois corporation; the American Insurance Company, an Ohio corporation;

        Plaintiffs,

   v.

Aurora Dairy Corporation, d/b/a Aurora Organic Dairy, a Delaware corporation,

        Defendant.

---

## PLAINTIFFS/COUNTERDEFENDANTS ACE AMERICAN INSURANCE CORPORATION AND INDEMNITY INSURANCE COMPANY OF NORTH AMERICA'S JOINT ANSWER TO COUNTERCLAIMS OF DEFENDANT

Plaintiffs/Counterdefendants, ACE American Insurance Corporation ("ACE") and Indemnity Insurance Company of North America ("IICNA"), for their Answer to Defendant/Counterplaintiff Aurora Dairy Corporation's Counterclaims, admit, deny and allege as follows:

## The Parties

1.      Aurora is a Delaware corporation with its principal place of business in Colorado.

**ANSWER:  Admit on information and belief the allegations contained in paragraph 1 of the Counterclaim.**

2.      Upon information and belief, ACE is a Pennsylvania corporation with its principal place of business in Pennsylvania.

**ANSWER:  Admit the allegations contained in paragraph 2 of the Counterclaim.**

3.      Upon information and belief, IICNA is a Pennsylvania corporation with its principal place of business in Pennsylvania.

**ANSWER:  Admit the allegations contained in paragraph 3 of the Counterclaim.**

4.      Upon information and belief, NSC is an Illinois corporation with its principal place of business in Illinois.

**ANSWER:  Admit on information and belief the allegations contained in paragraph 4 of the Counterclaim.**

5.      Upon information and belief, AIC is an Ohio corporation with its principal place of business in Ohio.

**ANSWER:  Admit on information and belief the allegations contained in paragraph 5 of the Counterclaim.**

### Jurisdiction and Venue

6.      This Court has jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332 and Fed. R. Civ. P. 13, as the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  By filing a declaratory action against Aurora in this Court, Counterdefendants have consented to personal jurisdiction before this Court.  Venue in this District is proper pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events or omissions giving rise to this Counterclaim occurred in this District.

**ANSWER:   Admit the allegations contained in paragraph 6 of the Counterclaim.**

### The Insurance Policies

7.      Counterdefendants ACE, IICNA and NSC provided general commercial liability insurance to Aurora pursuant to the insurance policies identified in Paragraphs 14-16 of the Complaint, partial or full copies of which appear to be attached to the Complaint as Exhibits B-G.  Counterdefendant AIC provided general commercial liability coverage to Aurora pursuant to insurance policies identified in Paragraph 35 of Aurora's Answer.

**ANSWER:   Admit the allegations contained in the first sentence of paragraph 7 of the Counterclaim.   Deny, on information and belief, that AIC provided general commercial liability coverage to Aurora.**

### The ACE Policy

8.      ACE issued to Aurora general liability coverage Policy No. FO-139293 covering the period from August 1, 2002 through August 1, 2003, which policy was renewed for the policy period August 1, 2003 through August 1, 2004.

**ANSWER:   Admit the allegations contained in paragraph 8 of the Counterclaim.**

9.     The ACE policy requires, among other things, that ACE defend Aurora against any suits seeking damage for "bodily injury" or "property damage," caused by an "occurrence" within the "coverage territory" during the policy period and/or any suits seeking damages out of a "personal and advertising injury" within the "coverage territory."

**ANSWER:   Deny the allegations in paragraph 9 accurately describe the scope of the defense obligation under the referenced insurance contract.   The insurance contract referenced in paragraph 9 speaks for itself, and to the extent that the allegations in paragraph 9 vary therewith, they are denied.**

10.     The ACE policy defines "bodily injury" as, <u>inter</u> <u>alia</u>, "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

**ANSWER:   Admit the quoted language contained in paragraph 10 is included in the referenced insurance contract.   However, the insurance contract referenced in paragraph 10 speaks for itself, and to the extent that the allegations in paragraph 10 vary therewith, they are denied.**

11.     The term "property damage" is defined in the ACE policy as "a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

**ANSWER:** Admit the quoted language contained in paragraph 11 is included in the referenced insurance contract. However, the insurance contract referenced in paragraph 11 speaks for itself, and to the extent that the allegations in paragraph 11 vary therewith, they are denied.

