IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01236-CBS-BNB

ACE AMERICAN INSURANCE CORPORATION,
a Pennsylvania corporation,
INDEMNITY INSURANCE COMPANY OF NORTH AMERICA,
a Pennsylvania corporation,
NATIONAL SURETY CORPORATION,
an Illinois corporation, and
THE AMERICAN INSURANCE COMPANY,
an Ohio corporation,

   Plaintiffs,

v.

Aurora Dairy Corporation
d/b/a Aurora Organic Dairy,
a Delaware corporation,

   Defendant.

---

SCHEDULING ORDER

---

## 1. DATE OF CONFERENCE AND APPEARANCES OF COUNSEL AND PRO SE PARTIES

  The parties participated in a telephonic conference pursuant to the Court's order on September 22, 2008 at 11:30 a.m. (CDT). The following counsel participated on behalf of their respective parties:
For the Plaintiffs/Insurers:

Garrick L. Gallagher
Debora L. Verdier
Sanders & Parks, P.C.
3030 N. Third Street, Suite 1300
Phoenix, AZ 85018
(602) 532-5600

Counsel for Plaintiffs ACE American Ins. Corp. and Indemnity Ins. Co. of North America

Bethany K. Culp
Sushanie E. Kindseth
Hinshaw & Culbertson, LLP
333 S. 7th Street, Suite 2000
Minneapolis, MN 55402
(612) 334-2596

Counsel for Plaintiffs National Surety Corp. and The American Ins. Co.

For the Defendant/Aurora:

Daniel F. Wake
Sander, Ingebretsen & Parish, P.C.
633 17th Street, Suite 1900
Denver, Colorado 80202
(303) 285-5344
Mark S. Mester
Livia M. Kiser
Kathleen P. Lally
Latham & Watkins LLP
233 South Wacker Drive
Suite 5800 Sears Tower
Chicago, Illinois 60606
(312) 876-7700

## 2. STATEMENT OF JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The Insurers and Aurora do not share a common state residence, and the amount in controversy exceeds $75,000. The Insurers seek a declaration of their rights pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq.

Venue in this District is proper pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events or omissions giving rise to this Counterclaim occurred in this District.

### 3. STATEMENT OF CLAIMS AND DEFENSES

**a.** **Plaintiff(s):** Plaintiffs have provided commercial general liability insurance to Defendant Aurora under various insurance policies and covering varying periods of coverage as described in detail in the Complaint. Aurora has been named as a defendant in numerous consumer class actions in which the named plaintiffs seek certification of statewide and nationwide classes of individuals claiming to have sustained an economic and other loss because they paid a higher price for the milk processed by Aurora based on the allegedly false certification that it was "organic."

In each of these suits, the plaintiffs allege that by selling non-organic milk improperly labeled as organic milk, Aurora sold milk that was cheaper to produce than organic milk at the premium price for organic milk. Therefore, they allege, Aurora's non-organic processing caused the plaintiffs to pay excessive amounts for the milk and Aurora should not be permitted to keep those profits. At the heart of each claim is the alleged fact that Aurora sold milk at a premium price because it was sold as "organic" when it allegedly did not meet the standards for organic milk. The consumer plaintiffs assert that they were "tricked" into buying milk that was non-organic and, thus, they were forced into paying a higher price for the milk than they should have had to pay.

Specifically, the claims include: unjust enrichment, breach of express and implied warranties, violation of various states' deceptive trade practices acts (including false advertising), violation of various consumer protection statutes, breach of contract, false representation, and unfair competition. The plaintiffs in the action captioned: <u>Katherine Mothershead and Leonie Lloyd v. Aurora Dairy Corporation d/b/a Aurora Organic Dairy</u>, Case No. 4:07-cv-01701, United States District Court for the for the Eastern District of Missouri, filed October 7, 2007 ("<u>Mothershead</u>") also allege a claim of negligence, stating that Aurora had a duty to describe its milk products accurately and that it breached its duty by saying the milk

was organic when it knew or should have known that it was not. Thus, while framed in terms of negligence, the conduct is the same, i.e., Aurora sold non-organic milk at organic milk prices.

