**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:08-cv-01236-CBS-BNB

ACE AMERICAN INSURANCE CORPORATION, a Pennsylvania corporation,
INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania corporation,
NATIONAL SURETY CORPORATION, an Illinois corporation, and
THE AMERICAN INSURANCE COMPANY, an Ohio corporation,

      Plaintiffs and Counterclaim Defendants,

v.

AURORA DAIRY CORPORATION d/b/a AURORA ORGANIC DAIRY, a Delaware
corporation,

      Defendant, Counterclaim Plaintiff, Third Party Plaintiff and
      Third Party Counterclaim Defendant,

v.

GENERAL FIRE & CASUALTY COMPANY, an Idaho corporation, and
AMERICAN FARMERS & RANCHERS MUTUAL INSURANCE COMPANY, an Oklahoma
corporation,

      Third Party Defendants and Third Party Counterclaim Plaintiff.

---

**ANSWER AND THIRD PARTY COUNTERCLAIM OF
GENERAL FIRE & CASUALTY COMPANY**

---

      Third Party Defendant General Fire & Casualty Company ("GFC"), asserts the following

for its Answer to the March 17, 2009 Third Party Complaint of Defendant Aurora Dairy

Corporation ("Third Party Complaint"),[1] as follows:

---

[1]Aurora Dairy included its claims against GFC as part of its "First Amended Counterclaim." However, GFC is more accurately a Third Party Defendant to this action since GFC was not a named party when Plaintiffs originally filed this case. Accordingly, GFC will refer to the "First Amended Counterclaim" as

### Third Party Complaint

### The Parties

1.      GFC is without sufficient knowledge or information to form a belief as to the truth of the allegations in ¶1 of the Third Party Complaint, and therefore, denies the same.

2.      GFC is without sufficient knowledge or information to form a belief as to the truth of the allegations in ¶2 of the Third Party Complaint, and therefore, denies the same.

3.      GFC is without sufficient knowledge or information to form a belief as to the truth of the allegations in ¶3 of the Third Party Complaint, and therefore, denies the same.

4.      GFC is without sufficient knowledge or information to form a belief as to the truth of the allegations in ¶4 of the Third Party Complaint, and therefore, denies the same.

5.      GFC is without sufficient knowledge or information to form a belief as to the truth of the allegations in ¶5 of the Third Party Complaint, and therefore, denies the same.

6.      With respect to the allegations in ¶6 of the Third Party Complaint, GFC admits only that General Fire & Casualty Company was an Idaho corporation with its principal place of business in Idaho.  GFC affirmatively states that American Farmers & Ranchers Mutual Insurance Company purchased GFC from GF&C Holding Company in November, 2007.  GFC became a wholly owned subsidiary of American Farmers & Ranchers Mutual Insurance Company.  GFC's name was changed to American Farmers & Ranchers Insurance Company ("AFRIC") in February, 2008.  American Farmers & Ranchers Mutual Insurance is an Oklahoma

---

the "Third Party Complaint" to more accurately reflect GFC's relationship to the parties in this case and the nature of Aurora Dairy's claims against GFC.  Further, The Third Party Complaint incorrectly lists the proper name for this Third Party Defendant, which should read "American Farmers & Ranchers Insurance Company formerly known as General Fire & Casualty Company."

corporation with its principal place of business in Oklahoma.  GFC denies any remaining allegations in ¶6.

## Jurisdiction and Venue

7.      The allegations in ¶7 of the Third Party Complaint are legal theories and conclusions and require no response.  To the extent any response is necessary, GFC denies the allegations in ¶7.

8.      GFC is without sufficient knowledge or information to form a belief as to the truth of the allegations in ¶8 of the Third Party Complaint, and therefore, denies the same.

9.      The allegations in ¶9 of the Third Party Complaint are legal theories and conclusions and require no response.  To the extent any response is necessary, GFC denies the allegations in ¶9.

10.      The allegations in ¶10 of the Third Party Complaint are legal theories and conclusions and require no response.  To the extent any response is necessary, GFC denies the allegations in ¶10.

## The Insurance Policies

11.      GFC is without sufficient knowledge or information to form a belief as to the truth of the allegations in ¶11 of the Third Party Complaint, and therefore, denies the same.

