## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No. 1:08-cv-01236-CBS-BNB,**
*consolidated with* **Civil Action No. 1:09-cv-00346-CBS-BNB**

---

ACE AMERICAN INSURANCE CORPORATION,
a Pennsylvania corporation;
INDEMNITY INSURANCE COMPANY OF NORTH AMERICA,
a Pennsylvania corporation;
NATIONAL SURETY CORPORATION,
an Illinois corporation; and
THE AMERICAN INSURANCE COMPANY,
an Ohio corporation,

Plaintiffs,

    v.

AURORA DAIRY CORPORATION,
a Delaware corporation,

Defendant.

---

AURORA DAIRY CORPORATION,
a Delaware corporation,

Counterclaim Plaintiff and Third-Party Plaintiff,

    v.

ACE AMERICAN INSURANCE CORPORATION,
a Pennsylvania corporation;
INDEMNITY INSURANCE COMPANY OF NORTH AMERICA,
a Pennsylvania corporation;
NATIONAL SURETY CORPORATION,
an Illinois corporation; and
THE AMERICAN INSURANCE COMPANY,
an Ohio corporation;

Counterclaim Defendants,

and

GENERAL FIRE & CASUALTY COMPANY,
an Idaho corporation, and
AMERICAN FARMERS & RANCHERS MUTUAL INSURANCE COMPANY,
an Oklahoma corporation,

Third-Party Defendants.

---

GENERAL FIRE & CASUALTY COMPANY,
an Idaho corporation,

Third-Party Counterclaim Plaintiff,

v.

AURORA DAIRY CORPORATION,
a Delaware corporation,

Third-Party Counterclaim Defendant.

**Civil Action No. 1:09-cv-00346-CBS-BNB**

AURORA DAIRY CORPORATION,
d/b/a AURORA ORGANIC DAIRY,
a Delaware corporation,

Plaintiff,

v.

NATIONWIDE AGRIBUSINESS INSURANCE COMPANY,

Defendant.

**ANSWER AND AFFIRMATIVE DEFENSES OF
AURORA DAIRY CORPORATION TO THE THIRD-PARTY
COUNTERCLAIM OF GENERAL FIRE & CASUALTY COMPANY**

Defendant/Counterclaim Plaintiff/Third-Party Counterclaim Defendant Aurora Dairy Corporation d/b/a Aurora Organic Dairy ("Aurora"), by its counsel, as and for its Answer and Affirmative Defenses to the Third-Party Counterclaim of General Fire & Casualty Company, presently known as American Farmers & Ranchers Insurance Company (collectively, "GFC") states as follows:

1. Third Party Plaintiff/Third Party Counterclaim Defendant, Aurora Dairy Corporation ("Aurora Dairy"), is a Delaware corporation with its principal place of business in Colorado.

**<u>ANSWER</u>:**

Aurora admits the allegations in Paragraph 1. By way of further response, Aurora states that GFC denied these allegations in its Answer to Aurora's First Amended Counterclaim (Dkt. #66) based on "insufficient knowledge."

2.      American Farmers & Ranchers Mutual Insurance Company purchased GFC from GF&C Holding Company in November, 2007.  GFC became a wholly owned subsidiary of American Farmers & Ranchers Mutual Insurance Company.  GFC's name was changed to American Farmers & Ranchers Insurance Company ("AFRIC") in February, 2008.  AFRIC is an Idaho corporation with its principal place of business in Idaho.[1]

**ANSWER:**

Aurora is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 2 and Footnote 1 and, on that basis, denies them. By way of further response, Aurora states that it has been advised by counsel for GFC that General Fire & Casualty Company now does business under the name of American Farmers & Ranchers Insurance Company.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 2 and Footnote 1.

3.      This Court has supplemental jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1367 because it is a compulsory and/or permissive Counterclaim under F.R.C.P. 13.

**ANSWER:**

Aurora admits the allegations in Paragraph 3.

4.      This Court also has jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds $75,000 exclusion [sic] of interest and costs and complete diversity of citizenship exists between the parties.

**ANSWER:**

Aurora admits that jurisdiction appears to exist under 28 U.S.C. § 1332, as GFC has alleged that the parties do not share a common state of residence and that the amount in controversy exceeds $75,000 exclusive of interest and costs.  By way of further response, Aurora states that GFC refused to admit these allegations in its Answer to Aurora's First Amended Counterclaim (Dkt. #66), because it claimed the allegations constituted "legal theories and

---

[1]    *See, supra*, n.1.

conclusions."  Except as expressly admitted, Aurora denies any remaining allegations in

Paragraph 4.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Aurora
Dairy's principal place of business is within the District of Colorado and has brought the original
action against GFC in this District and Court.

**ANSWER:**

Aurora admits the allegations in Paragraph 5.  By way of further response, Aurora states

that GFC refused to admit these allegations in its Answer to Aurora's First Amended

Counterclaim (Dkt. #66), because it claimed the allegations constituted "legal theories and

conclusions."

