**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:08-cv-01236-CBS-BNB,
*consolidated with* Civil Action No. 1:09-cv-00346-CBS-BNB

---

ACE AMERICAN INSURANCE CORPORATION,
a Pennsylvania corporation;
INDEMNITY INSURANCE COMPANY OF NORTH AMERICA,
a Pennsylvania corporation;
NATIONAL SURETY CORPORATION,
an Illinois corporation; and
THE AMERICAN INSURANCE COMPANY,
an Ohio corporation,

        Plaintiffs,

 v.

AURORA DAIRY CORPORATION,
a Delaware corporation,

        Defendant.

---

AURORA DAIRY CORPORATION,
a Delaware corporation,

        Counterclaim Plaintiff and Third-Party Plaintiff,

 v.

ACE AMERICAN INSURANCE CORPORATION,
a Pennsylvania corporation;
INDEMNITY INSURANCE COMPANY OF NORTH AMERICA,
a Pennsylvania corporation;
NATIONAL SURETY CORPORATION,
an Illinois corporation; and
THE AMERICAN INSURANCE COMPANY,
an Ohio corporation,

        Counterclaim Defendants,

and

GENERAL FIRE & CASUALTY COMPANY,
an Idaho corporation, and
AMERICAN FARMERS & RANCHERS MUTUAL INSURANCE COMPANY,
an Oklahoma corporation,

        Third-Party Defendants.

| | |
|---|---|
| GENERAL FIRE & CASUALTY COMPANY,<br>an Idaho corporation, | |
| | Third-Party Counterclaim Plaintiff, |
| v. | |
| AURORA DAIRY CORPORATION,<br>a Delaware corporation, | |
| | Third-Party Counterclaim Defendant. |

**Civil Action No. 1:09-cv-00346-CBS-BNB**

| | |
|---|---|
| AURORA DAIRY CORPORATION,<br>d/b/a AURORA ORGANIC DAIRY,<br>a Delaware corporation, | |
| | Plaintiff, |
| v. | |
| NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, | |
| | Defendant. |

### RESPONSE OF AURORA DAIRY CORPORATION TO THE MOTION TO REOPEN OF PLAINTIFFS/COUNTER-DEFENDANTS NATIONAL SURETY CORPORATION AND THE AMERICAN INSURANCE COMPANY

Pursuant to the Court's February 8, 2011 Amended Minute Order and D.C. Colo. L. Civ. R. 7.1(c), Aurora Dairy Corporation ("Aurora") responds as follows to the motion to reopen of Plaintiffs/Counter-Defendants National Surety Corporation ("NSC") and The American Insurance Company ("AIC"):

### I.      INTRODUCTION

In light of the recent decision of the Eighth Circuit in the underlying litigation, Aurora does not oppose the reopening of this case. Aurora does, however, believe that this case should not be reopened until the parties have completed a mediation scheduled to commence on March 15, 2011, and Aurora also takes issue with certain of the statements and representations in the motion and memorandum submitted by NSC and AIC.

Moreover, given the Eighth Circuit's decision as well as other developments in the underlying litigation, Aurora questions whether the insurers can continue to deny their duty to defend, consistent with their duties to Aurora as well as under Fed. R. Civ. P. 11. Indeed, the bodily injury allegations contained in Mothershead, et al. v. Aurora, No. 4:07-cv-01701-CAS (E.D. Mo., filed Oct. 4, 2007) ("Mothershead"), the underlying case that NSC and AIC have made a focus of this matter, were recently included in the Master Complaint in the multidistrict litigation. Those allegations, in turn, have recently led Defendant Nationwide Agribusiness Insurance Company ("Nationwide") to finally acknowledge that it has a duty to defend, and they leave no legitimate doubt as to the presence of coverage triggers or the duty to defend.

