# EXHIBIT A



# Nationwide® Agribusiness

*On Your Side℠*



Certified Mail
Return Receipt Requested

February 9, 2011

Aurora Dairy Corporation
Attn: Donna Getman
1401 Walnut St Ste 500
Boulder CO 80302

RE: *In re Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litigation*
Claim: 253766

Dear Ms. Getman:

On behalf of Nationwide Agribusiness Insurance Co. ("Nationwide"), I am writing to you regarding the Multi-District Litigation captioned *In re Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litigation* currently pending in United States District Court, Eastern District of Missouri, Eastern Division, Civil Action No. 4:08-md-01907-ERW (the "Underlying Litigation). As you are aware, Nationwide previously denied any obligation to defend and indemnify Aurora in connection with nineteen separate class action lawsuit complaints filed against Aurora in numerous states seeking economic damages arising from Aurora's production and sale of organic milk that was allegedly not produced in accordance with various federal and state organic standards and USDA regulations.

It has come to our attention that on November 23, 2010, twenty-six plaintiffs filed an Amended Master Complaint ("Master Complaint") in the Underlying Litigation against Aurora Dairy Corporation d/b/a Aurora Organic Dairy ("Aurora") and other named defendants. On November 24, 2010, Notice was served in the Underlying Litigation of a potential tag-along action entitled *Diane Benya and Debbie Millikan v. Aurora Dairy Corp. d/b/a Aurora Organic Dairy, et al.*, Case No. 10-CV-5292-EMC, United States District Court for the Northern District of California (the "*Benya* Complaint"). The factual allegations and Counts 1 through 7 of the *Benya* Complaint are essentially identical to the factual allegations and Counts 1 through 7 of the Master Complaint. On December 17, 2010, the United States Judicial Panel on Multidistrict Litigation entered a Conditional Transfer Order transferring the *Benya* lawsuit to the Eastern District of Missouri to the Honorable E. Richard Webber, for consolidated pretrial proceedings in the Underlying Litigation. Because the *Benya* Complaint has been consolidated with the Underlying Litigation, all references below to the Master Complaint and the Underlying Litigation include the claims asserted against Aurora in the *Benya* Complaint.

Based upon the totality of the allegations and claims asserted against Aurora in the 135-page Master Complaint and the 75-page *Benya* Complaint, the plaintiffs are seeking recovery for economic harm arising out of Aurora's alleged false advertising and deceptive trade practices regarding its milk products. For the reasons set forth below, such economic harm does not fall within the coverage provided under the policies Nationwide issued to Aurora. However, because of the allegation in paragraph 57 of the Master Complaint that "[o]ne or more Plaintiffs complain of bodily injury,"[1] Nationwide agrees to participate in the defense of Aurora in the Underlying Litigation from November 23, 2010, the date the Master Complaint was filed, subject to and conditioned upon a complete reservation of Nationwide's rights as stated below.

Nationwide reserves its right to withdraw from the defense in the event it is determined that no coverage exists for any of the claims asserted against Aurora in the Underlying Litigation. By agreeing to participate in Aurora's defense in the Underlying Litigation, Nationwide will pay the reasonable hourly rates Nationwide typically pays to defense firms in the federal district in which the Underlying Litigation is pending and Nationwide will share in the payment of Aurora's defense expenses from November 23, 2010 with any other insurers who have agreed to defend Aurora in the Underlying Litigation.

### The Allegations Against Aurora

On November 23, 2010, the plaintiffs filed an Amended Master Complaint in which they assert fourteen causes of action against Aurora: Violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 *et. seq.* (COUNT 1); Violation of State Consumer Protection Laws (COUNT 2); Breach of Express Warranty (COUNT 3); Breach of Implied Warranty of Merchantability (COUNT 4); Negligence *Per Se* (COUNT 5); Negligent Misrepresentation (COUNT 6); Unjust Enrichment (COUNT 7); counts against Aurora with respect to Aurora's High Meadow Label: Violation of the Colorado Consumer Protection Act (COUNT 8); Violation of State Consumer Protection Laws (COUNT 9); Breach of Express Warranty (COUNT 10); Breach of Implied Warranty of Merchantability (COUNT 11); Negligence *Per Se* (COUNT 12); Negligent Misrepresentation (COUNT 13); and Unjust Enrichment (COUNT 14).