12.   The ACE policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

**ANSWER:** Admit the quoted language contained in paragraph 12 is included in the referenced insurance contract. However, the insurance contract referenced in paragraph 12 speaks for itself, and to the extent that the allegations in paragraph 12 vary therewith, they are denied.

13.   The ACE policy defines the "coverage territory" as, among other areas, 'the United States of America."

**ANSWER:** Deny paragraph 13 of the Counterclaim accurately describes the scope of the "coverage territory" under the referenced insurance contract. Admit the quoted language contained in paragraph 13 is included in the referenced insurance contract. However, the insurance contract referenced in paragraph 13 speaks for itself, and to the extent that the allegations in paragraph 13 vary therewith, they are denied.

14.    The term "personal and advertising injury" is defined in the ACE policy as "injury, including consequential 'bodily injury,' arising out of one or more of the following offenses: … [o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; … [t]he use of another's advertising idea in your 'advertisement;' or … [i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'" (emphasis supplied).

**ANSWER:  Deny paragraph 14 of the Counterclaim accurately describes the definition of "personal and advertising injury" under the referenced insurance contract.  Admit the quoted language contained in paragraph 14 is included in the referenced insurance contract.  However, the insurance contract referenced in paragraph 14 speaks for itself, and to the extent that the allegations in paragraph 14 vary therewith, they are denied.**

15.    Aurora has complied with all applicable conditions of the ACE policy, including having paid all premiums due in connection with the ACE policy, as well as providing proper notice to ACE.

**ANSWER:   Deny the allegations of paragraph 15 of the Counterclaim.**

### The IICNA Policies

16.    IICNA issued to Aurora the general liability coverage Policy Nos. FO-139292, FO-146246 and FO-146297 covering the period from August 1, 2002 through August 1, 2004.

**ANSWER:  Admit the policies referenced in paragraph 16 had policy periods spanning various time periods between August 1, 2002 and August 1, 2004.**

However, to the extent paragraph 16 seeks to assert that each of the policies had a policy period of August 1, 2002 through August 1, 2004, those allegations are denied.

17.    The IICNA policies require, among other things, that IICNA defend Aurora against any suits seeking damage for "bodily injury" or "property damage," caused by an "occurrence" within the "coverage territory" during the policy period and/or any suits seeking damages out of a "personal and advertising injury" within the "coverage territory."

**ANSWER:   Deny the allegations in paragraph 17 accurately describe the scope of the defense obligation under the referenced insurance contracts.   The insurance contracts referenced in paragraph 17 speak for themselves, and to the extent that the allegations in paragraph 17 vary therewith, they are denied.**

18.    The IICNA policies define "bodily injury" as, inter alia, "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

**ANSWER:   Admit the quoted language contained in paragraph 18 is included in the referenced insurance contracts.   However, the insurance contracts referenced in paragraph 18 speak for themselves, and to the extent that the allegations in paragraph 18 vary therewith, they are denied.**

19.    The term "property damage" is defined in the IICNA policies as "a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b.

Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

**ANSWER:  Admit the quoted language contained in paragraph 19 is included in the referenced insurance contracts.  However, the insurance contracts referenced in paragraph 19 speak for themselves, and to the extent that the allegations in paragraph 19 vary therewith, they are denied.**

20.    The IICNA policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

**ANSWER:  Admit the quoted language contained in paragraph 20 is included in the referenced insurance contracts.  However, the insurance contracts referenced in paragraph 20 speak for themselves, and to the extent that the allegations in paragraph 20 vary therewith, they are denied.**

21.    The IICNA policies define the "coverage territory" as, among other areas, "the United States of America."

**ANSWER:  Deny paragraph 21 of the Counterclaim accurately describes the "coverage territory" under the referenced insurance contracts.  Admit the quoted language contained in paragraph 21 is included in the referenced insurance contracts.  However, the insurance contracts referenced in paragraph 21 speak for**

themselves, and to the extent that the allegations in paragraph 21 vary therewith, they are denied.

22.    The term "personal and advertising injury" is defined in the IICNA policies as "injury, including consequential 'bodily injury,' arising out of one or more of the following offenses … [o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; … [t]he use of another's advertising idea in your 'advertisement;' or … [i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'" (emphasis supplied).