Further, despite the different forums and the slight variations in phraseology, the plaintiffs in the underlying suits seek damages, including statutory damages, disgorgement of profits, restitution, and attorneys' fees. In each of the Aurora Suits, to be a class member, one must have purchased milk that was produced by Aurora and which was labeled as "organic."

Plaintiffs ACE American Insurance Company ("ACE"), Indemnity Insurance Company of North America ("IICNA"), and National Surety Corporation ("NSC") have agreed to provide a defense to Aurora in Mothershead, subject to a reservation of rights that includes the right to seek a declaratory ruling with respect to Plaintiffs' obligations.

Plaintiffs are seeking a declaration that they have no obligation to defend or indemnify Aurora in Mothershead because there is no coverage available for those claims. Among other reasons, there is no coverage because:

- The allegations in Mothershead do not involve "bodily injury" or "property damage" caused by an "occurrence" as those terms are defined in the Policies.
- The Plaintiffs in Mothershead do not allege an "offense" of "personal injury" or "advertising injury" as those terms are defined in the Policies.
- The Plaintiffs in Mothershead seek equitable relief, injunctive relief, and punitive damages, none of which constitute covered "damages" under the Policies.
- The Policies specifically exclude coverage for "bodily injury" or "property damage" expected or intended from the standpoint of the insured.

4

- The Policies specifically exclude coverage for "property damage" to "your product" arising out of it or any part of it.

- The Policies specifically exclude coverage for "personal and advertising injury" "arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement.'"

- The Policies specifically exclude coverage for injuries "arising out of the wrong description of the price of goods, products or services stated in your 'advertisement.'"

For its defenses to the Counterclaims, Plaintiffs assert that they have satisfied all of their obligations to Defendant, including offering to defend it in Mothershead. Defendant's assertion that Plaintiffs withdrew the offer of defense is without merit.

**b.     Defendant:**

The background relevant to Aurora's counterclaims and defenses is set forth below. See disc. infra at 4-6.

**(1)     Underlying Actions**

Aurora is an organic dairy that produces and sells organic milk through various private label customers as well as through its own label, "High Meadow." Aurora has been named as a defendant in thirteen putative class actions relating to the sale of organic milk, including in the action Mothershead v. Aurora Dairy Corporation, d/b/a Aurora Organic Dairy, Case No. 4:07-cv-01701 (E.D. Mo., filed Oct. 4, 2007). The claimants in these underlying actions allege that Aurora sold as organic tainted milk that contained contaminants and other non-organic compounds and was otherwise not produced in accordance with federal organic standards. Based on these allegations, the claimants in the underlying actions have asserted a variety of causes of action, including causes of action for negligence and negligence per se. All

5

of the cases against Aurora have been transferred by the Judicial Panel on Multidistrict Litigation ("Multidistrict Panel") to the United States District Court for the Eastern District of Missouri for consolidated pretrial proceedings in the matter captioned <u>In re Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litigation</u>, Case No. 4:08-md-1907-ERW, before the Honorable E. Richard Webber (the "Consolidated Action").

The Plaintiffs in <u>Mothershead</u> have specifically alleged "bodily injury" as defined by the Insurers' policies which, in turn, obligates the Insurers to defend Aurora. By way of example, the Plaintiffs in <u>Mothershead</u> have alleged that:

- The Complaint in <u>Mothershead</u> presents a common question of fact for all members of the proposed class as to "[w]hether all milk produced by Aurora was <u>tainted</u> . . ." <u>See</u> <u>Mothershead</u> Compl. at ¶¶ 73, 96, 113 (emphasis supplied).
- Aurora's milk injured Plaintiffs by exposing "themselves, their family and friends to pesticides, hormones, antibiotics and other chemicals." <u>See</u> <u>Mothershead</u> Compl. at ¶¶ 90, 107.
- "Both Ms. Lloyd and Ms. Mothershead purchased organic milk because they did not desire to ingest non-organic milk and did not wish to expose their families to non-organic milk." <u>See</u> <u>Mothershead</u> Compl. at ¶ 22.