12.      With respect to the allegations in ¶12 of the Third Party Complaint, GFC admits only that GFC issued RiskManager™ Policy No. RM00734-00 to Aurora Dairy, and states that the insurance policy speaks for itself.  GFC denies Aurora Dairy's characterization of the insurance policy to the extent it contradicts the terms and conditions of the insurance policy, and denies any remaining allegations in ¶12.

### The ACE Policy

13.     The allegations in ¶¶13-20 appear to made solely against Ace American Insurance Corporation and not GFC; GFC is without sufficient knowledge or information to form a belief as to the truth of the allegations in ¶¶13-20 of the Third Party Complaint, and therefore, denies the same, and further specifically denies any matter which could be inferred or construed to be a factual allegation against GFC.

### The IICNA Policies

14.     The allegations in ¶¶21-28 appear to made solely against Indemnity Insurance Company of North America and not GFC; GFC is without sufficient knowledge or information to form a belief as to the truth of the allegations in ¶¶21-28 of the Third Party Complaint, and therefore, denies the same, and further specifically denies any matter which could be inferred or construed to be a factual allegation against GFC.

### The NSC Policies

15.     The allegations in ¶¶29-36 appear to made solely against National Surety Corporation and not GFC; GFC is without sufficient knowledge or information to form a belief as to the truth of the allegations in ¶¶29-36 of the Third Party Complaint, and therefore, denies the same, and further specifically denies any matter which could be inferred or construed to be a factual allegation against GFC.

### The AIC Policies

16.     The allegations in ¶¶37-44 appear to made solely against The American Insurance Company and not GFC; GFC is without sufficient knowledge or information to form a belief as to the truth of the allegations in ¶¶37-44 of the Third Party Complaint, and therefore, denies the

same, and further specifically denies any matter which could be inferred or construed to be a factual allegation against GFC.

<u>**The GFC Policy**</u>

17.     With respect to the allegations in ¶45 of the Third Party Complaint, GFC admits only that GFC issued RiskManager™ Policy No. RM00734-00 to Aurora Dairy, and states that the insurance policy speaks for itself.  GFC denies Aurora Dairy's characterization of the insurance policy to the extent it contradicts the terms and conditions of the insurance policy, and denies any remaining allegations in ¶45.

18.     With respect to the allegations in ¶46 of the Third Party Complaint, the referenced insurance policy speaks for itself, and therefore, GFC denies Aurora Dairy's characterization of the insurance policy to the extent it contradicts the terms and conditions of the insurance policy, and denies any remaining allegations in ¶46.

19.     With respect to the allegations in ¶47 of the Third Party Complaint, the referenced insurance policy speaks for itself, and therefore, GFC denies Aurora Dairy's characterization of the insurance policy to the extent it contradicts the terms and conditions of the insurance policy, and denies any remaining allegations in ¶47.

20.     With respect to the allegations in ¶48 of the Third Party Complaint, the referenced insurance policy speaks for itself, and therefore, GFC denies Aurora Dairy's characterization of the insurance policy to the extent it contradicts the terms and conditions of the insurance policy, and denies any remaining allegations in ¶48.

21.     With respect to the allegations in ¶49 of the Third Party Complaint, the referenced insurance policy speaks for itself, and therefore, GFC denies Aurora Dairy's characterization of

the insurance policy to the extent it contradicts the terms and conditions of the insurance policy, and denies any remaining allegations in ¶49.

22.     With respect to the allegations in ¶50 of the Third Party Complaint, the referenced insurance policy speaks for itself, and therefore, GFC denies Aurora Dairy's characterization of the insurance policy to the extent it contradicts the terms and conditions of the insurance policy, and denies any remaining allegations in ¶50.

23.     With respect to the allegations in ¶51 of the Third Party Complaint, the referenced insurance policy speaks for itself, and therefore, GFC denies Aurora Dairy's characterization of the insurance policy to the extent it contradicts the terms and conditions of the insurance policy, and denies any remaining allegations in ¶51.

24.     GFC denies the allegations in ¶52 of the Third Party Complaint.

## The Underlying Actions

25.     GFC is without sufficient knowledge or information to form a belief as to the truth of the allegations in ¶¶53-64 of the Third Party Complaint, and therefore, denies the same, and further specifically denies any matter which could be inferred or construed to be a factual allegation against GFC.  Further, to the extent any allegations in ¶¶53-64 reference the insurance policy issued by GFC, GFC states that the insurance policy speaks for itself, and therefore, GFC denies Aurora Dairy's characterization of the insurance policy to the extent it contradicts the terms and conditions of the insurance policy.