6.      Aurora Dairy sells and produces milk certified as "organic."  Upon information
and belief, it also sells its milk to retailers, who then sell the milk as "organic" under their own
brands or labels.

**ANSWER:**

Aurora admits that it produces organic milk that is sold by various retailers under the

respective retailers' store brands and labels, as well as through Aurora's own label, "High

Meadow."  By way of further response, Aurora further affirmatively states that it markets and

sells milk with the USDA Organic seal in accordance with the organic certifications issued to

Aurora by two certifying agents -- the Colorado Department of Agriculture ("CDA") and Quality

Assurance International, Inc. ("QAI") -- acting pursuant to the authority vested in them by the

United States Department of Agriculture ("USDA") under the Organic Foods Production Act of

1990 ("OFPA") (7 U.S.C. §§ 6501, et seq.) and the National Organic Program ("NOP")

regulations (7 C.F.R. Part 205, et seq.).  Except as expressly admitted, Aurora denies any

remaining allegations in Paragraph 6.

7.      GFC issued RiskManager™ Policy No. RM00734-00 to Aurora Dairy with a policy period of July 1, 2004 to June 1, 2005, when it was cancelled by the insured.

**ANSWER:**

Aurora admits that GFC issued RiskManager™ Policy No. RM00734-00 to Aurora with a Policy Period beginning July 1, 2004.  By way of further response and upon information and belief, Aurora states that in or around May of 2005, it was advised by its insurance broker to find alternative coverage due to, inter alia, financial problems at GFC and subsequently did so. Aurora further states that its investigation continues, and it reserves the right to supplement its response to Paragraph 7 as additional facts become known.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 7.

8.      Upon information and belief, Aurora Dairy was named as a defendant in thirteen class action lawsuits in which the claimants allege to have sustained economic loss because they paid a higher price for Aurora Dairy's milk because they thought it was "organic."  The claimants allege that because the milk was not organic, Aurora Dairy obtained more revenue for the milk than it would have obtained selling non-organic milk.

**ANSWER:**

Aurora admits that it has been named in thirteen (13) consumer class actions (the "underlying actions"), which were filed in the courts of six (6) different states and were consolidated pursuant to 28 U.S.C. § 1407 before the United States District Court for the Eastern District of Missouri in the action In re Aurora Dairy Corporation Organic Milk Marketing and Sales Practices Litigation ("In re Aurora Dairy Corp.").  Aurora denies that the claimants in the underlying actions seek damages solely for economic loss and affirmatively states that allegations of bodily injury, property damage, personal injury and/or advertising injury are included in the underlying actions.  By way of further response, Aurora states that the allegations and claims in the underlying actions speak for themselves, and to the extent that the allegations

in Paragraph 8 vary therewith, Aurora denies those allegations.  Except as expressly admitted,

Aurora denies any remaining allegations in Paragraph 8.

        9.      The following is a list of the Underlying Actions:

A.      *DiSimone v. Aurora Dairy Corporation d/b/a Aurora Organic Dairy, Case Vander Eyk, Jr. d/b/a Case Vander Eyk, Jr. Dairy, Quality Assurance International, Inc. a/k/a QAI, and Does 1-50*; Superior Court of the State of California for the County of Los Angeles

B.      *Gallardo v. Aurora Dairy Corporation, d/b/a Aurora Organic Dairy*, a Delaware Corporation; United States District Court Northern District of California

C.      *Cockrell v. Aurora Dairy Corporation, d/b/a Aurora Organic Dairy*; In the United States District Court for the District of Colorado

D.      *Rebecca and Fernando Freyre v. Aurora Dairy Corporation*; In the United States District Court for the District of Colorado

E.      *Snell v. Aurora Dairy Corporation, d/b/a Aurora Organic Dairy, Wild Oats Market, Inc. Costco Wholesale Corporation, Safeway, Inc.*; In the United States District Court for the District of Colorado

F.      *Still v. Aurora Dairy Corporation d/b/a Aurora Organic Dairy*; In the United States District Court for the District of Colorado

G.      *West v. Aurora Dairy Corporation, d/b/a Aurora Organic Dairy*; In the United States District Court for the District of Colorado

H.      *Fiallos v. Aurora Dairy Corporation, d/b/a Aurora Organic Dairy*; United States District Court for the Southern District of Florida

I.      *Cowan v. Aurora Dairy;* Marion Cty Superior Court, State of Indiana

J.      *Kristine Mothershead v. Aurora Dairy Corporation, d/b/a Aurora Organic Dairy*; United States District Court for the Eastern District of Missouri Eastern Division

K.      *Kaye, v. Aurora Dairy Corp., d/b/a Aurora Organic Dairy*; United States District Court Eastern District of New York

L.      *Hillary White and Lynn Michalson v. Aurora Dairy Corp., d/b/a Aurora Organic Dairy*; United States District Court Southern District of New York