As such, Aurora does not oppose the reopening of this case at the appropriate juncture, but in the event that the case does need to be reopened, we respectfully suggest that the initial focus should be on the contribution rights of NSC referenced in the instant motion and on what the respective contributions should be of those insurers that have ignored their obligations to date. All of these issues, however, will be addressed at the mediation that will be taking place on March 15-17, 2011, and we remain hopeful that these issues can and will be resolved between the parties without placing additional burdens on this Court.

## II.     RELEVANT PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Since this Court's November 17, 2009 Order, there have been several developments in the underlying litigation that bear upon the motion to reopen filed by NSC and AIC. See disc. infra at 5-9. Those developments are addressed below as they relate to this case and the instant

motion.[1]  See id.  In addition, Aurora addresses below certain statements in the motion of NSC and AIC that are in need of clarification.  See id.

### A. In June Of 2008, Some Of Aurora's Insurers Sought A Declaration That They Have No Duty To Defend Or Indemnify Aurora

In June of 2008, NSC and AIC, along with ACE American Insurance Company of North America ("ACE") and Indemnity Insurance Company of North America ("IICNA"), filed this action for a declaratory judgment, seeking a declaration that they have no duty to defend or indemnify Aurora in the Mothershead action.[2]  See Compl. for Decl. Relief (Dkt. #1) at passim; see also Mot. to Reopen (Dkt. #104) at 5; disc. infra at 5-6 (discussing the underlying litigation, including Mothershead).  Aurora answered the initial Complaint on July 28, 2008 and asserted counterclaims against NSC, AIC, ACE and IICNA for, inter alia, breach of contract and bad faith breach of an insurance contract.  See Aurora's Ans. and Counterclaims (Dkt. #13) ¶¶51-68; see also Aurora's Ans. and First Amend. Counterclaims (Dkt. #52) ¶¶65-82.[3]

---

[1] Given that this case has been administratively closed for more than a year (see Order Administratively Closing Case (Dkt. #103)), Aurora is also including for the Court's reference and convenience a brief summary of the case proceedings to date.  See disc. infra at 3-9.

[2] NSC, ACE and IICNA had initially acknowledged that they owed Aurora a duty to defend, although they contributed nothing to the defense until December of 2008, nearly fourteen (14) months after Mothershead was first filed, and even then, they contributed only a portion of Aurora's defense costs.  See NSC and AIC Ans. First Amend. Counterclaim (Dkt. #57) ¶80; ACE and IICNA Ans. First Amend. Counterclaim (Dkt. #60) ¶64.  While Aurora appreciates the contributions of those insurers, it is not the case that NSC has paid the majority of Aurora's defense costs, as suggested in the instant motion, nor did Aurora's insurers promptly provide a full defense, as they are otherwise required to do.  See Mot. to Reopen at 7.  But see disc. infra at 5.

[3] Additional of Aurora's insurers, namely Nationwide and General Fire & Casualty Company ("GFC"), were subsequently added to the litigation.  See March 17, 2009 Minute Order (Dkt. #51) (granting Aurora's motion for leave to amend and joinder to add GFC as a third-party defendant); Order of Consolidation (Dkt. #73) (consolidating the suit against Nationwide with the instant action).  Both Nationwide and GFC initially refused to provide any defense to Aurora, although Nationwide recently indicated that it would "participate in the defense of Aurora in the Underlying Litigation from November 23, 2010."  See Feb. 9, 2011 Corresp. fr. S. Shkolnick to D. Getman, Ex. A hereto; see also Mot. to Reopen at 8; Nationwide's Ans. and Aff. Defs. ¶¶16-

(continued…)