In their Master Complaint, plaintiffs allege that Aurora made numerous representations and warranties regarding the manner in which its milk products were produced and that Aurora's representations and warranties were false and deceptive. According to paragraph 3 of the Master Complaint, Aurora's alleged misrepresentations and omissions were first discovered by the United States Department of Agriculture ("USDA") and disclosed by the USDA in 2007. Plaintiffs allege that in 2007, the USDA disclosed that Aurora failed to implement or maintain the production practices that Aurora touted and advertised, for example, Aurora's providing the dairy cows that produced the milk for its milk products with appropriate access to pasture, Aurora's insuring that the dairy cows that produced Aurora's milk were fed only an organic diet, and Aurora's insuring that the dairy cows that produced Aurora's milk were not given antibiotics or synthetic growth hormones. (Master Complaint ¶ 3) Plaintiffs claim that they and other members of the classes paid more for Aurora's milk products than they would have paid for conventional milk. (Master Complaint, ¶ 1). Plaintiffs allege that they did not and could not

---

[1] The identical allegation is asserted in paragraph 36 of the *Benya* Complaint.

have learned of Aurora's misrepresentations and deceptive conduct until on or about March 7, 2007, when the USDA disclosed that Aurora had failed to comply with federal law regarding production of milk products labeled as organic. (Master Complaint, ¶ 49) Plaintiffs allege that Aurora marketed and sold its milk products in a manner designed to mislead purchasers – including plaintiffs and the members of the putative classes – by misrepresenting the manner in which Aurora produced its milk products. (Master Complaint, ¶ 56) Plaintiffs further allege that Aurora has acted fraudulently, willfully, knowingly, and intentionally with respect to its injury-causing conduct (Master Complaint, ¶ 36), and that Aurora's violations of the law were willful (Master Complaint, ¶ 50).

In their Master Complaint, the only injury plaintiffs claim they suffered is that plaintiffs paid premium prices for milk products. (Master Complaint, ¶ 105) Plaintiffs allege that had they known the truth, they would not have purchased the milk products and, therefore, they are entitled to the maximum refund allowed by state law. (Master Complaint, ¶ 107) Plaintiffs further allege that as a result of Aurora's misrepresentations, plaintiffs and the other members of the classes did not receive the benefit of their bargain and are entitled to damages. (Master Complaint, ¶¶ 107, 138)

In their prayer for relief, the plaintiffs seek the following: Certification of the action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure and appointment of the named plaintiffs as Class Representatives and their counsel of record as Class Counsel; recovery of actual damages, statutory damages, punitive or treble damages; prejudgment and post-judgment interest; equitable relief in the form of restitution to restore monies received by defendants as a result of their alleged unfair, unlawful and/or deceptive conduct; and attorneys' fees and costs.

### Nationwide's Coverage Position and Reservation of Rights

Nationwide issued Commercial General Liability ("CGL") policies CPP125403A and CPP125403B to Aurora Dairy Corporation as the Named Insured for the policy period from June 1, 2007 to June 1, 2008. The Insuring Agreement of the CGL coverage form states in the relevant part:

> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 1.  Insuring Agreement
>
>     a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking these damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

The Insuring Agreement further states that the insurance provided for "bodily injury" applies only if the "bodily injury" is caused by an "occurrence" and the "bodily injury" occurs during the policy period. The Nationwide Policies define "bodily injury" and "occurrence" in Section V – DEFINITIONS as follows:

> 3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

In paragraph 57 of the Master Complaint, the plaintiffs allege:

> Aurora misrepresented and omitted material facts regarding the way in which its Milk Products were produced because Aurora knew that consumers purchased the Milk Products in order to present their own and their families' exposure to antibiotics and pesticides, both of which could lead to bodily injury. Despite its representations, on information and belief, Aurora's actual practices exposed consumers to antibiotics and pesticides. One or more Plaintiffs complain of bodily injury or the potential for bodily injury as the result of Aurora's wrongdoing.

(Master Complaint, ¶ 57) This is the only allegation in the 135-page Master Complaint of alleged "bodily injury." Based on the lack of factual allegations in the Master Complaint, it cannot be determined at this time whether any plaintiffs have suffered "bodily injury" that is covered under the Nationwide Policies, including but not necessarily limited to the nature and extent of any such alleged "bodily injury," the number of plaintiffs who suffered "bodily injury," whether any plaintiff seeks damages because of "bodily injury, or whether any bodily injury occurred during the policy period.