**ANSWER**:  Deny paragraph 22 of the Counterclaim accurately describes the definition of "personal and advertising injury" under the referenced insurance contracts.  Admit the quoted language contained in paragraph 22 is included in the referenced insurance contracts.  However, the insurance contracts referenced in paragraph 22 speak for themselves, and to the extent that the allegations in paragraph 22 vary therewith, they are denied.

23.    Aurora has complied with all applicable conditions of the IICNA policies, including having paid all premiums due in connection with the IICNA policies, as well as providing proper notice to IICNA.

**ANSWER**:   Deny the allegations of paragraph 23 of the Counterclaim.

### The NSC Policies

24.    NSC issued to Aurora the general liability coverage Policy Nos. S86 MXX 80843533 and S86 MXX 80859105 covering the period from May 1, 2005 through May 1, 2007.

**ANSWER: Admit on information and belief the allegations contained in paragraph 24 of the Counterclaim.**

25.    The NSC policies require, among other things, that NSC defend Aurora against any suits seeking damage for "bodily injury" or "property damage," caused by an "occurrence" within the "coverage territory" during the policy period and/or any suits seeking damages out of a "personal and advertising injury" within the "coverage territory."

**ANSWER:   The allegations in paragraph 25 of the Counterclaim do not pertain to these answering Counterdefendants or their insurance policies and are therefore denied as to these answering Counterdefendants.**

26.    The NSC policies define "bodily injury" as, inter alia, "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**ANSWER:   The allegations in paragraph 26 of the Counterclaim do not pertain to these answering Counterdefendants or their insurance policies and are therefore denied as to these answering Counterdefendants.**

27.    The term "property damage as defined in the NSC policies as "a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

**ANSWER:   The allegations in paragraph 27 of the Counterclaim do not pertain to these answering Counterdefendants or their insurance policies and are therefore denied as to these answering Counterdefendants.**

28.    The NSC policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

**ANSWER:   The allegations in paragraph 28 of the Counterclaim do not pertain to these answering Counterdefendants or their insurance policies and are therefore denied as to these answering Counterdefendants.**

29.    The NSC policies define the "coverage territory" as, among other areas, "the United States of America."

**ANSWER:   The allegations in paragraph 29 of the Counterclaim do not pertain to these answering Counterdefendants or their insurance policies and are therefore denied as to these answering Counterdefendants.**

30.     The term "personal and advertising injury" is defined in the NSC policies as "injury, including consequential bodily injury, arising out of one or more of the following offenses: … [o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; … [t]he use of another's advertising idea in your advertisement; or … [i]nfringing upon another's copyright, trade dress or slogan in your advertisement." (emphasis supplied; additional emphasis omitted).

**ANSWER:   The allegations in paragraph 30 of the Counterclaim do not pertain to these answering Counterdefendants or their insurance policies and are therefore denied as to these answering Counterdefendants.**

31.     Aurora has complied with all applicable conditions of the NSC policies, including having paid all premiums due in connection with the NSC policies, as well as providing proper notice to NSC.

**ANSWER:   The allegations in paragraph 31 of the Counterclaim do not pertain to these answering Counterdefendants or their insurance policies and are therefore denied as to these answering Counterdefendants.**

<u>**The AIC Policies**</u>

32.     AIC issued to Aurora and some of its related entities the general liability coverage Policy Nos. 6 43 FRM80250251, 6 43 FRM06646251 and 6 43 FRM80255328 covering the period from June 1, 2005 through June 1, 2007.

**ANSWER:   The allegations in paragraph 32 of the Counterclaim do not pertain to these answering Counterdefendants or their insurance policies and are therefore denied as to these answering Counterdefendants.**

33.     The AIC policies require, among other things, that AIC defend Aurora against any suits seeking damage for "bodily injury" or "property damage" caused by an "occurrence" during the policy period and/or any suits seeking damages out of a "personal injury" during the policy period or "advertising injury" in the coverage territory during the policy period.