On April 18, 2008, the court in the Consolidated Action ordered Plaintiffs to file a Consolidated Complaint, in order to "include the claims of all Plaintiffs in one pleading" and to assist in the coordination of pretrial proceedings for the underlying causes of action. <u>See</u> March 14, 2008 Practice and Procedure Order at ¶ 6; <u>see also</u> April 18, 2008 Memorandum and Order. Plaintiffs filed their Consolidated Complaint on July 18, 2008, and that pleading incorporates all of the allegations in <u>Mothershead</u>.

### (2)     Bad Faith Conduct Of Insurers <u>Vis-à-Vis</u> <u>Mothershead</u>

Despite both their obligation to defend Aurora in <u>Mothershead</u> and their written acknowledgment of same and even though <u>Mothershead</u> has been pending for more than a year, the Insurers have unreasonably failed to defend Aurora and otherwise have acted in bad faith.  Specifically, although there have been no material changes to, developments in or new information regarding <u>Mothershead</u> since the Insurers acknowledged their duty to defend Aurora, the Insurers have neither provided any assistance to Aurora in defense of <u>Mothershead</u>, nor have they reimbursed Aurora to date for <u>any</u> of its defense costs. Instead, the Insurers have withheld payment from Aurora and filed the instant declaratory judgment action, purportedly seeking a declaration that they have neither a duty to defend nor a duty to indemnify.

Moreover, despite the fact that the Insurers purported to undertake Aurora's defense only pursuant to a broad reservation of rights, the Insurers have repeatedly demanded that Aurora use counsel of the Insurers' choosing, namely Mr. Vince Venker of Boggs, Avellino, Lach & Boggs, LLC.  Even were Mr. Venker otherwise qualified to represent Aurora in a matter of this size and complexity, however, which remains in doubt, Mr. Venker is deceased, having died several months ago.  As recently as September 9, 2008, the Insurers nevertheless continued to demand that Aurora use Mr. Venker as counsel, claiming (obviously incorrectly) that he "is prepared to enter an appearance" in the case.

    **(3)**     **Aurora's Defenses**

Aurora has interposed a number of defenses to the Insurers' claims, including, <u>inter alia</u>, (1) the claims of Insurers are barred, in whole or in part, by the doctrines of waiver, estoppel and/or laches; (2) the Insurers may be barred, in whole or in part, from recovery because they have made statements and/or taken actions that estop them from asserting their claims; (3) the Insurers' claims are barred to the extent that they engaged in unlawful, inequitable or improper conduct; (4) the claims of the Insurers are barred, in whole or in part, because Insurers have breached their duties to Aurora and their contractual obligations, including

7

their duty of good faith and fair dealing; (5) the Insurers' request for a declaration regarding their duty to indemnify Aurora is barred as premature.  Aurora has further reserved the right to raise additional defenses as appropriate in the future.

    **(4)**  **Aurora's Counterclaims**

Aurora also brought the following counterclaims against the Insurers:  (1) Aurora seeks a judicial determination of the obligations of the Insurers to reimburse Aurora's costs of defense to date and to pay such further defined costs as Aurora may hereafter incur in connection with Mothershead; (2) the Insurers have breached their duties under the insurance policies by failing to defend Aurora in Mothershead; (3) the Insurers have acted in bad faith by unreasonably failing to defend Aurora in Mothershead; and (4) the Insurers (i) breached their contractual obligations to Aurora, (ii) breached the implied duty of good faith and fair dealing and (iii) acted in bad faith.

  **c.**  **Other Parties:**  There are no other parties at this time.

## 4.  UNDISPUTED FACTS

The parties agree that the following facts are undisputed:

  1.  Aurora Dairy Corporation is a Delaware corporation with its principal place of business in Colorado.

  2.  Aurora produces organic milk, which is sold by various retailers under the respective retailers' store brands and labels, as well as through Aurora's own label, "High Meadow."