## Count I – Declaratory Judgment

26.     With respect to the allegations in ¶65 of the Third Party Complaint, GFC incorporates by reference the preceding responses as if fully set forth herein.

27.     With respect to the allegations in ¶66 of the Third Party Complaint, GFC admits only that an actual controversy has arisen and now exists between it and Aurora Dairy concerning their respective rights, obligations and other interests under the insurance policy issued by GFC.  GFC denies any remaining allegations in ¶66.

28.     With respect to the allegations in ¶67 of the Third Party Complaint, GFC admits only that Aurora Dairy purports to seek a judicial determination of GFC's obligations under the insurance policy issued by GFC.  GFC denies any remaining allegations in ¶67.

29.     With respect to the allegations in ¶68 of the Third Party Complaint, GFC admits only that a prompt judicial determination is necessary and appropriate, and denies any remaining allegations in ¶68.

### Count II – Claim for Breach of Contract

30.     With respect to the allegations in ¶69 of the Third Party Complaint, GFC incorporates by reference the preceding responses as if fully set forth herein.

31.     With respect to the allegations in ¶70 of the Third Party Complaint, GFC states that the insurance policy it issued speaks for itself, and therefore, GFC denies Aurora Dairy's characterization of the insurance policy to the extent it contradicts the terms and conditions of the insurance policy.  GFC is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in ¶70 of the Third Party Complaint, and therefore, denies the same.

32.     GFC denies the allegations in ¶71 of the Third Party Complaint insofar as the allegations pertain to GFC.

33.     GFC denies the allegations in ¶72 of the Third Party Complaint insofar as the allegations pertain to GFC.

34.     GFC denies the allegations in ¶73 of the Third Party Complaint insofar as the allegations pertain to GFC.

35.     GFC denies the allegations in ¶74 of the Third Party Complaint insofar as the allegations pertain to GFC.

36.     GFC denies the allegations in ¶75 of the Third Party Complaint insofar as the allegations pertain to GFC.

### Answer to Count III – Bad Faith Breach of an Insurance Contract

37.     With respect to the allegations in ¶76 of the Third Party Complaint, GFC incorporates by reference the preceding responses as if fully set forth herein.

38.     GFC denies the allegations in ¶77 of the Third Party Complaint insofar as the allegations pertain to GFC.

39.     GFC denies the allegations in ¶78 of the Third Party Complaint insofar as the allegations pertain to GFC.

40.     GFC is without sufficient knowledge or information to form a belief as to the truth of the allegations in ¶79 of the Third Party Complaint, and therefore, denies the same.

41.     With respect to the allegations in ¶80 of the Third Party Complaint, GFC admits that it has not reimbursed Aurora Dairy for all costs incurred by Aurora Dairy in the *Mothershead* action.  GFC denies all remaining allegations.

42.     GFC denies the allegations in ¶81 of the Third Party Complaint insofar as the allegations pertain to GFC.

43.     GFC denies the allegations in ¶82 of the Third Party Complaint insofar as the allegations pertain to GFC.

## General Denial

44.     GFC denies each and every allegation of the Third Party Complaint which is not specifically admitted herein.

## Affirmative Defenses

1.     The Third Party Complaint fails to state a claim against GFC upon which relief can be granted.

2.     Aurora Dairy's claims against GFC are subject to all terms, conditions, limitations and exclusions contained in the RiskManager™ Policy No. RM00734-00.

3.     The RiskManager™ Policy affords no coverage for the damages or losses described in the respective Complaints in each Underlying Action.

4.     GFC is not obligated to provide a defense and/or indemnification to Aurora Dairy in connection with the allegations and claims asserted against Aurora Dairy in each of the Underlying Actions pursuant to the terms and limitations of the RiskManager™ Policy.

5.     Aurora Dairy has failed to take reasonable steps under the circumstances to mitigate its damages or losses, if any.

6.     Aurora Dairy has failed to meet or comply with all of the applicable conditions of the RiskManager™ Policy.

7.     Aurora Dairy's claims against GFC may be barred, in whole or in part, by the comparative fault of Aurora Dairy, its representatives, and/or third or other parties.