      M.     *Koch v. Aurora Dairy Corp.*; United States District Court for the Eastern District of Missouri

**ANSWER:**

Aurora denies that the list of underlying actions set forth in Paragraph 9 is complete and correct.  By way of further response, Aurora affirmatively states that the following is a complete list of the underlying actions:

| PARTIES | COURT |
|---|---|
| *Plaintiff*:<br>Robert E. Koch, individually and on behalf of those similarly situated<br>*Defendant*:<br>Aurora Dairy Corporation d/b/a Aurora Organic Dairy | E.D. Missouri |
| *Plaintiffs*:<br>Kristine Mothershead and Leonie Lloyd, individually and on behalf of all others similarly situated<br>*Defendant*:<br>Aurora Dairy Corporation d/b/a Aurora Organic Dairy | E.D. Missouri |
| *Plaintiff*:<br>Maya Fiallos, individually and on behalf of all others similarly situated<br>*Defendant*:<br>Aurora Dairy Corporation d/b/a Aurora Organic Dairy | S.D. Florida |
| *Plaintiffs*:<br>Rebecca and Fernando Freyre, on behalf of themselves and all others similarly situated<br>*Defendant*:<br>Aurora Dairy Corporation | D. Colorado |
| *Plaintiffs*:<br>Mona Still, Helen Phillips, Eve Hana, Jeanmarie Zirger, Kim King, Noelle Fincham, Oksana Jensen, Gabriela Waschewsky, Laurelanne Davis, Debbie Millikan, Joan Scheutz, Sandie Regan, Steve Shriver, Mary Elbertai, Eileen Ptak, Cynthia Roche-Cotter, Kristen Finnegan, Amy Forsman, Joy Beckner, Naomi Mardock, Olive Knaus, Liana Hoodes, Donita Robinson, Ilene Rachford, Lisa Hopkins, Caryn Poirier, Erin Diserens, Tammy Coselli, Debra Haines, Debra Schmidt, Hans Kueck<br>*Defendant*:<br>Aurora Dairy Corporation d/b/a Aurora Organic Dairy | D. Colorado |

| PARTIES | COURT |
|---|---|
| *Plaintiff*:<br>Brenda Gallardo, an individual<br>*Defendant*:<br>Aurora Dairy Corporation d/b/a Aurora Organic Dairy | N.D. California |
| *Plaintiff*:<br>Ilsa Lee Kaye, individually and on behalf of all others similarly situated<br>*Defendant*:<br>Aurora Dairy Corporation d/b/a Aurora Organic Dairy | E.D. New York |
| *Plaintiff*:<br>Elizabeth Cockrell, individually and on behalf of all others similarly situated<br>*Defendant*:<br>Aurora Dairy Corporation d/b/a Aurora Organic Dairy | D. Colorado |
| *Plaintiffs*:<br>Jim Snell, Steve Clark, John Barrera, Joseph Villari, Elida Gollomp, Claire M. Theodore and Elisabeth Banse, on behalf of themselves and all others similarly situated<br>*Defendants*:<br>Aurora Dairy Corporation d/b/a Aurora Organic Dairy, Wild Oats Market, Inc., Costco Wholesale Corporation, Safeway Inc., Wal-Mart Stores, Inc. | D. Colorado |
| *Plaintiffs*:<br>Margot A. West, and Richard E. Ehly, individually and on behalf of a class of all others similarly situated<br>*Defendant*:<br>Aurora Dairy Corporation d/b/a Aurora Organic Dairy | D. Colorado |
| *Plaintiff*:<br>Fayetta Cowan<br>*Defendant*:<br>Aurora Dairy Corporation d/b/a Aurora Organic Dairy and Wal-Mart Stores, Inc. | S.D. Indiana |
| *Plaintiff*:<br>Nicolle DiSimone, individually and on behalf of those similarly situated<br>*Defendant*:<br>Aurora Dairy Corporation d/b/a Aurora Organic Dairy | C.D. California |

| PARTIES | COURT |
|---|---|
| *Plaintiffs*:<br>Hillary White and Lynn Michalson, individually and on behalf of all others similarly situated<br>*Defendant*:<br>Aurora Dairy Corporation d/b/a Aurora Organic Dairy | S.D. New York |

Aurora further affirmatively states that the above-listed actions were consolidated pursuant to 28 U.S.C. § 1407 before the United States District Court for the Eastern District of Missouri in the action In re Aurora Dairy Corp.  Aurora further affirmatively states that consumers have filed an additional six (6) class actions against some of Aurora's retailer customers, which are based on Aurora's alleged wrongdoing and were also consolidated in the action In re Aurora Dairy Corp. Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 9.

10.     In its Third Party Complaint, Aurora Dairy contends that GFC is obligated to provide Aurora Dairy with a defense in each of the Underlying Actions, and that GFC improperly denied its duty to defend Aurora Dairy from claims in the *Mothershead* action, as well as the other 12 class action lawsuits.

**ANSWER:**

Aurora admits that GFC is obligated to provide Aurora with a defense in the underlying actions.  Aurora further admits that GFC improperly denied its duty to defend Aurora in the action styled Mothershead, et al. v. Aurora Dairy Corp. d/b/a/ Aurora Organic Dairy, Case No. 4:07-cv-01701 (E.D. Mo. filed Oct. 7, 2007) ("Mothershead").  Aurora denies that it has requested any relief in its First Amended Counterclaim (Dkt. #52) relating to any action other than Mothershead.  By way of further response, Aurora states that the First Amended Counterclaim (Dkt. #52) speaks for itself, and to the extent that the allegations in Paragraph 10 vary therewith, Aurora denies those allegations.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 10.