Specifically, Aurora claimed that because the insurers had already conceded that they had a duty to defend Mothershead, their failure to actually discharge that duty was unreasonable and in bad faith.  See Aurora's Ans. and Counterclaims ¶¶64-66; Aurora's Ans. and First Amend. Counterclaims ¶¶78-80; see also Jan. 14, 2008 Corresp. fr. NSC and AIC to D. Getman, Ex. B hereto ("NSC has determined that it will provide Aurora with a defense in the [Mothershead] action . . ."); Jan. 28, 2008 Corresp. fr. IICNA and ACE to D. Getman, Ex. C hereto (stating that IICNA and ACE "will reimburse Aurora for its reasonable and necessary defense costs incurred in responding to the complaint in the Mothershead Matter").  Indeed, NSC, ACE and IICNA repeatedly affirmed that they would provide Aurora with a defense and have explicitly alleged in this action that their agreement and commitment to defend Aurora has never been withdrawn.[4]  See, e.g., NSC and AIC Ans. (Dkt. #15) ¶¶47-49 (admitting that "on or about January 14, 2008 NSC agreed to defend Aurora in the Mothershead action under a reservation of rights"); ACE and IICNA Ans. (Dkt. #18) ¶48 (admitting that "ACE and IICNA offered to defend Aurora in the Mothershead action under a reservation of rights").  As noted, however, the insurers failed to provide Aurora with any defense for more than a year.  See, e.g., NSC and AIC Ans. ¶66 (admitting that as of August 18, 2008, they had not reimbursed Aurora); ACE and IICNA Ans. ¶66 (same); Scheduling Order (Dkt. #36) p.12 (same).

---

(…continued)
19, Aurora v. Nationwide, Case No. 1:09-cv-00346-PAB-KMT (D. Colo., filed April 3, 2009); Third Party Counterclaim of GFC (Dkt. #66) ¶20.

[4]  The acknowledgment by NSC, ACE and IICNA of their duty to defend was based, inter alia, upon the presence of allegations of bodily injury in Mothershead due to the alleged presence of pesticides, hormones, antibiotics and other chemicals in Aurora's milk.  See Jan. 14, 2008 Corresp. fr. NSC and AIC to D. Getman, Ex. B hereto; Jan. 28, 2008 Corresp. fr. IICNA and ACE to D. Getman, Ex. C hereto.

**B.     NSC, ACE And IICNA Enter Into An Interim Funding Agreement With Aurora**

In December of 2008, more than a year after <u>Mothershead</u> was filed, NSC, ACE and IICNA entered into the Interim Funding Agreement with Aurora, in which those carriers agreed to pay a <u>portion</u> of Aurora's defense costs.[5]  <u>See</u> NSC and AIC Ans. First Amend. Counterclaim ¶80; ACE and IICNA Ans. First Amend. Counterclaim ¶64; <u>see</u> also Mot. to Reopen at 6-7.

More specifically, the Interim Funding Agreement calls for these insurers to pay approximately 50% of the defense costs being incurred by Aurora.  <u>See</u> Aff. of D. West at Ex. A (Interim Funding Agreement).  As specified in the Interim Funding Agreement, NSC, ACE and IICNA agreed to pay a lump sum of approximately half of the defense costs Aurora had already incurred as of August 31, 2008, and further agreed to pay on a going-forward basis approximately 50% of the fees and costs incurred by Aurora.  <u>See id.</u> at II.A.  <u>But see</u> Mot. to Reopen at 6, 8.

**C.     Procedural Developments In The Underlying Litigation**

Aurora is an organic dairy that produces and sells organic milk.  <u>See</u> Compl. for Decl. Relief ¶8.  Since the fall of 2007, Aurora has been named as a defendant in fifteen (15) putative class action lawsuits relating to the sale of its organic milk, including <u>Mothershead</u>.  <u>See</u>, e.g., <u>Mothershead</u> Compl., Ex. D hereto; <u>see also</u> Scheduling Order at 11 (noting that the fact that Aurora has been named in thirteen (13) consumer class actions is undisputed); disc. <u>infra</u> at 6 n.8 (discussing the two (2) additional actions in which Aurora has recently been named).