The Nationwide Policies also provide coverage for "personal and advertising injury" under Coverage B Personal and Advertising Injury Liability ("Personal and Advertising Injury Coverage"). The Insuring Agreement of the coverage provided under the Nationwide Policies for "personal and advertising injury" states that Nationwide "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." The Nationwide Policies define "personal and advertising injury" as follows:

> 14. "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:
>
>     a. False arrest, detention or imprisonment;
>
>     b. Malicious prosecution;
>
>     c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
>
>     d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
>     e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
>
>     f. The use of another's advertising idea in your "advertisement"; or
>
>     g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

Based upon the allegations in the Master Complaint, there is no potential for "personal and advertising injury" coverage under the Nationwide Policies for the claims asserted against Aurora arising out of Aurora's alleged false and deceptive representations in its advertising of its milk products. False or deceptive advertising is not a covered offense listed in the Nationwide Policies' definition of "personal and advertising injury." In addition, the following exclusion in the Nationwide Policies excludes "personal and advertising injury" coverage for the claims arising out of Aurora's alleged false and deceptive representations and omissions:

**2.   Exclusions**

This insurance does not apply to:

\* \* \*

**g.   Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement."

Policy CPP125403A also contains the following endorsement:

*EXCLUSION – DESIGNATED WORK*

*This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*
*PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART*

*SCHEDULE*

*Description of your work:*
*ALL OPERATIONS RELATIVE TO DAIRY FARMING*

*(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)*
*This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" sown in the Schedule.*

This endorsement excludes coverage for the claims brought in the Master Complaint because the allegations seek damages arising from "operations relative to dairy farming". Therefore, there would be no potential for coverage under Policy CPP125403A.

Based upon the allegation in paragraph 57 of the Master Complaint, Nationwide will participate in the defense of Aurora in the Underlying Litigation from November 23, 2010, the date the Master Complaint was filed, subject to and conditioned upon a complete reservation of Nationwide's rights. Nationwide expressly reserves its rights to limit or disclaim coverage for indemnity on the following grounds:

(1)   Whether and to what extent Aurora is legally obligated to pay damages because of "bodily injury" that occurred during the Nationwide policy period;

(2) Whether the alleged "bodily injury," if any, was caused by an "occurrence" as that term is used in the Nationwide Policies;

(3) Whether and to what extent the following exclusion in Section I – Coverages, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, applies to limit or bar coverage for this matter:

    2. Exclusions

    This insurance does not apply to:

    a. Expected or intended injury

    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

(4) Whether and to what extent the following exclusion in Section I – Coverages, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, applies to limit or bar coverage for this matter.

    o. Personal and Advertising Injury

    "Bodily injury" arising out of "personal and advertising injury."

(5) Whether and to what extent the following exclusion under COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, applies to limit or bar coverage for this matter.

    2. Exclusions

    This insurance does not apply to:

    b. Material published with knowledge of falsity

    "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of falsity.

(6) Whether and to what extent the following exclusion under COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, applies to limit or bar coverage for this matter.

    c. Material published prior to policy period

    "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

(7) Whether the plaintiffs' claim for punitive or treble damages is insurable as a matter of law and/or public policy.

(8) Whether and to what extent the monetary relief plaintiffs seek constitutes damages because of "bodily injury" as that term is used in the Nationwide Policies. Equitable relief, including unjust enrichment, restitution or disgorgement of wrongfully acquired profits are not damages covered under the Nationwide policies.

(9) Whether the "Exclusion – All Hazards in Connection with Designated Premises" applies as an additional bar to coverage under in Policy CPP125403A.

The specific grounds listed above upon which Nationwide is reserving its rights should not be regarded as exhaustive. Nationwide does not waive any other rights under the Nationwide Policies, at law or in equity. As the facts and allegations of the Underlying Litigation are developed, additional reservations may be required or a disclaimer of all coverage may be appropriate, and Nationwide reserves the right to apply all policy provisions and issue additional reservations of rights or disclaim coverage as appropriate.

In the event it is later determined that there is no coverage under the Nationwide Policies for the claims alleged against Aurora in the Underlying Litigation, Nationwide reserves its right to seek reimbursement of the defense expenses it paid in connection with the defense of Aurora in the Underlying Litigation.

By agreeing to participate in the defense of the Underlying Litigation, Nationwide does not waive its rights and expressly reserves all rights, claims and defenses available to it under the terms, conditions, and exclusions of the Nationwide Policies, the common law, and/or any applicable statute. This letter is based upon information currently made available to us. If you believe our information is incomplete or inaccurate or if you have other information that you believe may bear upon the question of insurance coverage for this matter, please provide us with the additional information. If you disagree with our position, please explain to us the area of disagreement and the basis for your position. Neither this letter nor any of our prior communications shall be deemed a waiver of any of Nationwide's rights available under the Nationwide Policies or at law.

If you have any questions or would like to discuss the claim or this reservation of rights letter, please feel free to contact me.

Sincerely yours,

Stuart Shkolnick
Commercial Claims Consultant
Nationwide Agribusiness Insurance Company
1100 Locust St Dept D1-4W-3010
Des Moines IA 50391-3010
(515) 508-3425
Fax (800) 842-1482

cc: Premiere Insurance
PO Box 6
Twin Falls ID 83303-0006