**ANSWER:  The allegations in paragraph 33 of the Counterclaim do not pertain to these answering Counterdefendants or their insurance policies and are therefore denied as to these answering Counterdefendants.**

34.     The AIC policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**ANSWER:  The allegations in paragraph 34 of the Counterclaim do not pertain to these answering Counterdefendants or their insurance policies and are therefore denied as to these answering Counterdefendants.**

35.     The term "property damage" is defined in the AIC policies as "a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the occurrence that caused it."  (emphasis omitted).

**ANSWER:  The allegations in paragraph 35 of the Counterclaim do not pertain to these answering Counterdefendants or their insurance policies and are therefore denied as to these answering Counterdefendants.**

36.     The AIC policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

**ANSWER:   The allegations in paragraph 36 of the Counterclaim do not pertain to these answering Counterdefendants or their insurance policies and are therefore denied as to these answering Counterdefendants.**

37.     The term "personal injury" is defined in the AIC policies as "injury, other than bodily injury, arising out of one or more of the following offenses: … [o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; <u>or</u> … [o]ral or written publication of material that violates a person's right of privacy." (emphasis supplied; additional emphasis omitted).

**ANSWER:   The allegations in paragraph 37 of the Counterclaim do not pertain to these answering Counterdefendants or their insurance policies and are therefore denied as to these answering Counterdefendants.**

38.     The term "advertising injury" is defined in the AIC policies as "an injury arising out of one or more of the following offenses: a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; b. Oral or written publication of material that violates a person's right of privacy; c. Misappropriation of advertising ideas or style of doing business; or d. Infringement of copyright, title or slogan."

**ANSWER:   The allegations in paragraph 38 of the Counterclaim do not pertain to these answering Counterdefendants or their insurance policies and are therefore denied as to these answering Counterdefendants.**

39.     Aurora has complied with all applicable conditions of the AIC policies, including having paid all premiums due in connection with the AIC policies, as well as providing proper notice to AIC.

**ANSWER:   The allegations in paragraph 39 of the Counterclaim do not pertain to these answering Counterdefendants or their insurance policies and are therefore denied as to these answering Counterdefendants.**

## The Underlying Actions

40.     Aurora produces organic milk that is sold by various private label customers as well as through its own label, "High Meadow." Aurora's organic milk is sold by retail grocery stores throughout the country. Aurora markets and sells its milk with the "USDA Organic" seal in accordance with the organic certifications issued to Aurora by two certifying agents – the Colorado Department of Agriculture ("CDA") and Quality Assurance International ("QAI") – acting pursuant to the authority vested in them by the United States Department of Agriculture ("USDA") under the Organic Food Production Act of 1990 ("OFPA") (7 U.S.C. 6501 et seq.) and the National Organic Program ("NOP") regulations (7 C.F.R. Part 205 et seq.). These certifications are and at all times have been valid and have never been suspended or revoked.

**ANSWER:   Lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 40 of the Counterclaim, and therefore the allegations of paragraph 40 are denied.**

41.     Aurora has been named in thirteen consumer class actions filed in the courts of six different states.  In addition, consumers have also filed six class actions against some of Aurora's retailer customers, basing their complaints against the retailers on Aurora's alleged wrongdoing.  These nineteen class actions were consolidated before the United States District Court for the Eastern District of Missouri by the Judicial Panel on Multidistrict Litigation pursuant to 28 U.S.C. § 1407 in the action <u>In re Aurora Dairy corp.,</u> Case No. 4:08-md-01907-ERW.

**ANSWER: Admit on information and belief the allegations contained in paragraph 41 of the Counterclaim.**

42.     The claimants in the underlying actions have alleged that Aurora sold milk labeled "organic" that contained contaminants and other non-organic compounds and that was not in fact produced in accordance with federal organic standards as detailed in OFPA and the NOP.  <u>See, e.g.,</u> <u>Freyre v. Aurora Dairy Corp.,</u> Case No. 07-cv-02183 (D. Colo., filed Oct. 17, 2007) at ¶¶ 8, 16-18; <u>Still v. Aurora Dairy Corp., d/b/a Aurora Organic Dairy,</u> 07-cv-02188 (D. Colo., filed Oct. 17, 2007) at ¶¶ 40, 53-54.  Based on these allegations, the claimants in the underlying actions have asserted a variety of causes of action, including causes of action for negligence and negligence <u>per se</u>.  <u>See, e.g.,</u> <u>Mothershead v. Aurora Dairy Corporation d/b/a Aurora Organic Dairy,</u> Case No. 4:07-cv-01701 (E.D. Mo., filed Oct. 7, 2007) at ¶ 102-118 ("Mothershead"); <u>Still v. Aurora Dairy Corp., d/b/a Aurora Organic Dairy,</u> 07-cv-02188 (D. Colo., filed Oct. 17, 2007) at ¶ 97-104.