  3.  Aurora markets and sells its milk with the "USDA Organic" seal in accordance with the organic certifications issued to Aurora by two certifying agents – the Colorado Department of Agriculture ("CDA") and Quality Assurance International ("QAI"), acting pursuant to the authority vested in them by

the United States Department of Agriculture ("USDA") under the Organic Food Production Act of 1990 ("OFPA") and the National Organic Program regulations.

4. ACE is a Pennsylvania corporation with its principal place of business in Pennsylvania.

5. IICNA is a Pennsylvania corporation with its principal place of business in Pennsylvania.

6. NSC is an Illinois corporation with its principal place of business in Illinois.

7. AIC is an Ohio corporation with its principal place of business in Ohio.

8. Venue in this District is proper pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events or omissions giving rise to this Counterclaim occurred in this District

9. ACE issued to Aurora general liability coverage Policy No. FO-139293 covering the period from August 1, 2002 through August 1, 2003, which policy was renewed for the policy period August 1, 2003 through August 1, 2004.

10. The ACE policy defines "bodily injury" as, inter alia, "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

11. The ACE policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

12. The term "property damage" is defined in the ACE policy as "a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

13. For the policy period August 1, 2002 – August 1, 2003, IICNA provided general liability coverage to Aurora through policy number FO-139292.  For the policy period August 1, 2003 – August 1,

9

2004, IICNA provided general liability coverage to Aurora through policy numbers FO-146246 and FO-146297.

14. The IICNA policies define "bodily injury" as, inter alia, "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

15. The term "property damage" is defined in the IICNA policies as "a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

16. The IICNA policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

17. For the policy period May 1, 2005 – May 1, 2006, NSC provided general liability coverage to Aurora through policy number S 86 MXX 80843533. The general liability coverage issued to Aurora was renewed by NSC for the policy period May 1, 2006 – May 1, 2007 through policy number S 86 MXX 80859105.

18. The NSC policies define "bodily injury" as, inter alia, "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

19. The term "property damage" is defined in the NSC policies as "a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

20. The NSC policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

21. The term "property damage" is defined in the AIC policies as "a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it." (emphasis omitted).

22. The AIC policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

23. Aurora has been named in thirteen consumer class actions filed in the courts of six different states. In addition, consumers have also filed six class actions against some of Aurora's retailer customers, basing their complaints against the retailers on Aurora's alleged wrongdoing. These nineteen class actions were consolidated before the United States District Court for the Eastern District of Missouri by the Judicial Panel on Multidistrict Litigation pursuant to 28 U.S.C. § 1407 in the action <u>In re Aurora Dairy Corp.</u>, Case No. 4:08-md-01907-ERW.

24. There is a real and justiciable controversy between Aurora and the Insurers as to whether or not the relief sought in <u>Mothershead</u> is potentially covered.

25. An actual controversy has arisen and now exists between Aurora and the Insurers concerning their respective rights, obligations and other interests under the policies.

26. The Insurers responded to Aurora's tenders reserving certain rights and offering to pay the reasonable defense costs incurred by Aurora in <u>Mothershead</u>.

27. In response to Aurora's contention that the "Counterdefendants have failed and continue to fail to reimburse Aurora for any costs incurred by Aurora in the Mothershead action," NSC and AIC answered: "Admit that NSC and AIC have not reimbursed Aurora for costs incurred in the Mothershead action."

28. In response to Aurora's contention that the "Counterdefendants have failed and continue to fail to reimburse Aurora for any costs incurred by Aurora in the Mothershead action," ACE and IICNA answered: "Admit that ACE and IICNA have not reimbursed Aurora for costs incurred in the Mothershead action."

Other undisputed facts may come to light as a result of the discovery process. Further, Aurora believes the allegations taken verbatim from the Mothershead complaint are not reasonably in dispute, but the Insurers have objected to the inclusion of some, but not all of the Mothershead allegations, in the list of Undisputed Facts.