8.      In the alternative, Aurora Dairy's claims may be barred or proportionally reduced by Colo. Rev. Stat. §§ 13-21-111.5 and -111.6.

9.      Aurora Dairy's claims against GFC may be barred, in whole or in part, by the equitable doctrines of laches, estoppel, waiver, and/or unclean hands.

10.     Aurora Dairy's claims against GFC may be barred due to the failure to add an indispensable party since American Farmers & Ranchers Insurance formerly known as General Fire & Casualty Company, and not American Farmers & Rancher Mutual Insurance Company, issued the RiskManager™ Policy under which Aurora Dairy seeks coverage.

11.     American Farmers & Ranchers Mutual Insurance Company is not a proper party.

12.     GFC reserves the right to assert additional affirmative defenses that become known during the course of discovery.

## <u>COUNTERCLAIM</u>

Third Party Defendant/Third Party Counterclaim Plaintiff General Fire & Casualty Company, presently known as American Farmers & Ranchers Insurance Company (collectively "GFC"), files this Counterclaim for declaratory judgment pursuant to F.R.C.P. 13 and 57, and 28 U.S.C. §§ 2201 and 2202, seeking a declaration concerning the scope and nature of any duty it owes Aurora Dairy in the Underlying Actions (defined below) under RiskManager™ Policy No. RM00734-00 ("RiskManager™ Policy") as follows:

### <u>The Parties</u>

1.      Third Party Plaintiff/Third Party Counterclaim Defendant, Aurora Dairy Corporation ("Aurora Dairy"), is a Delaware corporation with its principal place of business in Colorado.

2.      American Farmers & Ranchers Mutual Insurance Company purchased GFC from GF&C Holding Company in November, 2007.  GFC became a wholly owned subsidiary of American Farmers & Ranchers Mutual Insurance Company.  GFC's name was changed to American Farmers & Ranchers Insurance Company ("AFRIC") in February, 2008.  AFRIC is an Idaho corporation with its principal place of business in Idaho.[2]

## Jurisdiction and Venue

3.      This Court has supplemental jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1367 because it is a compulsory and/or permissive Counterclaim under F.R.C.P. 13.

4.      This Court also has jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds $75,000 exclusion of interest and costs and complete diversity of citizenship exists between the parties.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Aurora Dairy's principal place of business is within the District of Colorado and has brought the original action against GFC in this District and Court.

## Factual Background

6.      Aurora Dairy sells and produces milk certified as "organic."  Upon information and belief, it also sells its milk to retailers, who then sell the milk as "organic" under their own brands or labels.

7.      GFC issued RiskManager™ Policy No. RM00734-00 to Aurora Dairy with a policy period of July 1, 2004 to June 1, 2005, when it was cancelled by the insured.

---

[2] *See, supra,* n.1

8.      Upon information and belief, Aurora Dairy was named as a defendant in thirteen class action lawsuits in which the claimants allege to have sustained economic loss because they paid a higher price for Aurora Dairy's milk because they thought it was "organic."  The claimants allege that because the milk was not organic, Aurora Dairy obtained more revenue for the milk than it would have obtained selling non-organic milk.

9.      The following is a list of the Underlying Actions:

A.   *DiSimone v. Aurora Dairy Corporation d/b/a Aurora Organic Dairy, Case Vander Eyk, Jr. d/b/a Case Vander Eyk, Jr. Dairy, Quality Assurance International, Inc. a/k/a QAI, and Does 1-50*; Superior Court of the State of California for the County of Los Angeles

B.   *Gallardo v. Aurora Dairy Corporation, d/b/a Aurora Organic Dairy, a Delaware Corporation*; United States District Court Northern District of California

C.   *Cockrell v. Aurora Dairy Corporation, d/b/a Aurora Organic Dairy*; In the United States District Court for the District of Colorado

D.   *Rebecca and Fernando Freyre v. Aurora Dairy Corporation*; In the United States District Court for the District of Colorado

E.   *Snell v. Aurora Dairy Corporation, d/b/a Aurora Organic Dairy, Wild Oats Market, Inc. Costco Wholesale Corporation, Safeway, Inc.*; In the United States District Court for the District of Colorado

F.   *Still v. Aurora Dairy Corporation d/b/a Aurora Organic Dairy*; In the United States District Court for the District of Colorado