11.     Based on the RiskManager™ Policy's terms, conditions, limitations, endorsements, and exclusions, GFC denies it has a duty to defend or indemnify Aurora Dairy in the Underlying Actions.

**ANSWER:**

Aurora admits that GFC purports to deny its duty to defend or indemnify Aurora in the underlying actions.  Aurora denies that the terms, conditions, limitations, endorsements and exclusions of the RiskManager™ Policy actually relieve GFC of its duty to defend Aurora in the underlying actions.  By way of further response, Aurora affirmatively states that GFC's purported denial of its duty to indemnify Aurora is premature.  Aurora further states that the terms of the RiskManager™ Policy are ambiguous, that the Policy was structured in a manner and mode so as to mislead insureds and prospective insureds and that if the Policy were accorded the meaning being urged by GFC, the coverage afforded by the Policy would largely be illusory and GFC and its affiliates would be subject to, inter alia, claims of fraud and fraud in the inducement.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 11.

12.     By this Third Party Counterclaim, GFC seeks a declaration that the RiskManager™ Policy does not obligate GFC to provide a defense or indemnity to Aurora Dairy for any of the Underlying Actions.

**ANSWER:**

Aurora admits that through this lawsuit, GFC purports to seek a declaration that it has no obligation to defend or indemnify Aurora in the underlying actions.  Aurora denies that GFC is entitled to any relief whatsoever, including, but not limited to, the relief sought in its Third-Party Counterclaim.  By way of further response, Aurora affirmatively states that GFC's request for a declaration regarding its duty to indemnify Aurora is premature.  Aurora further incorporates its answer to Paragraph 11 as and for its answer to Paragraph 12.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 12.

13.     Pursuant to the terms of the RiskManager™ Policy, GFC contracted to provide certain liability insurance coverage to Aurora Dairy, subject to certain conditions, limitations and exclusions as forth in the policy.

**<u>ANSWER</u>:**

The terms of the RiskManager™ Policy speak for themselves, and to the extent that the allegations in Paragraph 13 vary therewith, Aurora denies those allegations.  Aurora further incorporates its answer to Paragraph 11 as and for its answer to Paragraph 13.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 13.

14.     The RiskManager™ Policy contains the following provisions, in relevant part:

<u>This is a defense within limits policy</u>.  In a defense within limits policy, the attorney fees and other defense costs reduce the applicable Legal Liability and Defense limit.  If you have any questions regarding defense within the limits, please ask your agent.

***

**LEGAL LIABILITY AND DEFENSE SECTION**
**LEGAL LIABILITY AND DEFENSE**

**A.     INSURING AGREEMENT**

Subject to all the terms and conditions of this policy, we will pay your legal liability and defense costs up the ***blanket liability and defense limit,*** or up to the ***legal liability and defense sub-limit*** for ***Covered Legal Liability and Defense Causes of Loss*** or from ***Sub-Limited Legal Liability and Defense Causes of Loss - Consequential Loss or Damage*** that first occurs during the policy period.

Exposure to substantially the same cause or causes of loss or damage or a series of related acts or omissions shall be considered a single claim.  In event a claim related to two or more of our policy periods, such claim shall be deemed to have originated in the earliest policy period in which the loss first occurred.  If that claim is covered, all damages related to that claim shall be included in the applicable ***blanket legal liability and defense limit*** or ***legal liability and defense sub-limit*** of the earliest policy period during which the claim first began to occur.

***

E.      **LEGAL LIABILITY AND DEFENSE WITHIN POLICY LIMITS**

\*\*\*

1.      **BLANKET LEGAL LIABILITY AND DEFENSE LIMIT**:  This limit is an annual aggregate policy limit and is the most we will pay (including attorney fees and defense costs) regardless of the number of accidents, settlements, claims, claimants, lawsuits, acts or parties involved.  The *blanket legal liability and defense limit* applies separately to each consecutive policy period shown in the Policy Declaration and Schedules.  For purposes of determining the *blanket legal liability and defense limit*, any extension of less than 12 months will be deemed part of the last preceding policy period.

2.      **LEGAL LIABILITY AND DEFENSE SUB-LIMIT**:  Certain cause of loss, consequential loss or damages are sub-limited and have a lower limit than the *blanket legal liability and defense limit*.  These lower limits are stated in the Policy Declaration and Schedules and are defined in *Sub-limited Legal Liability and Defense Causes of Loss - Consequential Loss or Damage.*  Losses paid under this coverage part will reduce the available *blanket legal liability and defense limit* and do not represent additional limits of coverage.