---

[5]  Nationwide and GFC refused to join the Interim Funding Agreement and have contributed <u>nothing</u> to Aurora's defense. <u>See</u> Mot. to Reopen at 6-7; Aff. of D. West at Ex. A (Interim Funding Agreement).  Moreover, substantial portions of Aurora's defense costs have <u>not</u> been paid by NSC, ACE or IICNA, in spite of the fact that the duty to defend extends to all such costs and not merely a portion thereof.  <u>Compare</u> Aff. of D. West (Dkt. #105) at Ex. A (Interim Funding Agreement), <u>with</u> <u>Blackhawk-Central City Sanitation Dist. v. Am. Guar. & Liab. Ins. Co.</u>, 214 F.3d 1183, 1189 (10th Cir. 2000) ("[I]f the underlying complaint asserts more than one claim, a duty to defend against all claims asserted arises if any one of them is arguably a risk covered by the pertinent policy.")

In February of 2008, Mothershead and the other class actions were transferred by the Judicial Panel on Multidistrict Litigation to the United States District Court for the Eastern District of Missouri for consolidated pretrial proceedings before Judge E. Richard Webber in the matter captioned In re Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litigation, Case No. 4:08-md-1907-ERW ("In re Aurora Dairy").  See Mot. to Reopen at 5. After transfer and consolidation, Aurora and the other defendants moved to dismiss, and on June 3, 2009, Judge Webber dismissed the claims against Aurora and its customers in their entirety and with prejudice.[6]  See In re Aurora Dairy Corp., 2009 WL 1576928 (E.D. Mo. 2009) ("Aurora I"), Ex. E hereto.

### 1. The Plaintiffs In The Underlying Litigation Appeal The District Court's Dismissal To The Eighth Circuit, Which Affirms In Part And Reverses In Part

Plaintiffs in the underlying litigation subsequently appealed Judge Webber's decision to the Eighth Circuit in late 2009.  See October 13, 2009 Aurora Status Report (Dkt. #92) ¶¶4-5. On September 15, 2010, the Eighth Circuit issued a decision which largely affirmed Judge Webber's dismissal of the underlying claims and held that the majority of the Plaintiffs' claims were preempted by the Organic Foods Production Act and the National Organic Program.  See In re Aurora Dairy Corp., 621 F.3d 781, 797 (8th Cir. 2010) ("Aurora II") ("To the extent the class plaintiffs, relying on state consumer protection or tort law, seek to set aside Aurora's certification, or seek damages from any party for Aurora's milk being labeled as organic in accordance with the certification, we hold that state law conflicts with federal law and should be preempted.").

---

[6]  It was shortly after the dismissal of the underlying litigation that this Court administratively closed the instant matter, noting that if the Plaintiffs in the underlying litigation were not successful on appeal, this action would likely be rendered moot.  See Order Administratively Closing Case.

The Eighth Circuit did reverse in part, however, holding that claims that do not "seek to set aside Aurora's certification, or seek damages from any party for Aurora's milk being labeled as organic in accordance with the certification" would survive preemption, at least at this early stage of the litigation.  See Aurora II, 621 F.3d at 797; id. at 797-99.  For example, the Eighth Circuit held that claims regarding whether the milk was hormone or antibiotic free may be, at the pleading stage, unrelated to Aurora's certification and sufficient to state a claim.[7]  See id. at 800. Accordingly, the Eighth Circuit remanded the case so that the claims not preempted could be addressed.  See id.