**ANSWER: Admit that the claimants in the underlying actions allege that Defendant sold milk that was labeled organic but was not in fact produced in accordance with federal organic standards.  Deny the remaining allegations in Paragraph 42 of the Counterclaim.**

43.    The claimants in the underlying actions allege that they purchased organic milk because it is healthier and free of bovine growth hormone, antibiotics and pesticides. See, e.g., White v. Aurora Dairy Corp., d/b/a aurora Organic Dairy, 07-cv-9418 (S.D.N.Y., filed Oct. 19, 2007) at ¶ 10; Kaye v. Aurora Dairy Corp., d/b/a Aurora Organic Dairy, cv-07-4425 (E.D.N.Y., filed Oct. 23, 2007) at ¶ 9.  The claimants in the underlying actions further allege that the milk provided by Aurora that they purchased allegedly exposed them, their families and their friends to pesticides, hormones, antibodies and other chemicals and/or has generally caused them injury or damage.  See, e.g., Mothershead Compl. at ¶ 107.

**ANSWER:   Deny that the allegations contained in the first sentence of paragraph 43 of the Counterclaim accurately describe the allegations that have been made in the referenced litigation.  Admit that paragraph 107(c) of the original Complaint in the Mothershead action alleged that Plaintiffs and Class exposed themselves, their family and friends to pesticides, hormones, antibiotics and other chemicals which were prohibited under organic standards.   Deny that the Plaintiffs in the Mothershead action are seeking to recover any covered damages, including those for "bodily injury" resulting from an "occurrence" as those terms are defined by the relevant insurance contracts.**

44.    The pleadings in the underlying actions do not implicate, on their faces, any policy exclusions for "bodily injury."  See, e.g., Mothershead.

**ANSWER:   Deny the allegations contained in paragraph 44 of the Counterclaim.**

45.     Pursuant to the terms of the policies and as provided by law, Counterdefendants are obligated to assume the defense of Aurora in full and/or pay all defense-related costs, including attorneys' fees and supplemental expenses, with respect to the Mothershead action because allegations exist in the Mothershead action that state one or more claims falling within or potentially within the policy coverage.  This duty to defend further applies even if the allegations in the Mothershead action are groundless, false or fraudulent.

**ANSWER:  Deny the allegations contained in paragraph 45 of the Counterclaim.**

**Answering Counterdefendants affirmatively state that paragraph 45 contains legal conclusions that are within the purview of the Court.**

46.     Aurora provided Counterdefendants with timely notice of each of the underlying actions, along with copies of the complaints, and requested that Counterdefendants defend and indemnify Aurora.

**ANSWER:   Deny the allegations contained in paragraph 46 of the Counterclaim.**

47.     On or about January 14, 2008, NSC and AIC agreed to defend Aurora in the Mothershead action, but subsequently denied coverage for all other underlying actions that comprise In re Aurora Dairy Corp.  NSC and AIC's letter, however, was sent to the wrong address by NSC and AIC and was not actually received by Aurora until April, 2008.

**ANSWER:   The allegations in paragraph 47 of the Counterclaim do not pertain to these answering Counterdefendants or their insurance policies and are therefore denied as to these answering Counterdefendants.**

48.     On or about January 28, 2008, IICNA and ACE similarly agreed to defend Aurora in the <u>Mothershead</u> action, but subsequently denied coverage for all other underlying actions that comprise <u>In re Aurora Dairy Corp.</u>

**ANSWER:   Admit ACE and IICNA offered to defend Aurora in the <u>Mothershead</u> action under a reservation of rights and subject to conditions that were set forth expressly in the 01/28/08 letter and in subsequent communications with Aurora. Those conditions included the right to approve defense counsel, determine acceptable rates to be charged, and seek declaratory relief that they owed no defense in the <u>Mothershead</u> Matter. Aurora did not respond to the offer of defense set forth in the 01/28/08 letter, which has never been withdrawn. Deny the remaining allegations of paragraph 48 of the Counterclaim.**

49.     On or about April 15, 2008, NSC and AIC learned that they had sent their prior correspondence to the wrong address and re-sent their January correspondence to Aurora via e-mail, affirming that they would defend Aurora in the <u>Mothershead</u> action.