## 5. COMPUTATION OF DAMAGES

Plaintiffs seek only declaratory relief and, thus, there are no alleged damages to compute.

Aurora seeks recovery of the following damages: (1) all of Aurora's costs of defense, including but not limited to attorneys' fees, expenses and costs in connection with Mothershead, together with interest thereon running from the date such costs were incurred; (2) Aurora's attorneys' fees and other reasonable and necessary expenses incurred in connection with this action; (3) accrued interest on the amount of the judgment as provided by law; and (4) punitive and exemplary damages.

## 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

a. The Rule 26(f) Meeting was held (telephonically) on September 22, 2008.

b. Garrick Gallagher and Debora Verdier participated on behalf of Plaintiffs ACE American Insurance Corporation and the Indemnity Insurance Company of North America. Bethany K. Culp participated on behalf of Plaintiffs National Surety Corporation and The American Insurance Company. Daniel F. Wake, Mark S. Mester, Livia M. Kiser, and Kathleen P. Lally participated on behalf of Defendant.

c. The parties do not propose any changes in the timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).

d. The parties will exchange Initial Rule 26(a)(1) disclosures on October 8, 2008 and will timely supplement pursuant to the rules.

e. The parties have agreed to cooperate and make best efforts to exchange discovery through informal means where practicable and possible.

f. Although Plaintiffs do not believe that this is likely to be a discovery-intensive case, Aurora reserves its rights to take full discovery in support of its counterclaims and defenses. Both sides have taken steps to preserve electronically stored information. The parties agree to cooperate in facilitating discovery of electronically-stored information and limit associated costs and delay where possible and practicable so as to avoid discovery disputes relating to electronic discovery. The parties do not, at this time, anticipate problems accessing electronically stored information. The parties have agreed to comply with the rules of discovery relating to asserting claims of privilege and work product protection.

### 7. CONSENT

All parties <u>have</u> consented to the exercise of jurisdiction of a magistrate judge.

### 8. CASE PLAN AND SCHEDULE

      a.    Deadline for Joinder of Parties and Amendment of Pleadings:  ~~**March 2, 2009**~~.  **January 16, 2009**

      b.    Discovery Cut-Off:  ~~**November 10, 2009**~~.  **August 1, 2009**

      c.    Dispositive Motion Deadline:  ~~**April 30, 2010**~~.  **September 1, 2009**

      d.    Expert Witness Disclosure:

          (1)    The parties have not determined the anticipated fields of expert testimony yet.

          (2)    The parties have not determined yet whether any limitations on the number of expert witnesses are appropriate.

          (3)    The parties shall designate all **affirmative** experts and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(2) on or before ~~**January 11, 2010**~~.  **May 15, 2009.**

          (4)    The parties shall designate all rebuttal expert and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(2) on or before ~~**February 10, 2010**~~.  **July 1, 2009.**

          (5)    Notwithstanding the provisions of Fed. R. Civ. P. 26(a)(2)(B), no exception to the requirements of the rule will be allowed by stipulation of the parties unless the stipulation is approved by the court.

      e.    Expert Discovery: ~~Expert discovery (including depositions) shall be completed by **March 30, 2010**~~.

      f.    Deposition Schedule:  No party has scheduled a deposition yet.  Nevertheless, all ~~non-expert~~ depositions shall be completed by ~~**December 14, 2009**~~.  **August 1, 2009**

g.      Interrogatory Schedule:  All interrogatories must be served on or before **June 26, 2009** ~~September 28, 2009~~.  All responses must be served within 30 days of service.

h.      Schedule for Request for Production of Documents:  All requests for production must be served on or before **June 26, 2009** ~~September 28, 2009~~.  All responses must be served within 30 days of service.

i.      Discovery Limitations:

The parties have not agreed at this time to any particular discovery limitations, but they have agreed to cooperate in discovery according to the Federal and Local Rules of Procedure and to further cooperate to limit discovery where practicable.  **The parties agree to the numerical limitations imposed in Fed.R.Civ.P. 30 and 33.  The parties are limited to 35 requests under Fed.R.Civ.P. 34 and 35 requests under Fed.R.Civ.P. 36.**

## 9.  SETTLEMENT

The parties certify that they have discussed the possibilities for a prompt settlement or resolution of the case by alternate dispute resolution.  Such discussions are ongoing and are described in further detail above.  The parties submitted a Confidential Settlement Statement to the Magistrate Judge per the Court's order dated September 9, 2008.