G.   *West v. Aurora Dairy Corporation, d/b/a Aurora Organic Dairy*; In the United States District Court for the District of Colorado

H.   *Fiallos v. Aurora Dairy Corporation, d/b/a Aurora Organic Dairy*; United States District Court for the Southern District of Florida

I.   *Cowan v. Aurora Dairy;* Marion Cty Superior Court, State of Indiana

J.   *Kristine Mothershead v. Aurora Dairy Corporation, d/b/a Aurora Organic Dairy*; United States District Court for the Eastern District of Missouri Eastern Division

K.   *Kaye, v. Aurora Dairy Corp., d/b/a Aurora Organic Dairy*; United States District Court Eastern District of New York

L.   *Hillary White and Lynn Michalson v. Aurora Dairy Corp., d/b/a Aurora Organic Dairy*; United States District Court Southern District of New York

M.   *Koch v. Aurora Dairy Corp.*; United States District Court for the Eastern District of Missouri

10.     In its Third Party Complaint, Aurora Dairy contends that GFC is obligated to provide Aurora Dairy with a defense in each of the Underlying Actions, and that GFC improperly denied its duty to defend Aurora Dairy from claims in the *Motherhead* action, as well as the other 12 class action lawsuits.

11.     Based on the RiskManager™ Policy's terms, conditions, limitations, endorsements, and exclusions, GFC denies it has a duty to defend or indemnify Aurora Dairy in the Underlying Actions.

12.     By this Third Party Counterclaim, GFC seeks a declaration that the RiskManager™ Policy does not obligate GFC to provide a defense or indemnity to Aurora Dairy for any of the Underlying Actions.

### **The RiskManager™ Policy**

13.     Pursuant to the terms of the RiskManager™ Policy, GFC contracted to provide certain liability insurance coverage to Aurora Dairy, subject to certain conditions, limitations and exclusions as forth in the policy.

14.     The RiskManager™ Policy contains the following provisions, in relevant part:

> This is a defense within limits policy. In a defense within limits policy, the attorney fees and other defense costs reduce the applicable Legal Liability and Defense limit. If you have any questions regarding defense within the limits, please ask your agent.

* * *

**LEGAL LIABILITY AND DEFENSE SECTION**

**LEGAL LIABILITY AND DEFENSE**

**A.      INSURING AGREEMENT**

Subject to all the terms and conditions of this policy, we will pay your legal liability and defense costs up the **blanket liability and defense limit,** or up to the **legal liability and defense sub-limit** for **Covered Legal Liability and Defense Causes of Loss** or from **Sub-Limited Legal Liability and Defense Causes of Loss - Consequential Loss or Damage** that first occurs during the policy period.

Exposure to substantially the same cause or causes of loss or damage or a series of related acts or omissions shall be considered a single claim. In event a claim related to two or more of our policy periods, such claim shall be deemed to have originated in the earliest policy period in which the loss first occurred. If that claim is covered, all damages related to that claim shall be included in the applicable **blanket legal liability and defense limit** or **legal liability and defense sub-limit** of the earliest policy period during which the claim first began to occur.

\* \* \*

E.   **LEGAL LIABILITY AND DEFENSE WITHIN POLICY LIMITS**

\* \* \*

1.   **BLANKET LEGAL LIABILITY AND DEFENSE LIMIT:** This limit is an annual aggregate policy limit and is the most we will pay (including attorney fees and defense costs) regardless of the number of accidents, settlements, claims, claimants, lawsuits, acts or parties involved. The **blanket legal liability and defense limit** applies separately to each consecutive policy period shown in the Policy Declaration and Schedules. For purposes of determining the **blanket legal liability and defense limit**, any extension of less than 12 months will be deemed part of the last preceding policy period.

2.   **LEGAL LIABILITY AND DEFENSE SUB-LIMIT:** Certain cause of loss, consequential loss or damages are sub-limited and have a lower limit than the **blanket legal liability and defense limit.** These lower limits are stated in the Policy Declaration and Schedules and are defined in **Sub-limited Legal Liability and Defense Causes of Loss -**

*Consequential Loss or Damage.* Losses paid under this coverage part will reduce the available **blanket legal liability and defense limit** and do not represent additional limits of coverage.