3.      **COVERAGE UNDER TWO OR MORE LIMITS**:  If the *blanket legal liability and defense limit* and one or more, *legal liability and defense sub-limits* apply to the same covered claim, we will only pay up to the largest single applicable *legal liability and defense sub-limit*.  In any event, no stacking of any coverage is allowed, regardless of the number of covered claims or other cause of loss or event that contributes concurrently or in sequence to the cause of loss, consequential cause of loss or damage.

**ANSWER:**

The terms of the RiskManager™ Policy speak for themselves, and to the extent that the allegations in Paragraph 14 vary therewith, Aurora denies those allegations.  Aurora further incorporates its answer to Paragraph 11 as and for its answer to Paragraph 14.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 14.

- 12 -

15.    The RiskManager™ Policy contains the following provisions regarding covered legal liabilities and defense causes of loss:

### H.    COVERED LEGAL LIABILITY AND DEFENSE CAUSES OF LOSS

**COVERED LEGAL LIABILITY AND DEFENSE CAUSES OF LOSS** means:

*** 

2.    ***BODILY INJURY*** means all liability and defense claims that first occur during the policy period and arise from human physical damage, sickness or disease (other than ***disease-STD***) and the resulting emotional or mental distress or death from any of these conditions.

3.    ***CONTRACTUAL LIABILITY – SPECIFIED CONTRACTS*** mean ***bodily injury*** or ***property damage*** that occurs after the execution date of a contract or agreement, or that you would have in the absence of a covered contract or agreement, and has resulted from liability assumed in:

*** 

d.    A license contract or agreement;

*** 

e.    Any agreement to assume the tort liability of another party as part of a written or verbal contract. Tort liability includes legal liability that would be imposed by law in the absence of any contract or agreement provided the ***bodily injury*** or ***property damage*** occurs after the execution date of the contract or agreement.

*** 

8.    ***PRODUCT LIABILITY – YOUR PRODUCT*** means ***bodily injury*** or ***property damage*** that first occurs during the policy period and is caused by your product.

***Your product*** means any goods or products (other than real property) grown, manufactured, sold handled, distributed or disposed of by you, and those instructions, warranties and representations that you make relating to those goods or products.  ***Your product*** includes containers (other than

*vehicles* or vending machines) materials, parts or equipment furnished in connections with such goods or products.

9.     *PROPERTY DAMAGE* means loss or damage that first occurs during the policy period and arises from physical injury to or destruction of tangible property including resulting loss of use of that property.

**ANSWER:**

The terms of the RiskManager™ Policy speak for themselves, and to the extent that the allegations in Paragraph 15 vary therewith, Aurora denies those allegations.  Aurora further incorporates its answer to Paragraph 11 as and for its answer to Paragraph 15.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 15.

16.     The RiskManager™ Policy also contains the following policy sub-limits:

I.     **SUB-LIMITED LEGAL LIABILITY AND DEFENSE CAUSES OF LOSS – CONSEQUENTIAL LOSS OR DAMAGE**

*SUB-LIMITED LEGAL LIABILITY AND DEFENSE CAUSE OF LOSS – CONSEQUENTIAL LOSS OR DAMAGE* means those specified causes of loss, consequential loss or damage listed below.  Each cause of loss, consequential loss or damage is subject to a *legal liability and defense sub-limit*.  All losses, consequential losses or damage paid under the *Sub-limited Legal Liability and Defense Causes of Loss – Consequential loss or Damage* are not additional coverage limits.  Any payments made under this coverage section will reduce the limit or insurance available under the *blanket legal liability and defense limit.*

The applicable *legal liability and defense sub-limit* applied regardless of any other causes or event contributing to such loss or damage in any way or at any time.

1.     *ADVERTISING AND PUBLICATION LIABILITY – ALL OTHER* means all liability and defense claims arising out of the unintended loss or damage from your oral or written publication of materials (other than *advertising and publication liability – specified causes of loss* or *internet advertising liability*) including the failure of goods, products or services to conform with the advertised quality

of performance, or the wrong description of the price of goods, products, or services.

This coverage only applies if you are in the business of advertising, broadcasting, publishing, or telecasting.

***

21.     **INTERNET RISK**:

    **a.**     ***Internet Advertising Liability*** means all liability and defense claims arising from your broadcast, display or presentation of material over the worldwide public network known as the Internet and any private intranet, extranet, or virtual private network.

***

28.     ***PRODUCT LIABILITY – SPECIFIED CAUSES OF LOSS*** (other than **custom farming broad form property damage**):

***

    a.     **Impaired Property** means all liability and defense claims arising out of damage to tangible property of others that has not been physically injured, but cannot be used or is less useful because it contains **your product** or **your work** and there is a known or suspected defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**.  This coverage only applies if the damaged tangible property of others can be restored by the removal, repair, replacement, or adjustment of **your product** or **your work**.