### 2. Upon Remand, Plaintiffs In The Underlying Litigation File A Master Complaint And The Parties Subsequently Agree To Participate In Mediation

Upon remand and following an initial appearance before the district court in the multidistrict litigation, it was agreed that the plaintiffs in the underlying litigation (including Mothershead) should be allowed to file an amended, master pleading in the multidistrict litigation.  See, e.g., Nov. 2, 2010 Courtroom Min. Sheet, In re Aurora Dairy, Ex. F hereto. Accordingly, on November 23, 2010, Plaintiffs filed a Master Complaint.  See Master Compl., Ex. G hereto, at passim.[8]  The Master Complaint was intended to consolidate the claims in all of

---

[7] As noted above, the alleged presence in Aurora's milk of antibiotics and pesticides, among other things, was the basis for the bodily injury allegations originally included in Mothershead and now contained in the Master Complaint in the underlying litigation, and notably, those types of claims are the focus of the claims that the Eighth Circuit remanded to the district court in the multidistrict litigation  See disc. supra at 4 n.4.

[8] Plaintiffs also filed two new putative class action complaints against Aurora and some of its retailers.  See Benya, et al. v. Aurora Dairy Corp., et al., Case No. 3:10-cv-05292-EMC (N.D. Cal., filed Nov. 22, 2010) ("Benya"); Leigh, et al. v. Aurora Dairy Corp., et al., Case No. 4:10-cv-02178 (E.D. Mo., filed Nov. 22, 2010) ("Leigh").  Express allegations of bodily injury and exposure to pesticides and antibiotics were also made in Benya and Leigh.  See, e.g., Benya Compl. ¶36 ("Aurora's actual practices exposed consumers to antibiotics and pesticides.  One or more Plaintiffs complain of bodily injury or the potential for bodily injury as the result of Aurora's wrongdoing."); Leigh Compl. ¶41 ("Aurora's actual practices exposed consumers to antibiotics and pesticides.").

the underlying litigation that were potentially remaining in light of the Eighth Circuit's preemption rulings.[9]  See, e.g., id.

Like the original complaints in Mothershead and the other underlying actions, the Master Complaint in the multidistrict litigation continues to allege that Aurora sold organic milk that contained contaminants and other non-organic compounds, which allegedly caused bodily injury to Plaintiffs and members of the proposed classes by exposing them to pesticides, herbicides and other harmful chemicals and substances.  Compare, e.g., Master Compl., Ex. G hereto, ¶¶46-48, 57, 66, 74, 81, 88, 93, 101, with, e.g., Mothershead Compl., Ex. D hereto, ¶¶22, 43, 55-56, 73, 90.  Specifically, the Master Complaint alleges, inter alia, that:

- "Aurora knew that consumers purchased the Milk Products in order to prevent their own and their families' exposure to antibiotics and pesticides, both of which could lead to bodily injury.  Despite its representations, on information and belief, Aurora's actual practices exposed consumers to antibiotics and pesticides.  One or more Plaintiffs complain of bodily injury or the potential for bodily injury as the result of Aurora's wrongdoing."  See Master Compl. ¶57 (emphasis supplied);

- Aurora's milk and milk products came from "dairy cows that had been subject to antibiotic treatment and/or ate non-organic feed."  See id. ¶48 (emphasis supplied); and

- Aurora specifically marketed the health benefits of drinking milk from pastured cows knowing that such milk "can contain up to five times more conjugated lineolic acid, an anti-oxidant shown to reduce cancer risks, as well as higher levels of beta-carotene, vitamin A, vitamin E, and omega-3 fatty acid than does milk from grain-fed cows."  See id. ¶¶46-47.

Based upon these allegations, Plaintiffs have asserted a variety of claims, including causes of action for negligence, negligent misrepresentation and negligence per se.  See, e.g., id. ¶¶155-68; Mothershead Compl., Ex. D hereto, ¶¶102-08.

---

[9]  Due to some inadvertent errors in the Master Complaint that are not germane here, Plaintiffs in the underlying litigation were forced to file an Amended Master Complaint.  See Master Compl. ¶17.  For the sake of simplicity, however, the Amended Master Complaint is referred to herein as the "Master Complaint."  See disc. infra at 7-13.