**ANSWER:   The allegations in paragraph 49 of the Counterclaim do not pertain to these answering Counterdefendants or their insurance policies and are therefore denied as to these answering Counterdefendants.**

50.     Counterdefendants, however, have neither provided Aurora with any assistance in the defense of the <u>Mothershead</u> action nor paid any sums to Aurora for the defense of the <u>Mothershead</u> action, in direct violation of both the terms of the relevant policies and of Counterdefendants' representations to Aurora.

**ANSWER:**   Deny the allegations contained in paragraph 50 of the Counterclaim. The answering Counterdefendants affirmatively allege ACE and IICNA offered to defend Aurora in the <u>Mothershead</u> action under a reservation of rights and subject to conditions that were set forth expressly in the 01/28/08 letter and in subsequent communications with Aurora.   Those conditions included the right to approve defense counsel, determine acceptable rates to be charged, and seek declaratory relief that they owed no defense in the <u>Mothershead</u> Matter.   Aurora did not respond to the offer of defense set forth in the 01/28/08 letter, which has never been withdrawn.   Under the relevant insurance contracts, neither ACE nor IICNA has a duty to reimburse Aurora for either costs or fees incurred without the consent of ACE or IICNA or for costs or fees incurred in the defense of actions which do not seek to recover damages covered by the relevant insurance contracts.   Aurora never obtained the consent of ACE or IICNA.

### <u>Count I – Declaratory Judgment</u>

51.    Aurora realleges and incorporates herein by reference the foregoing Paragraphs 1 through 50 of its Counterclaim as if set forth fully herein.

**ANSWER:**   ACE and IICNA reallege and incorporate by reference their responses to Paragraphs 1 – 50 of the Counterclaim.

52.    An actual controversy has arisen and now exists between Aurora and Counterdefendants concerning their respective rights, obligations and other interests

under the policies.  Counterdefendants have at all relevant times been obligated under the policies to provide a complete and full defense to Aurora in the Mothershead action, which they have failed to do to date.

**ANSWER:   Admit the allegations contained in the first sentence of paragraph 52 of the Counterclaim.   Deny the remaining allegations of Paragraph 52 of the Counterclaim.   The answering Counterdefendants affirmatively allege ACE and IICNA agreed to defend Aurora in the Mothershead action under a reservation of rights and subject to conditions that were set forth expressly in the 01/28/08 letter and in subsequent communications with Aurora.   Those conditions included the right to approve defense counsel, determine acceptable rates to be charged, and seek declaratory relief that they owed no defense in the Mothershead Matter.   Aurora did not respond to the offer of defense set forth in the 01/28/08 letter, which has never been withdrawn.   Under the relevant insurance contracts, neither ACE nor IICNA has a duty to reimburse Aurora for either costs or fees incurred without the consent of ACE or IICNA or for costs or fees incurred in the defense of actions which do not seek to recover damages covered by the relevant insurance contracts.   Aurora never obtained the consent of ACE or IICNA.**

53.    Aurora seeks a judicial determination of the obligations of Counterdefendants to reimburse Aurora's costs of defense to date and to pay such further defined costs as Aurora may hereafter incur in connection with the Mothershead action.

**ANSWER:** Lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations about what Defendant "seeks" as stated in paragraph 49 of the Counterclaim.

54.     A prompt judicial determination is necessary and appropriate at this time in order that Aurora may ascertain its rights to a full and complete defense in the <u>Mothershead</u> action and its right to reimbursement for defense costs already incurred under the policies.

**ANSWER:** Admit that a prompt judicial determination is necessary and appropriate to ascertain the rights and responsibilities of the parties.   Deny the remaining allegations contained in paragraph 54 of the Counterclaim.