## 10.  OTHER SCHEDULING ISSUES

The parties have not identified other scheduling issues to address at this time.

## 11. DATES FOR FURTHER CONFERENCES

a.    A settlement conference will be held on_____ at _____ o'clock __.m.

It is hereby ordered that all settlement conferences that take place before the magistrate judge shall be confidential.

(   ) Pro se parties and attorneys only need be present.

(   ) Pro se parties, attorneys, and client representatives with authority to settle must be present. (NOTE: This requirement is not fulfilled by the presence of counsel.  If an insurance company is involved, an adjustor authorized to enter into settlement must also be present.)

(   ) Each party shall submit a Confidential Settlement Statement to the magistrate judge on or before _____ outlining the facts and issues, as well as the strengths and weaknesses of their case.

b.  Status conferences will be held in this case at the following dates and times:

_____

c.  A final pretrial conference will be held in this case on at **December 2, 2009 at 9:15 am**. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than five days before the final pretrial conference.

## 12.  OTHER MATTERS

In addition to filing an appropriate notice with the clerk's office, counsel must file a copy of any notice of withdrawal, notice of substitution of counsel, or notice of change of counsel's address or telephone number with the clerk of the magistrate judge assigned to this case.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures established by the judicial officer presiding over the trial of this case.

In addition to filing an appropriate notice with the clerk's office, a pro se party must file a copy of a notice of change of his or her address or telephone number with the clerk of the magistrate judge assigned to this case.

With respect to discovery disputes, parties must comply with D.C.COLO. LCivR 7.1A.

The parties filing motions for extension of time or continuances must comply with D.C.COLO. LCivR 6.1D. by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all pro se parties.

### 13.  AMENDMENTS TO SCHEDULING ORDER

This scheduling order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado, this 1st day of December, 2008.

BY THE COURT:

 s/ Craig B. Shaffer
Craig B. Shaffer
United States Magistrate Judge

APPROVED:

/s/ Debora L. Verdier
Garrick L. Gallagher
Debora L. Verdier
SANDERS & PARKS, P.C.
1300 SCF Tower
3030 North Third Street
Phoenix, Arizona  85012-3099
Telephone:  (602) 532-5600
E-mail:  Garrick.Gallagher@SandersParks.com
            Debora.Verdier@SandersParks.com

Attorneys for Plaintiffs ACE and IICNA


/s/ Sushanie E. Kindseth
Bethany K. Culp
Sushanie E. Kindseth
HINSHAW & CULBERTSON, L.L.P.
333 South Seventh Street, Suite 200
Minneapolis, Minnesota  55402
Telephone:  (612) 334-2596
Email:  bculp@hinshawlaw.com
            skindseth@hinshawlaw.com

Attorneys for Plaintiffs NSC and AIC

/s/ Daniel F. Wake
Daniel F. Wake
SANDER INGEBRETSEN & PARISH, P.C.
633 17th Street, Suite 1900
Denver, Colorado 80202
Telephone: 303-285-5344
Facsimile: 303-285-5301
E-mail:  dwake@siplaw.com

Attorneys for Defendant Aurora Dairy
Corporation d/b/a Aurora Organic Dairy


/s/ Livia M. Kiser
Mark S. Mester
Livia M. Kiser
LATHAM & WATKINS LLP
233 South Wacker Drive
Suite 5800 Sears Tower
Chicago, Illinois 60606
Telephone:  312-876-7700
Facsimile:  312-993-2639
E-mail: mark.mester@lw.com
            livia.kiser@lw.com