3.      **COVERAGE UNDER TWO OR MORE LIMITS:** If the **blanket legal liability and defense limit** and one or more, **legal liability and defense sub-limits** apply to the same covered claim, we will only pay up to the largest single applicable **legal liability and defense sub-limit.** In any event, no stacking of any coverage is allowed, regardless of the number of covered claims or other cause of loss or event that contributes concurrently or in sequence to the cause of loss, consequential cause of loss or damage.

15.      The RiskManager™ Policy contains the following provisions regarding covered legal liabilities and defense causes of loss:

H.      **COVERED LEGAL LIABILITY AND DEFENSE CAUSES OF LOSS**

**COVERED LEGAL LIABILITY AND DEFENSE CAUSES OF LOSS** means:

* * *

2.      *BODILY INJURY* means all liability and defense claims that first occur during the policy period and arise from human physical damage, sickness or disease (other than *disease-STD*) and the resulting emotional or mental distress or death from any of these conditions.

3.      *CONTRACTUAL LIABILITY – SPECIFIED CONTRACTS* mean *bodily injury* or *property damage* that occurs after the execution date of a contract or agreement, or that you would have in the absence of a covered contract or agreement, and has resulted from liability assumed in:

* * *

d.      A license contract or agreement;

* * *

e.   Any agreement to assume the tort liability of another party as part of a written or verbal contract. Tort liability includes legal liability that would be imposed by law in the absence of any contract or agreement provided the **bodily injury** or **property damage** occurs after the execution date of the contract or agreement.

* * *

8.   **PRODUCT LIABILITY – YOUR PRODUCT** means **bodily injury** or **property damage** that first occurs during the policy period and is caused by your product.

**Your product** means any goods or products (other than real property) grown, manufactured, sold handled, distributed or disposed of by you, and those instructions, warranties and representations that you make relating to those goods or products. **Your product** includes containers (other than **vehicles** or vending machines) materials, parts or equipment furnished in connections with such goods or products.

9.   **PROPERTY DAMAGE** means loss or damage that first occurs during the policy period and arises from physical injury to or destruction of tangible property including resulting loss of use of that property.

16.   The RiskManager™ Policy also contains the following policy sub-limits:

I.   **SUB-LIMITED LEGAL LIABILITY AND DEFENSE CAUSES OF LOSS – CONSEQUENTIAL LOSS OR DAMAGE**

**SUB-LIMITED LEGAL LIABILITY AND DEFENSE CAUSE OF LOSS – CONSEQUENTIAL LOSS OR DAMAGE** means those specified causes of loss, consequential loss or damage listed below. Each cause of loss, consequential loss or damage is subject to a **legal liability and defense sub-limit**. All losses, consequential losses or damage paid under the **Sub-limited Legal Liability and Defense Causes of Loss – Consequential**

*loss or Damage* are not additional coverage limits. Any payments made under this coverage section will reduce the limit or insurance available under the *blanket legal liability and defense limit.*

The applicable *legal liability and defense sub-limit* applied regardless of any other causes or event contributing to such loss or damage in any way or at any time.

1.   *ADVERTISING AND PUBLICATION LIABILITY – ALL OTHER* means all liability and defense claims arising out of the unintended loss or damage from your oral or written publication of materials (other than *advertising and publication liability – specified causes of loss* or *internet advertising liability*) including the failure of goods, products or services to conform with the advertised quality of performance, or the wrong description of the price of goods, products, or services.

This coverage only applies if you are in the business of advertising, broadcasting, publishing, or telecasting.

* * *

21.   **INTERNET RISK:**

a.   *Internet Advertising Liability* means all liability and defense claims arising from your broadcast, display or presentation of material over the worldwide public network known as the Internet and any private intranet, extranet, or virtual private network.

* * *

28.   *PRODUCT LIABILITY – SPECIFIED CAUSES OF LOSS* (other than **custom farming broad form property damage**):

* * *

a.   **Impaired Property** means all liability and defense claims arising out of damage to tangible property of others that has not been physically injured, but

cannot be used or is less useful because it contains **your product** or **your work** and there is a known or suspected defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**. This coverage only applies if the damaged tangible property of others can be restored by the removal, repair, replacement, or adjustment of **your product** or **your work**.