This coverage does not apply to damage to **your work** or **your product**.

    b.     ***Inherent Product Flaw Liability*** means all liability and defense claims arising out of ***property damage*** to ***your product*** arising from ***your product***.

    c.     ***Erroneous Delivery of Liquid Products*** means all liability and defense claims arising from the erroneous delivery of your liquid product.

      d.       ***Product or Work Recall*** means all liability and defense claims arising from the loss of use withdrawal, recall, inspection, repair, replacement, adjustment, removal, disposal, of ***your product, impaired property*** or ***your work***, but only if ***your product, impaired property*** or ***your work*** is withdrawn or recalled from the market or from use.

      e.       **Product Rejection** means all liability and defense claims arising out of the rejection of **your product** when the buyer or recipient of **your product** refuses to accept delivery of **your product** or demands recall of **your product** based on their determination that **your product** did not meet certain quality or appearance standards or delivery time agreements.

**29.**     ***PUBLISHING OR BROADCASTING LEGAL LIABILITY – SPECIFIED CAUSES OF LOSS*** means all liability and defense claims arising out of false advertising, defamation, slander, or libel.

This coverage only applies if you are in the business of advertising, broadcasting, publishing or telecasting.

***

**34.**     **VENDORS SCHEDULED LIABILITY**:

Any coverage afforded herein for any vendor is excess over any other applicable coverage.

      a.       **Vendors – undeclared vendors or declared vendors controlled risks** mean all liability and defense claims arising out of the sale of **your product** by:

          1)     Any vendor that is not scheduled as an additional insured in the Policy Declaration and Schedules; or

          2)     Any vendor declared as an additional insured in the Policy Declaration and Schedules when a claim results from:

               a)     Any unauthorized express warranty by a vendor;

b)      Any physical or chemical change in *your product* made intentionally by a vendor;

c)      Any repackaging, unless such repackaging is under the manufacturer's instruction and then repackaged in an original container;

d)      A vendor's failure to make inspections, adjustments, tests or servicing as agreed to as a normal course of business in connection with the sale or distribution of *your product*;

e)      Any demonstration, installation, servicing or repair operations performed by your vendor off their premises in connection with the sale of *your product*;

f)      *Your product* (after distribution or sale by you) that was relabeled or used as a container, part or ingredient of any other thing or substance by or for a vendor.

b.      ***Vendors Blanket Protection – All Other*** means all liability and defense claims arising out of *your product* sold by your vendors scheduled as additional insureds in the Policy Declaration and Schedules (other than ***vendors – undeclared vendors or declared vendors controlled risks***). This insurance does not apply when the liability arises or results from:

1)      Any unauthorized express warranty by a vendor;

2)      Any physical or chemical change in *your product* made intentionally by a vendor;

3)      Any repackaging by a vendor, unless such repackaging is under the manufacturer's instruction and then repackaged in an original container;

4)     A vendor's failure to make inspections, adjustments, tests or servicing as agreed to as a normal course of business in connection with the sale or distribution of ***your product***;

5)     Any demonstration, installation, servicing or repair operations performed by your vendor off their premises in connection with the sale of ***your product***;

6)     ***Your product*** (after distribution or sale by you) that was relabeled or used as a container, part or ingredient of any other thing or substance by or for a vendor.

**ANSWER:**

The terms of the RiskManager™ Policy speak for themselves, and to the extent that the allegations in Paragraph 16 vary therewith, Aurora denies those allegations.  Aurora further incorporates its answer to Paragraph 11 as and for its answer to Paragraph 16.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 16.

17.    The RiskManager™ Policy also contains the following provisions respecting uninsured risks and GFC's duty to defend:

**UNINSURED RISKS**

This coverage does not apply to the following uninsured risks, causes of loss, actions, or conduct regardless of any other insured cause of loss or event that contributes concurrently or in sequence to an uninsured risks, causes of loss, actions, or conduct.

A.    **DUTY TO DEFEND – INSURED ELSEWHERE**

We will not pay for, nor are we obligated to defend any claim or lawsuit that any other insurer has a duty to defend.

B.    **ILLEGAL ACTS**

We will not pay for any loss or damages (or defend any claim) arising out of your illegal or criminal acts including but not limited to:

1.    Any willful violation of a local, state, federal, international or foreign law, statute or ordinance;

***

5.       fraud or extortion;

**C.     SPECIFIED ACTS OR DECISIONS**

We will not pay any loss or damage, (or defend any claim) arising out of these specific acts:

1.       any loss or damage caused by acts committed with your having actual knowledge of their wrongful nature or with the intent to cause damage including any unforeseen or unintended consequential loss or damage that results concurrently or in sequence to such act;

***

3.       Oral or written publication of material if done by you or at your direction with knowledge of its falsity;

***

7.       if you assume or incur any obligation and voluntarily make a payment without our consent;

***

**G.     PRIOR LOSSES OR OFFENSES**

We will not pay for any damages (or defend any claim) resulting from:

1.       Oral or written publication of material whose first publication took place before the inception of this policy period;

2.       Any cause or causes of loss or damage, or a series of related acts or omissions that occurred, commenced were discovered or known to you before the policy inception date or before you acquired or formed any insured entity. This includes continuous or repeated exposure to substantially the same general harmful conditions. Any cause or causes of loss or damage or a series of related acts or omissions shall be deemed to be known to you when any insured or additional insured:

       a.       Received a verbal or written demand for damages or performance;

       b.      Reports a claim to any insurer; or

       c.      Becomes or should become aware by any means that a loss has occurred or has begun to occur.