After Plaintiffs filed the Master Complaint, the parties in the underlying litigation agreed to participate in mediation.  See Dec. 7, 2010 Docket Text Order, In re Aurora Dairy, Ex. H hereto.  NSC, AIC, ACE, IICNA, Nationwide and GFC will also be participating in the mediation in an effort to reach a global resolution of both the underlying litigation as well as the claims in this case.  The parties subsequently agreed upon a mediator and will be commencing mediation in mid-March.  See Jan. 10, 2011 Docket Text Order, In re Aurora Dairy, Ex. I hereto (noting that the mediation will be completed by March 17, 2011); see also Feb. 8, 2011 Not. of Appointment of Neutral, In re Aurora Dairy, Ex. J hereto (appointing Jonathan Marks as mediator).

### D. After The Eighth Circuit's Decision, NSC And AIC Seek To Reopen The Instant Case

Shortly after the issuance of the Eighth Circuit's decision, counsel for NSC and AIC contacted counsel for Aurora and indicated that their clients wished to reopen this case.  See Mot. to Reopen at 4.  Given the upcoming mediation and the intention of all of the parties to seek an amicable resolution of the underlying litigation as well as this case, Aurora suggested that perhaps it would make sense to defer the reopening of this case until after the mediation.  See id.  NSC and AIC, however, persisted, and the instant motion was filed on February 4, 2011.

### III.   DISCUSSION

It is likely that the upcoming mediation will obviate the need for reopening this case.  See disc. infra at 10-11.  Moreover, the bodily injury allegations now contained in the Master Complaint in the underlying litigation leave no doubt as to the insurers' duty to defend, although Aurora acknowledges that the contribution rights of NSC, ACE and IICNA may need to be addressed unless the parties can also reach a resolution of those issues in the upcoming mediation.  See id. at 11-13.  Thus, the need to reopen this case at this juncture is not altogether clear.  See id. at 10-13.

**A.     Given The Pending Mediation, Good Cause Does
Not Exist At This Time For Reopening The Case**

As noted above, the parties to the underlying litigation (including Mothershead) and the parties to this case (including NSC and AIC) will be participating in a three-day mediation March 15 through March 17, 2011 in an attempt to reach a global resolution of all issues in both the underlying litigation and in this case.  See disc. supra at 7-9.  As such, we believe that NSC's and AIC's motion is somewhat premature.

The results of the upcoming mediation will significantly impact this action.  If the parties are successful in reaching a global resolution, this case will be mooted.  See Order Administratively Closing Case.  And even if a global resolution is not reached, any partial resolution or narrowing of the issues will undoubtedly inform this case.[10]  Accordingly, it is not clear that it makes sense for the parties to waste time and money -- not to mention this Court's resources -- engaging in discovery and motion practice that may well be rendered unnecessary or irrelevant.  See, e.g., Oct. 27, 2009 Status Report of Aurora (Dkt. #96).[11]

---

[10]  To that end, Aurora would be happy to provide this Court with a short supplemental submission after the completion of mediation in order to further advise the Court of the status of this case.

[11]  In their motion, NSC and AIC assert that upon being reopened, this case "is ripe for summary judgment."  See Mot. to Reopen at 9.  In so doing, NSC and AIC are apparently asking the Court to reconsider an issue that has already been decided.  See Scheduling Order at 14-15.  Earlier in the case, the insurers proposed bifurcation of the issues and no discovery until after certain issues had been decided, but the Court declined to take that approach, noting that Aurora should be allowed discovery on its counterclaims and defenses.  See id. at 13 ("Although Plaintiffs do not believe that this is likely to be a discovery-intensive case, Aurora reserves its right to take full discovery in support of its counterclaims and defenses.").  This Court, in turn, entered a Scheduling Order that contemplated a discovery period prior to any dispositive motions.  See id. at 14-15 (setting a deadline for discovery of August 1, 2009 and for dispositive motions of September 1, 2009).  Moreover, Aurora had previously served discovery on NSC, AIC, ACE, IICNA and GFC, which the parties agreed to hold in abeyance during settlement discussions, but to which Aurora is entitled to responses if the case is reopened.  See Aurora's First Set of Document Requests, Ex. K hereto.  Should this case be reopened, however, Aurora believes that