### Count II – Claim for Breach of Contract

55.     Aurora realleges and incorporates herein by reference the foregoing Paragraphs 1 through 54 of its Counterclaim as if set forth fully herein.

**ANSWER:**   ACE and IICNA reallege and incorporate by reference their responses to Paragraphs 1 – 54 of the Counterclaim.

56.     The policies require Counterdefendants to defend Aurora against claims for liability potentially covered by those policies, including, <u>inter alia</u>, claims for damages because of "bodily injury," "property damage," "personal injury" and/or "advertising injury."

**ANSWER:   Deny that paragraph 56 of the Counterclaim accurately describes the scope of the defense obligation under answering Counterdefendants' relevant insurance contracts.   The relevant insurance contracts speak for themselves and, to the extent the allegations of paragraph 56 of the Counterclaim vary therewith, they are denied.**

57.    The claimants in the <u>Mothershead</u> action are seeking damages against Aurora for claims which are, at an absolute minimum, potentially or possibly within the coverage afforded by the policies issued by Counterdefendants.

**ANSWER:   Deny the allegations contained in paragraph 57 of Counterclaim.**

58.    On the face of the complaint in the <u>Mothershead</u> action, none of the exclusions contained in the policies bars potential coverage for the claims made against Aurora in that lawsuit.

**ANSWER:   Deny the allegations contained in paragraph 58 of the Counterclaim.**

59.    By failing to defend Aurora in the <u>Mothershead</u> action, Counterdefendants have breached their duties under the policies.

**ANSWER:   Deny the allegations contained in paragraph 59 of the Counterclaim.**

60.    As a direct and proximate result of each such breach of the policies, Aurora has incurred and continues to incur substantial costs, including but not limited to attorneys'

fees, expenses and costs in connection with the <u>Mothershead</u> action, as will be proven at or before the trial of this matter.

**ANSWER:   Deny the allegations contained in paragraph 60 of the Counterclaim.**

61.     Aurora has performed all conditions required of it under the policies issued to it by Counterdefendants.

**ANSWER:   Deny the allegations contained in paragraph 61 of the Counterclaim.**

### Count III – Bad Faith Breach of an Insurance Contract

62.     Aurora realleges and incorporates herein by reference the foregoing Paragraphs 1 through 61 of its Counterclaim as if set forth fully herein.

**ANSWER:   ACE and IICNA reallege and incorporate by reference their responses to Paragraphs 1 – 61 of the Counterclaim.**

63.     By unreasonably failing to defend Aurora in the <u>Mothershead</u> action, Counterdefendants have (1) breached their contractual obligations to Aurora; (2) breached the implied duty of good faith and fair dealing; and (3) acted in bad faith.

**ANSWER:   Deny the allegations contained in paragraph 63 of the Counterclaim.**

64.     Counterdefendants' breach of their contractual obligations was in bad faith because, <u>inter</u> <u>alia</u>, Counterdefendants knew or should have known that there was no reasonable basis for Counterdefendants to fail to fulfill their duty to defend Aurora in the <u>Mothershead</u> action.

**ANSWER:   Deny the allegations contained in paragraph 64 of the Counterclaim.**

65.   By way of example, Counterdefendants conceded they had a duty to defend Aurora in the Mothershead action on or about January 14, 2008 and reaffirmed that duty on or about March 6, 2008 and on or about April 15, 2008.  On or about June 11, 2008, however, Counterdefendants withdrew their commitment to defend Aurora, despite the fact that there had been no material changes to, developments in or new information regarding the Mothershead action since their prior correspondence with and commitment to Aurora.

**ANSWER:   Deny the allegations contained in paragraph 65 of the Counterclaim.**

66.   Moreover, Counterdefendants have failed and continue to fail to reimburse Aurora for any costs incurred by Aurora in the Mothershead action.