This coverage does not apply to damage to **your work** or **your product**.

b.   ***Inherent Product Flaw Liability*** means all liability and defense claims arising out of ***property damage*** to ***your product*** arising from ***your product***.

c.   ***Erroneous Delivery of Liquid Products*** means all liability and defense claims arising from the erroneous delivery of your liquid product.

d.   ***Product or Work Recall*** means all liability and defense claims arising from the loss of use withdrawal, recall, inspection, repair, replacement, adjustment, removal, disposal, of ***your product, impaired property*** or ***your work***, but only if ***your product, impaired property*** or ***your work*** is withdrawn or recalled from the market or from use.

e.   **Product Rejection** means all liability and defense claims arising out of the rejection of **your product** when the buyer or recipient of **your product** refuses to accept delivery of **your product** or demands recall of **your product** based on their determination that **your product** did not meet certain quality or appearance standards or delivery time agreements.

29.   ***PUBLISHING   OR   BROADCASTING   LEGAL LIABILITY – SPECIFIED CAUSES OF LOSS*** means all liability and defense claims arising out of false advertising, defamation, slander, or libel.

This coverage only applies if you are in the business of advertising, broadcasting, publishing or telecasting.

\* \* \*

34.    *VENDORS SCHEDULED LIABILITY:*

Any coverage afforded herein for any vendor is excess over any other applicable coverage.

a.    *Vendors – undeclared vendors or declared vendors controlled risks* mean all liability and defense claims arising out of the sale of *your product* by:

1)    Any vendor that is not scheduled as an additional insured in the Policy Declaration and Schedules; or

2)    Any vendor declared as an additional insured in the Policy Declaration and Schedules when a claim results from:

a)    Any unauthorized express warranty by a vendor;

b)    Any physical or chemical change in *your product* made intentionally by a vendor;

c)    Any repackaging, unless such repackaging is under the manufacturer's instruction and then repackaged in an original container;

d)    A vendor's failure to make inspections, adjustments, tests or servicing as agreed to as a normal course of business in connection with the sale or distribution of *your product*;

e)    Any demonstration, installation, servicing or repair operations performed by your vendor off their premises in connection with the sale of *your product*;

f)   ***Your product*** (after distribution or sale by you) that was relabeled or used as a container, part or ingredient of any other thing or substance by or for a vendor.

b.   ***Vendors Blanket Protection – All Other*** means all liability and defense claims arising out of ***your product*** sold by your vendors scheduled as additional insureds in the Policy Declaration and Schedules (other than ***vendors – undeclared vendors or declared vendors controlled risks***). This insurance does not apply when the liability arises or results from:

1)   Any unauthorized express warranty by a vendor;

2)   Any physical or chemical change in ***your product*** made intentionally by a vendor;

3)   Any repackaging by a vendor, unless such repackaging is under the manufacturer's instruction and then repackaged in an original container;

4)   A vendor's failure to make inspections, adjustments, tests or servicing as agreed to as a normal course of business in connection with the sale or distribution of ***your product***;

5)   Any demonstration, installation, servicing or repair operations performed by your vendor off their premises in connection with the sale of ***your product***;

6)   ***Your product*** (after distribution or sale by you) that was relabeled or used as a container, part or ingredient of any other thing or substance by or for a vendor.

17.     The RiskManager™ Policy also contains the following provisions respecting uninsured risks and GFC's duty to defend:

### UNINSURED RISKS

This coverage does not apply to the following uninsured risks, causes of loss, actions, or conduct regardless of any other insured cause of loss or event that contributes concurrently or in sequence to an uninsured risks, causes of loss, actions, or conduct.

### A.     DUTY TO DEFEND – INSURED ELSEWHERE

We will not pay for, nor are we obligated to defend any claim or lawsuit that any other insurer has a duty to defend.

### B.     ILLEGAL ACTS

We will not pay for any loss or damages (or defend any claim) arising out of your illegal or criminal acts including but not limited to:

1.     Any willful violation of a local, state, federal, international or foreign law, statute or ordinance;

* * *

5.     Fraud or extortion;

### C.     SPECIFIED ACTS OR DECISIONS

We will not pay any loss or damage, (or defend any claim) arising out of these specific acts:

1.     Any loss or damage caused by acts committed with your having actual knowledge of their wrongful nature or with the intent       to     cause     damage including     any     unforeseen     or     unintended consequential     loss     or     damage     that     results concurrently or in sequence to such act;