**ANSWER:**

The terms of the RiskManager™ Policy speak for themselves, and to the extent that the allegations in Paragraph 17 vary therewith, Aurora denies those allegations.  Aurora further incorporates its answer to Paragraph 11 as and for its answer to Paragraph 17.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 17.

18.     GFC incorporates the preceding allegations in its Third Party Counterclaim as if fully set forth herein.

**ANSWER:**

Aurora incorporates its answers to Paragraphs 1-17 as if set forth fully herein.

19.     Aurora Dairy made a claim with GFC under the RiskManager™ Policy demanding a defense and indemnification in connection with the Underlying Actions and the claims asserted against Aurora Dairy therein.

**ANSWER:**

Aurora admits that it provided GFC with timely notice of the underlying actions and requested that GFC defend and indemnify Aurora.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 19.

20.     GFC has denied coverage for Aurora Dairy's defense costs or indemnification pursuant to the terms of the RiskManager™ Policy.

**ANSWER:**

Aurora admits that GFC has stated that the allegations in the underlying complaints purportedly do not implicate the "Covered Legal Liability and Defense Cause of Loss."  By way of further response, Aurora affirmatively states that GFC did conclude that the allegations in the various underlying complaints triggered the "Sub-Limited Legal Liability and Defense Causes of Loss" for "Internet Activity Liability."  Aurora further incorporates its answer to Paragraph 11 as

and for its answer to Paragraph 20.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 20.

21.     An actual controversy exists concerning GFC's and Aurora Dairy's respective rights, status, obligations and other interests under the RiskManager™ Policy.

**ANSWER:**

Aurora admits that an actual controversy exists as to whether, pursuant to the RiskManager™ Policy, GFC owes Aurora a duty to defend the underlying actions and whether GFC is guilty of bad faith as well as whether the coverage purportedly afforded by the RiskManager™ Policy is illusory, such that GFC and its affiliates are guilty of, <u>inter</u> <u>alia</u>, fraud and fraud in the inducement.  Aurora denies that under Colorado law, GFC was entitled to seek a declaration regarding its duty to defend prior to the conclusion of the underlying actions and states that the efforts of GFC and the other carriers to seek such a declaration is improper and further evidence of bad faith.  <u>See</u>, <u>e.g.</u>, <u>Hecla Mining Co. v. N.H. Ins. Co.</u>, 811 P.2d 1083, 1089 (Colo. 1991).  Aurora further denies that GFC is entitled to a declaratory judgment regarding its obligation to indemnify Aurora, as such a declaration would be premature.  Aurora further denies that GFC is entitled to any declaration concerning the "reasonable and necessary costs of defending" the claims in the underlying actions, as such a declaration would be premature, not ripe and advisory.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 21.

22.     GFC seeks an adjudication from this Court as follows:

a.     That the RiskManager™ Policy affords no coverage for Aurora Dairy for the damages or losses described in the respective Complaints in the Underlying Actions; and

b.     That GFC is not obligated to provide a defense and/or indemnification to Aurora Dairy in connection with the allegations and claims asserted against Aurora Dairy in each of the Underlying Actions pursuant to the terms and limitations of the RiskManager™ Policy.

      c.      Alternatively, to the extent GFC is found to have a duty to defend and/or indemnify Aurora Dairy, GFC requests a declaration setting forth each party's rights and obligations under each policy issued to Aurora Dairy, including without limitation a declaration concerning the reasonable and necessary costs of defending against such claims, and taking into account (i) Aurora Dairy's responsibility to pay deductibles or to reimburse GFC; (ii) any uninsured or self-insured periods; (iii) all of the applicable insurance policies which Aurora Dairy has or had with any other insurance company; and (iv) all other factors which may bear upon this issue.

**ANSWER:**

Aurora admits that GFC purports to seek a declaration from this Court as detailed in Paragraph 22.  Aurora denies that GFC is entitled to any relief whatsoever, including, but not limited to, the relief sought in its Third-Party Counterclaim.  Aurora further denies that under Colorado law, GFC was entitled to seek a declaration regarding its duty to defend prior to the conclusion of the underlying actions and states that the efforts of GFC and the other carriers to seek such a declaration is improper and further evidence of bad faith.  See, e.g., Hecla Mining Co. v. N.H. Ins. Co., 811 P.2d 1083, 1089 (Colo. 1991).  Aurora further denies that GFC is entitled to a declaratory judgment regarding its obligation to indemnify Aurora, as such a declaration would be premature.  Aurora further denies that GFC is entitled to any declaration concerning the "reasonable and necessary costs of defending" the claims in the underlying actions, as such a declaration would be premature, not ripe and advisory.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 22.

23.     A prompt judicial determination is necessary and appropriate because the 13 Underlying Actions are proceeding to be litigated in their respective jurisdictions.