(continued…)

Moreover, NSC and AIC will not suffer any prejudice by waiting a few weeks to have this case reopened, if it becomes necessary to reopen the case at all. The insurers reserved their rights under the Interim Funding Agreement, and therefore, neither NSC nor AIC will waive any arguments or rights by awaiting completion of the already-scheduled mediation. See Mot. to Reopen at 6-7; Aff. of D. West at Ex. A (Interim Funding Agreement). Although it is true that NSC is contributing to a portion of Aurora's defense under the Interim Funding Agreement, that agreement does not provide Aurora with the full coverage to which it is entitled under its policies and for which it contracted. See Aff. of D. West at Ex. A (Interim Funding Agreement). In fact, the Interim Funding Agreement only provides Aurora with approximately half of the coverage to which it is entitled, meaning that any prejudice caused by a short delay would actually be borne by Aurora. See id.; see also Hecla Mining Co. v. New Hampshire Ins. Co., 811 P.2d 1083, 1090 (Colo. 1991) (noting that when an insured purchases insurance, it has a reasonable expectation of a defense). Nevertheless, Aurora believes that it would be prudent to conserve the resources of the parties and the Court by waiting until the mediation has occurred.[12]

### B. Even If This Motion Were Not Premature, The Master Complaint Appears To Moot Any Dispute Between Aurora And The Insurers

Furthermore, even if the present motion were not otherwise premature, the allegations in the Master Complaint clearly trigger the insurers' duty to defend and thereby moot whatever question there may have been with regard to coverage of Mothershead. See disc. infra at 11-13; disc. supra at 7-8. As noted, the Master Complaint consolidates all of the claims potentially

---

(…continued)
the deadlines set in the Scheduling Order, including the period for discovery, should be reset. See Scheduling Order at 14-15.

[12] Aurora acknowledges that it stated in its October 27, 2009 Status Report that a reversal by the Eighth Circuit would represent good cause to reopen this case. See Oct. 27, 2009 Status Report of Aurora. For the reasons stated above, however, Aurora believes that the current posture of the underlying litigation weighs in favor of allowing this case to remain closed while the parties complete mediation. See disc. supra at 10-11.

- 11 -

remaining in the underlying litigation, including Mothershead, following the Eighth Circuit's decision.  See Master Compl., Ex. G hereto, at passim; see also, e.g., Manual for Complex Litigation (Fourth) §20.132 n.668.  The Master Complaint, however, contains explicit allegations of bodily injury by the Plaintiffs in the underlying litigation:

> Aurora knew that consumers purchased the Milk Products in order to prevent their own and their families' exposure to antibiotics and pesticides, both of which could lead to bodily injury. . . . Aurora's actual practices exposed consumers to antibiotics and pesticides.  One or more Plaintiffs complain of bodily injury or the potential for bodily injury as the result of Aurora's wrongdoing.

Master Compl., Ex. G hereto, ¶57; see also id. ¶¶46-48, 57, 66, 74, 81, 88, 93, 101; disc. supra at 7-8.  Accord, e.g., Compl. for Decl. Relief ¶¶17, 24, 36 (defining "bodily injury" under the ACE, IICNA, NSC and AIC policies as "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time[]"); Third Party Counterclaim of GFC ¶15 (defining "bodily injury" as "all liability and defense claims that first occur during the policy period and arise from human physical damage, sickness or disease . . .and the resulting emotional or mental distress or death from any of these conditions").  Indeed, the Eighth Circuit held that allegations regarding whether Aurora's milk was hormone or antibiotic free may be sufficient to state a claim.  See Aurora II, 621 F.3d at 800.