**ANSWER:   Admit that ACE and IICNA have not reimbursed Aurora for costs incurred in the Mothershead action.   The answering Counterdefendants affirmatively allege ACE and IICNA agreed to defend Aurora in the Mothershead action under a reservation of rights and subject to conditions that were set forth expressly in the 01/28/08 letter and in subsequent communications with Aurora. Those conditions included the right to approve defense counsel, determine acceptable rates to be charged, and seek declaratory relief that they owed no defense in the Mothershead Matter.  Aurora did not respond to the offer of defense set forth in the 01/28/08 letter, which has never been withdrawn.   Under the relevant insurance contracts, neither ACE nor IICNA has a duty to reimburse Aurora for**

either costs or fees incurred without the consent of ACE or IICNA or for costs or

fees incurred in the defense of actions which do not seek to recover damages covered

by the relevant insurance contracts.  Aurora never obtained the consent of ACE or

IICNA.

67.    As a direct and proximate result of Counterdefendants' bad faith, Aurora has been damaged and has incurred and continues to incur substantial costs, including, but not limited to, attorneys' fees, expenses and costs in connection with the <u>Mothershead</u> action.

**ANSWER:   Deny the allegations contained in paragraph 67 of the Counterclaim.**

68.    As a further result of Counterdefendants' bad faith refusal to satisfy their coverage obligation, Aurora was forced to file these Counterclaims and thereby incurred unnecessary legal fees and cost in order to obtain the coverage due to it under the policies issued by Counterdefendants.

**ANSWER:   Deny the allegations contained in paragraph 68 of the Counterclaim.**

69.    Except as expressly admitted, ACE and IICNA deny each and every

allegation of the Counterclaim.

## FIRST AFFIRMATIVE DEFENSE

1.    The Counterclaims fail to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

2.      The claims of Defendant/Counterplaintiff are barred, in whole or in part, by the doctrines of waiver, estoppel and/or laches.

## THIRD AFFIRMATIVE DEFENSE

3.      The claims of Defendant/Counterplaintiff are barred, in whole or in part, to the extent that it engaged in unlawful, inequitable or improper conduct.

## FOURTH AFFIRMATIVE DEFENSE

4.      The claims of Defendant/Counterplaintiff are barred, in whole or in part, because Defendant has breached its duties to IICNA and ACE and its contractual obligations under the insurance contracts.

## FIFTH AFFIRMATIVE DEFENSE

5.      The claims of Defendant/Counterplaintiff are barred, in whole or in part, because Plaintiffs' alleged conduct or actions were undertaken in good faith and with reasonable bases.

## SIXTH AFFIRMATIVE DEFENSE

6.      The claims of Defendant/Counterplaintiff are barred, in whole or in part, due to Defendant/Counterplaintiff's failure to mitigate damages.

## SEVENTH AFFIRMATIVE DEFENSE

7.      Plaintiffs IICNA and ACE have insufficient knowledge or information upon which to form a belief as to whether they may have additional affirmative defenses

that govern the claims asserted by Defendant.  Plaintiffs ACE and IICNA, therefore, reserve the right to raise additional defenses as appropriate in the future.

WHEREFORE, Plaintiffs ACE and IICNA pray for judgment as follows:

1.  That the Counterclaim be dismissed, with prejudice; and

2.  For such other and further legal, equitable or other relief as this Court deems just and proper.

Respectfully submitted this 4th day of September, 2008.

SANDERS & PARKS, P.C.

By   s/ Garrick L. Gallagher
   Garrick L. Gallagher
   Garrick.Gallagher@SandersParks.com
   Debora L. Verdier
   Debora.Verdier@SandersParks.com
   1300 SCF Tower
   3030 North Third Street
   Phoenix, Arizona  85012-3099
   (602) 532-5600
   Attorneys for ACE and IICNA

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Bethany K. Culp
bculp@hinshawlaw.com, dhaugen@hinshawlaw.com

Shushanie E. Kindseth
skindseth@hinshawlaw.com, llivingston@hinshawlaw.com

Mark S. Mester
mark.mester@lw.com, barb.buti@lw.com, chefiling@lw.com

Livia M. Kiser
livia.kiser@lw.com, chefiling@lw.com

Daniel F. Wake
dwake@siplaw.com

s/ Garrick L. Gallagher
Garrick L. Gallagher
Debora L. Verdier
Attorneys for Plaintiffs ACE and IICNA
SANDERS & PARKS, P.C.
1300 SCF Tower
3030 North Third Street
Phoenix, Arizona  85012-3099
(602) 532-5600
(602) 532-5700
Garrick.Gallagher@SandersParks.com