* * *

3.      Oral or written publication of material if done by you or at your
direction with knowledge of its falsity;

* * *

7.      If you assume or incur any obligation and voluntarily make a payment without our consent;

* * *

**G.      PRIOR LOSSES OR OFFENSES**

We will not pay for any damages (or defend any claim) resulting from:

1.      Oral or written publication of material whose first publication took place before the inception of this policy period;

2.      Any cause or causes of loss or damage, or a series of related acts or omissions that occurred, commenced were discovered or known to you before the policy inception date or before you acquired or formed any insured entity. This includes continuous or repeated exposure to substantially the same general harmful conditions. Any cause or causes of loss or damage or a series of related acts or omissions shall be deemed to be known to you when any insured or additional insured:

a.      Received a verbal or written demand for damages or performance;

b.      Reports a claim to any insurer; or

c.      Becomes or should become aware by any means that a loss has occurred or has begun to occur.

### Claim for Relief:  Declaratory Judgment

18.     GFC incorporates the preceding allegations in its Third Party Counterclaim as if fully set forth herein.

19.     Aurora Dairy made a claim with GFC under the RiskManager™ Policy demanding a defense and indemnification in connection with the Underlying Actions and the claims asserted against Aurora Dairy therein.

20.     GFC has denied coverage for Aurora Dairy's defense costs or indemnification pursuant to the terms of the RiskManager™ Policy.

21.     An actual controversy exists concerning GFC's and Aurora Dairy's respective rights, status, obligations and other interests under the RiskManager™ Policy.

22.     GFC seeks an adjudication from this Court as follows:

a.      That the RiskManager™ Policy affords no coverage for Aurora Dairy for the damages or losses described in the respective Complaints in the Underlying Actions; and

b.      That GFC is not obligated to provide a defense and/or indemnification to Aurora Dairy in connection with the allegations and claims asserted against Aurora Dairy in each of the Underlying Actions pursuant to the terms and limitations of the RiskManager™ Policy.

c.      Alternatively, to the extent GFC is found to have a duty to defend and/or indemnify Aurora Dairy, GFC requests a declaration setting forth each party's rights and obligations under each policy issued to Aurora Dairy, including without limitation a declaration concerning the reasonable and

necessary costs of defending against such claims, and taking into account (i) Aurora Dairy's responsibility to pay deductibles or to reimburse GFC; (ii) any uninsured or self-insured periods; (iii) all of the applicable insurance policies which Aurora Dairy has or had with any other insurance company; and (iv) all other factors which may bear upon this issue.

23.     A prompt judicial determination is necessary and appropriate because the 13 Underlying Actions are proceeding to be litigated in their respective jurisdictions.

WHEREFORE, GFC respectfully requests that, pursuant to F.R.C.P. 13 and 57, and 28 U.S.C. §§ 2201 and 2202, this Court enter an Order and declaratory judgment in GFC's favor and against Aurora, and for such other and further relief as the Court deems appropriate.

Respectfully submitted this 27th day of April, 2009.

ROTHGERBER JOHNSON & LYONS LLP

*s/S. Kato Crews*                                       .
Troy R. Olsen, #22287
S. Kato Crews, #31927
Rothgerber Johnson & Lyons LLP
90 S. Cascade Ave., Suite 1100
Colorado Springs, CO 80903
Tel.:  (719) 386-3000
Fax:  (719) 386-3070
tolsen@rothgerber.com / kcrews@rothgerber.com

**Attorneys for Third Party Defendant/Third Party Counterclaim Plaintiff General Fire & Casualty Company, presently known as American Farmers & Ranchers Insurance Company**

## CERTIFICATE OF SERVICE

I hereby certify that on 4/27/09, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Garrick L. Gallagher
garrick.gallagher@sandersparks.com
Debora L. Verdier
debora.verdier@sandersparks.com
*Attorneys for Ace American Insurance Corp. and Indemnity Insurance Company of North America*

Bethany K. Culp
bculp@hinshawlaw.com
Shushanie E. Kindseth
skindseth@hinshawlaw.com
Jacob S. Woodard
jwoodard@hinshawlaw.com
*Attorneys for National Surety Corporation and The American Insurance Company*

Livia M. Kiser
livia.kiser@lw.com
Mark S. Mester
mark.mester@lw.com
Daniel F. Wake
dwake@siwlegal.com
*Attorneys for Aurora Organic Dairy*

*s/Luanne Sutton*                              .
Luanne Sutton