**ANSWER:**

Aurora admits that a prompt judicial determination regarding whether, pursuant to the RiskManager™ Policy, GFC owes Aurora a duty to defend the underlying actions is necessary given that GFC has initiated the instant claim.  Aurora denies that under Colorado law, GFC was

entitled to seek a declaration regarding its duty to defend prior to the conclusion of the underlying actions and states that the efforts of GFC and the other carriers to seek such a declaration is improper and further evidence of bad faith.  See, e.g., Hecla Mining Co. v. N.H. Ins. Co., 811 P.2d 1083, 1089 (Colo. 1991).  Aurora further denies that a prompt judicial determination regarding GFC's obligation to indemnify Aurora is necessary and appropriate, as such a declaration would be premature, not ripe and advisory.  Aurora further denies that a prompt judicial determination regarding the "reasonable and necessary costs of defending" the claims in the underlying actions is necessary and appropriate, as such a declaration would be premature, not ripe and advisory.  By way of further response, Aurora affirmatively states that the underlying actions are currently on appeal before the United States Court of Appeals for the Eighth Circuit, following dismissal of all claims by the United States District Court for the Eastern District of Missouri.  Except as expressly admitted, Aurora denies any remaining allegations in Paragraph 23.

WHEREFORE, GFC respectfully requests that, pursuant to F.R.C.P. 13 and 57, and 28 U.S.C. §§ 2201 and 2202, this Court enter an Order and declaratory judgment in GFC's favor and against Aurora, and for such other and further relief as the Court deems appropriate.

**ANSWER:**

Aurora denies that GFC is entitled to any relief whatsoever, including, but not limited to, the relief sought in its Third-Party Counterclaim.  Except as expressly admitted, Aurora denies any remaining allegations in the preceding Paragraph.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

1.     The Third-Party Counterclaim fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

2.      The claims of GFC are barred, in whole or in part, by the doctrines of waiver, estoppel and/or laches.

## THIRD AFFIRMATIVE DEFENSE

3.      GFC may be barred, in whole or in part, from recovery because it has made statements and/or taken actions that estop it from asserting its claims.

## FOURTH AFFIRMATIVE DEFENSE

4.      The claims of GFC are barred, in whole or in part, to the extent that GFC engaged in unlawful, inequitable or improper conduct.

## FIFTH AFFIRMATIVE DEFENSE

5.      The claims of GFC are barred, in whole or in part, because GFC has breached its duties and its contractual obligations to Aurora, including its duty of good faith and fair dealing.

## SIXTH AFFIRMATIVE DEFENSE

6.      GFC's request for a declaration regarding its duty to indemnify Aurora is barred as premature.

## SEVENTH AFFIRMATIVE DEFENSE

7.      GFC's request for a declaration regarding the "reasonable and necessary costs of defending" the claims in the underlying actions is barred as premature, not ripe and advisory.

## EIGHTH AFFIRMATIVE DEFENSE

8.      GFC has failed to join all necessary and required parties to its Third-Party Counterclaim.

## NINTH AFFIRMATIVE DEFENSE

9.      Granting GFC's request for a declaration that the "RiskManager™ Policy affords no coverage for Aurora Dairy for the damages or losses described in the respective Complaints

in the Underlying Actions" would frustrate Aurora's reasonable expectations in entering into that Policy and would render coverage illusory.  It would also raise issues as to whether GFC and its affiliates are guilty of, <u>inter alia</u>, fraud and fraud in the inducement.

### TENTH AFFIRMATIVE DEFENSE

10.     Aurora has insufficient knowledge or information upon which to form a belief as to whether it may have additional affirmative defenses that govern the claims asserted by GFC. Aurora, therefore, reserves the right to raise additional affirmative defenses as appropriate in the future.

Respectfully submitted this 13th day of October, 2009.

/s/ Mark S. Mester
One of the Attorneys for Defendant,
Counterclaim Plaintiff and Third-Party
Counterclaim Defendant Aurora Dairy
Corporation

LATHAM & WATKINS LLP
Mark S. Mester
Livia M. Kiser
233 South Wacker Drive, Suite 5800
Chicago, Illinois  60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
Email:  mark.mester@lw.com
          livia.kiser@lw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 13, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Bethany K. Culp
bculp@hinshawlaw.com, dhaugen@hinshawlaw.com

Shushanie E. Kindseth
skindseth@hinshawlaw.com, llivingston@hinshawlaw.com

Jacob S. Woodard
jwoodard@hinshawlaw.com

Garrick L. Gallagher
Garrick.Gallagher@SandersParks.com

Debora L. Verdier
Debora.Verdier@SandersParks.com

Troy Olsen
tolsen@rothgerber.com

Daniel F. Wake
dwake@siwlegal.com

Brett Norman Huff
bhuff@huffandleslie.com

S. Kato Crews
kcrews@rothgerber.com

Brad E. Brewer
bbrewer@zelle.com

/s/ Livia M. Kiser
LATHAM & WATKINS LLP
Mark S. Mester
Livia M. Kiser
233 South Wacker Drive, Suite 5800
Chicago, Illinois  60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
Email: mark.mester@lw.com
        livia.kiser@lw.com