      Given that the duty to defend is broad and arises whenever any of the allegations in an underlying complaint, liberally construed, potentially or arguably fall within the scope of the implicated policy, the insurers' duty to defend in this case is now all the more clear.  See, e.g., Cyprus Amax Minerals Co. v. Lexington Ins. Co., 74 P.3d 294, 297 (Colo. 2003) (holding that the complaint should be read broadly and liberally in order "to cast a broad net in favor of coverage . . . with a view toward affording the greatest possible protection to the insured"); Bainbridge, Inc. v. Travelers Cas. Co., 159 P.3d 748, 753 (Colo. Ct. App. 2006) ("An insurer is obligated to defend its insured against legal proceedings if the underlying complaint contains

allegations that, if sustained, would state a claim that is potentially or arguably within the policy coverage.").[13]  Thus, Aurora questions what issues the insurers still believe this Court should address, although Aurora again recognizes that the issue of contribution as between the insurers may need to be addressed if it cannot be resolved in mediation.  See disc. supra at 1-2.

## IV.    CONCLUSION

For the reasons stated herein, Aurora respectfully requests that this Court not reopen this case until the mediation between the parties has been completed.  Aurora further requests any such other relief that this Court deems appropriate.

Date:  February 25, 2011                    Respectfully submitted,

/s/ Mark S. Mester
One of the Attorneys for Defendant/Counterclaim-Plaintiff and Third-Party Counterclaim Defendant Aurora Dairy Corporation

---

[13]  In their motion, NSC and AIC place reliance upon the decision in Lopez v. American Family Mutual Ins. Co., 148 P.3d 438 (Colo. Ct. App. 2006).  See Mot. to Reopen at 9.  This reliance, however, is ironic, since Lopez itself relies on the decision of the Colorado Supreme Court in Hecla, and Hecla makes plain that the insurers bear a heavy burden and that the proper course would have been for them to provide a defense and then seek declaratory relief as appropriate after the resolution of the underlying litigation:

> An insurer seeking to avoid its duty to defend an insured bears a heavy burden.
>
> . . .
>
> The appropriate course of action for an insurer who believes that it is under no obligation to defend, is to provide a defense to the insured under a reservation of its rights to seek reimbursement should the facts at trial prove that the incident resulting in liability was not covered by the policy, or to file a declaratory judgment action after the underlying case has been adjudicated.

Hecla Mining Co., 811 P.2d at 1089 (emphasis supplied).

- 13 -

LATHAM & WATKINS LLP
Mark S. Mester
Livia M. Kiser
233 South Wacker Drive, Suite 5800
Chicago, Illinois  60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
Email:   mark.mester@lw.com
            livia.kiser@lw.com

SANDER INGEBRETSEN & WAKE, PC
Daniel F. Wake
1660 17th Street, Suite 450
Denver, Colorado 80202
Telephone:  (303) 285-5544
Facsimile:  (303) 285-5301
Email:  dwake@siwlegal.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 25, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Bethany K. Culp
bculp@hinshawlaw.com, dhaugen@hinshawlaw.com

Shushanie E. Kindseth
skindseth@hinshawlaw.com, llivingston@hinshawlaw.com

Garrick L. Gallagher
Garrick.Gallagher@SandersParks.com

Debora L. Verdier
Debora.Verdier@SandersParks.com

Troy Olsen
tolsen@rothgerber.com

Daniel F. Wake
dwake@siwlegal.com

Brett Norman Huff
bhuff@huffandleslie.com

S. Kato Crews
kcrews@rothgerber.com

Brad E. Brewer
bbrewer@zelle.com

    /s/ Mark S. Mester
    LATHAM & WATKINS LLP
    Mark S. Mester
    Livia M. Kiser
    233 South Wacker Drive, Suite 5800
    Chicago, Illinois  60606
    Telephone: (312) 876-7700
    Facsimile: (312) 993-9767
    Email:  mark.mester@lw.com
           livia.kiser@lw.com