# EXHIBIT B



Fireman's Fund Insurance Companies
11475 GREAT OAKS WAY
SUITE 200
ALPHARETTA, GA 30022
Phone 678-393-4000 Fax 678-393-4001
www.firemansfund.com

January 14, 2008

**CERTIFIED LETTER – RETURN RECEIPT REQUESTED**

Donna Getman
Aurora Organic Dairy Corporation
6820 Highway 66
Longmont, CO 80501

| | | |
|---|---|---|
| Re: | Insured: | Aurora Organic Dairy |
| | Claimant: | Class |
| | Claim No.: | 00507420720 |
| | Issuing Companies: | National Surety Corporation |
| | | The American Insurance Company |

Dear Ms. Getman:

As you are aware, I am the claim representative who has been assigned by National Surety Corporation ("NSC") and The American Insurance Company ("AIC") to review the litigation that has been brought against Aurora Dairy Corporation ("Aurora") by individuals seeking relief, on behalf of themselves and similarly situated others, based on Aurora's representations that the milk it processed and sold to various retail outlets was "organic". NSC and AIC have been advised of 13 actions brought against Aurora seeking certification of statewide and nationwide classes of individuals claiming to have sustained an economic loss because they paid a higher price for the milk produced by Aurora based on the representation that it was organic. It is alleged that because of the false representation that the milk was organic Aurora obtained more revenue for the milk than it would have obtained for non-organic milk. The Plaintiffs in the pending class actions allege that Aurora is able to charge lower prices for its "organic" milk because it does not comply with the certification requirements established by the USDA.

Following is a list of the Complaints that NSC and AIC have reviewed for coverage:

A company of Allianz (ⅲ)

Page 2

| CASE NAME | CASE NO. | VENUE | DATE FILED |
|---|---|---|---|
| Kristine Mothershead and Leonie Lloyd v. Aurora Dairy Corporation d/b/a Aurora Organic Dairy | 4:07-cv-01701 | U.S.D.C. for the Eastern District of Missouri | October 4, 2007 |
| Maya Fiallos v. Aurora Dairy Corporation d/b/a Aurora Organic Dairy | 07-22748 | U.S.D.C. for the Southern District of Florida | October 17, 2007 |
| Rebecca and Fernando Freyre v. Aurora Dairy Corporation | 1:07-cv-02183. | U.S.D.C. for the District of Colorado | October 17, 2007 |
| Mona Still, et al. v. Aurora Dairy Corporation, d/b/a Aurora Organic Dairy, | 1:07-cv-02188-WDM | U.S.D.C., District of Colorado | October 18, 2007 |
| Brenda Gallardo v. Aurora Dairy Corporation d/b/a Aurora Organic Dairy | CO7-05331 | U.S.D.C. Northern District of California | October 18, 2007 |
| Hillary White and Lynn Michalson v. Aurora Dairy Corp. d/b/a Aurora Organic Dairy | 07 CIV 9418 | U.S.D.C., Southern District of New York | October 19, 2007 |
| Ilsa Lee Kaye v. Aurora Organic Dairy | 2:07-cv-4425 | U.S.D.C. for the Eastern District of New York | October 23, 2007 |
| Elizabeth Cockrell v. Aurora Dairy Corporation d/b/a Aurora Organic Dairy | 07-CV-02285 | U.S.D.C. for the District of Colorado | October 31, 2007 |

Page 3

| Nicolle DiSimone v. Aurora Dairy Corporation d/b/a Aurora Organic Dairy, Case Vander Eyk, Jr. d/b/a Case Vander Eyk, Jr. Dairy, Quality Assurance International, Inc. a/k/a QAI and DOES 1-50 | BC379475 | Superior Court of the State of California for the County of Los Angeles | October 31, 2007 |
|---|---|---|---|
| Jim Snell, et al. v. Aurora Dairy Corporation, d/b/a Aurora Organic Dairy, Wild Oats Market, Inc., Costco Wholesale Corporation, Safeway, Inc. | 1:07-cv-02449-MSK | U.S.D.C. for the District of Colorado | November 23, 2007 |
| Patrick and Caryn Hudspeth v. Aurora Dairy Corp. d/b/a Aurora Organic Dairy and Target Corp. | Unknown | U.S.D.C. for the District of Minnesota | December 4, 2007 |
| Margot A. West and Richard E. Ehly v. Aurora Dairy Corp. | 1:07-cv-2625-JLK | U.S.D.C., District of Colorado | December 18, 2007 |

Please advise me if there are other suits naming Aurora as a defendant that the insured believes have been or should have been tendered to the Company.

Through its dairy processing business, Aurora supplies milk to retailers. In the pending actions it is alleged that this milk has been certified as "organic" despite the fact that it does not meet the requisite criteria. The lawsuits generally allege that Aurora engaged in "consumer fraud, negligence, and unjust enrichment" by failing to adhere to USDA organic standards while selling its milk under the organic label.

It is AIC and NSC's understanding that Aurora processes the milk in its plant in Platteville, Colorado. The suits allege that Aurora sells the milk it processes to retailers who re-label the milk as their own brand. The Plaintiffs in the pending class actions allege that Aurora is able to charge lower prices for its "organic" milk because it does not comply with the certification requirements. The Plaintiffs in the pending class actions also claim that Aurora has been "unjustly enriched".

Page 4

Based on the information provided to date, NSC has determined that it will provide Aurora with a defense in the action entitled: <u>Kristine Mothershead and Leonie Lloyd v. Aurora Dairy Corporation, d/b/a/ Aurora Organic Dairy.</u> NSC will reimburse Aurora for the reasonable and necessary defense costs incurred in responding to the Complaint filed in the <u>Mothershead</u> action. NSC reserves the right to deny coverage; withdraw from the defense; and recover back the defense costs it incurs in defending the Mothershead action, if it is determined there is no coverage. NSC reserves the right to file a declaratory judgment action seeking a declaration that it has no duty to defend Aurora in the Mothershead action.

## The Missouri Action

The Missouri action, pending in the United States District Court for the Eastern District of Missouri, is captioned: <u>Kristine Mothershead and Leonie Lloyd v. Aurora Dairy Corporation, d/b/a/ Aurora Organic Dairy.</u>

In the Missouri action, it is alleged that Aurora committed unfair and deceptive practices and was unjustly enriched by marketing and selling milk certified to be organic, at prices much higher than non-organic milk, when it knew or should have known that its milk did not meet the standards of organic certification. The Plaintiffs in the Missouri action are seeking relief under the following Counts:

- Count I – Unjust Enrichment;

- Count II – Violations of Mo.R.S. 407.010 *et seq*; and

- Count III – Negligence – On Behalf of a Class of Missouri Consumers.

Under Count I for Unjust Enrichment the proposed class is described as:
All persons who, in the United States, since January 1, 2003, purchased milk which was produced by Aurora and contained, anywhere on the carton or container, the word "organic."

Under Count II, based on violations of Mo.R.S. 407.010 the Plaintiff requests certification of the following class:
All Missouri residents who, since 2003, purchased milk which was produced by Aurora and contained, anywhere on the carton or container, the word "organic."

In support of this Count of the Complaint the Plaintiffs in the Missouri action allege that they:

- Paid an inflated price for the milk they purchased;

- Were tricked into buying "organic" milk that wasn't organic;

- Exposed themselves, their family and friends to pesticides, hormones, antibiotics and other chemicals which were prohibited under organic standards; and

☐     Were coerced into supporting a factory farm which treated animals inhumanely in violation of organic standards that required otherwise.

The Plaintiffs in the Missouri action seek the following relief:

☐     An order requiring Aurora to disgorge all money paid by Plaintiffs and Class for Defendant's fake organic milk;

☐     An award of compensatory damages, to include any fees and interest illegally charged, and further awarding any damages caused by such payments;

☐     An award of consequential and incidental damages;

☐     An award of pre-judgment and post-judgment interest;

☐     An award of punitive damages;

☐     Imposition of a constructive trust and equitable lien against all money paid by the Class to and wrongfully withheld by Aurora; and

☐     A Preliminary and Permanent Injunction prohibiting Aurora from engaging in illegal activities.

### The Colorado Litigation

Five actions have been filed against Aurora in the United States District Court for the District of Colorado. The first is captioned: <u>Rebecca and Fernando Freyre, on behalf of themselves and all others similarly situated, Plaintiffs v. Aurora Dairy Corporation, Defendant</u>. The second action, which purports to have a class representative from every state with a Consumer Protection Statute, is captioned: <u>Mona Still, Helen Phillips, Eve Hana, Jeanmarie Zirger, Kim King, Noelle Fincham, Oksana Jensen, Gabriela Waschewsky, Laurelanne Davis, Debbie Millikan, Joan Scheutz, Sandie Regan, Steve Slither, Mary Elbertai, Eileen Ptak, Cynthia Roche-Cotter, Kristen Finnegan, Amy Forsman, Joy Beckner, Naomi Mardock, Olive Knaus, Liana Hoodes, Donita Robinson, Ilene Rachford, Lisa Hopkins, Caryn Poirier, Erin Diserens, Tammy Coselli, Debra Haines, Debra Schmidt, and Hans Kueck, v. Aurora Dairy Corporation</u>. The third action is captioned: <u>Elizabeth Cockrell, individually and on behalf of all others similarly situation, v. Aurora Dairy Corporation, d/b/a/ Aurora Organic Dairy</u>. The fourth action is captioned: <u>Jim Snell, et al. v. Aurora Dairy Corporation, d/b/a Aurora Organic Dairy, Wild Oats Market, Inc., Costco Wholesale Corporation, Safeway, Inc.</u> The fifth action is captioned: <u>Margot A. West and Richard E. Ehly v. Aurora Dairy Corp.</u>

### *Freyre*

In the <u>Freyre</u> action, the Plaintiffs seek certification of the following class:

All persons who purchased milk that was labeled and represented as "organic," but which was not produced with organic principles and the legal requirements to qualify as organic milk.

The Plaintiffs in the Freyre action seek relief under the following counts:

- First Claim for Relief - (Violation of the Colorado Consumer Protection Act,) Colo. Rev. Stat. § 6-1-1-1, et seq. (CCPA);

- Second Claim for Relief - (Breach of Contract);

- Third Claim for Relief - (Unjust Enrichment); and

- Fourth Claim for Relief - (Breach of the Implied Warranty of Fitness for a Particular Purpose).

The Freyre Plaintiffs are seeking relief based on their alleged economic losses and are also requesting an order requiring Aurora to disgorge the amount by which it has been "unjustly enriched". This amount would be based on the difference in the cost of organic milk and non-organic milk. This same measure of damages has been requested in the other counts of the Complaint.

### Still

The Still action is also pending in the federal court for the District of Colorado. The named Plaintiffs, on behalf of themselves and a class, seek compensatory and consequential damages, statutory, punitive, or exemplary damages, and injunctive relief.

The first Count of the Complaint in the Still action seeks recovery on behalf of a nationwide class consisting of all persons and entities in the United States who purchased "organic" milk or milk products produced by Aurora during the relevant time period. In Counts 2-155, each named Plaintiff is seeking relief on behalf of a specified "Statewide Class".

### Cockrell

In the Cockrell action, the Plaintiffs allege that Aurora committed "unlawful, unfair and deceptive practices to produce, market, and sell 'organic' milk and milk products at prices much higher than normal non-organic milk and milk products sell to consumers, when Defendant knew or should have known the 'organic' milk and milk products they were producing, marketing and selling did not comply with Federal guidelines for labeling such milk and milk products 'organic' from January 1, 2003 to September 7, 2007."

It is alleged that the Plaintiff and the Class she seeks to represent have been "damaged as a direct, foreseeable and proximate result of Defendant's unfair and deceptive practices and other misconduct in violation of federal and state laws." It is also alleged that; "(a)s a direct and

proximate result of Defendant's actions, Plaintiff and the other Class members were forced to pay artificially high prices for 'organic' certified milk and milk products supplied by Defendants that should have been labeled as non-organic."

Ms. Cockrell seeks certification of the following class:

> (A)ll persons or entities that purchased organic milk or milk products produced by Defendant in the Consumer Protection States or the United States during the Class Period.

In the <u>Cockrell</u> action the Plaintiffs are seeking relief under the following counts:

- ❑   Count I – Violation of Consumer Protection Statutes; and

- ❑   Count II – Unjust Enrichment.

### *Snell*

In the <u>Snell</u> action the named Plaintiffs are seeking to represent the following classes:

Jim Snell - the Nationwide Class and the Tennessee State Class;

Steve Clark - the Nationwide Class and the Arkansas State Class;

John Barrera - the Nationwide Class and the New York State Class;

Joseph Villari - the New Jersey State Class;

Elida Gollomp - the Connecticut State Class;

Claire Theodore - the California State Class; and

Elisabeth Banse – the Washington State Class.

The Plaintiffs claim that they have sustained an economic loss as a result of illegal, inequitable and unfair trade practices of the defendants which have allegedly inflated the prices paid by members of the Class for organic milk and milk products. According to the Complaint, by selling its milk or milk products as "organic," Aurora violated, and continues to violate, federal and state law and applicable regulations and is misleading purchasers of its products – including Plaintiffs and the other members of the Class – into overpaying or otherwise paying a premium for milk or milk products that could not be sold as "organic."

Relief is sought under the following counts:

- ❑   Count I:  Violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, et seq;

- ❑   Count II:  Breach of Express Warranty;

□   Count III:  Breach of Implied Warranty; and

□   Count IV:  Common Law Unjust Enrichment.

### *West*

The Plaintiffs in the <u>West</u> action allege that Aurora violated, and continues to violate, federal and state law and applicable regulations by falsely labeling the milk processed for and sold to retailers as "organic". The class described includes: "all persons and entities in the United States who purchased 'organic' milk or milk products produced by Aurora from December 17, 2004 to the present."

Relief is sought under the following counts:

□   Count I:  Violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, et seq;

□   Count II:  Breach of Express Warranty;

□   Count III:  Breach of Implied Warranty; and

□   Count IV:  Common Law Unjust Enrichment.

### **The Florida Action**

The Florida class action, pending in the United States District Court for the Southern District of Florida, is captioned: <u>Maya Fiallos, individually and on behalf of all others similarly situated, Plaintiff, v. Aurora Dairy Corporation</u>. The Plaintiff in the Florida action seeks to certify the following classes:

□   Nationwide Class:  All persons who, since October 17, 2003 (the "Class Period"), purchased milk in the United States which was produced by Aurora and contained, anywhere on the carton or container, the word "organic" or the seal "USDA organic."

□   Florida Subclass:  All persons who, since October 17, 2003 (the "Class Period") purchased milk in Florida which was produced by Aurora and contained, anywhere on the carton or container, the word "organic" or the seal "USDA organic."

The Plaintiff in the Florida action is seeking relief under the following Counts:

□   Count I – Unjust Enrichment – On Behalf of the Nationwide Class;

□   Count II – Money Had and Received – On Behalf of the Nationwide Class; and

Page 9

      □       Count III – Violation of Florida Deceptive and Unfair Trade Practices Act – Fl. Stat. § 501.201 *et seq.* (FDUTPA") - On behalf of the Florida Subclass.

## The California Litigation

Two actions have been filed against Aurora in California. The California action, pending in the United States District Court for Northern District of California, is captioned: <u>Brenda Gallardo, an individual v. Aurora Dairy Corporation, d/b/a Aurora Organic Dairy.</u> The California action, pending in state court is captioned: <u>Nicolle DiSimone, individually, and on behalf of those similarly situated, v. Aurora Dairy Corporation, doing business as Aurora Organic Dairy, Case Vander Eyk, Jr., doing business as Case Vander Eyk, Jr. Dairy, Quality Assurance International Inc.</u>

### *Gallardo*

The Plaintiffs in the <u>Gallardo</u> action seek relief under the following Counts:

      □       First Cause of Action – Unfair Competition Law, California Bus. & Prof. Code Sections 17200, et seq.) ("Unlawful" Prong – Failures to Comply With the California Organic Products Act of 2003 and Other California Statutes);

      □       Second Cause of Action – (Unfair Competition Law, California Bus. & Prof. Code Sections 17200, et seq.) ("Unlawful" Prong – Failures to Comply With the National Organic Program [Section 6517 of the Organic Foods Production Act of 1990 (7 U.S.C. Sec. 6501 et seq.) and Implementing Regulations]);

      □       Third Cause of Action - (Unfair Competition Law, California Bus. & Prof. Code Sections 17200, et seq.) ("Fraudulent and Deceptive" Prong); and

      □       Fourth Cause of Action – (Consumer Legal Remedies Act, Cal. Civil Code §1750 et seq.).

It is alleged that Aurora placed into the stream of commerce, and intended for ultimate sale to consumers, milk that was falsely labeled as – and represented to be – "organic." It is alleged that the placement constitutes "fraudulent" and "unfair, deceptive, untrue or misleading advertising" under Cal. Bus. & Prof. Code §17200 et seq. It is also alleged that the Plaintiff has lost money or property as a result of the unfair competition.

The Plaintiffs in the <u>Gallardo</u> action seek the following relief:

      □       An order enjoining defendant from placing into the stream of commerce any milk labeled as "organic" (or which defendant knows or reasonably

should know will be so labeled) which do not meet all standards and requirements of California and Federal law regarding labeling and sale of organic milk;

☐ An order requiring defendant to restore to plaintiff and all class members all amounts which may have been acquired by means of any practices found by this Court to be contrary to the provisions of the California Unfair Competition Law, Bus. & Prof. Code §§17200 *et seq.*;

☐ An order requiring defendant to disgorge to plaintiff and all class members all amounts which may have been acquired by means of any practices found by this Court to be contrary to the provisions of the California Unfair Competition Law, Bus. & Prof. Code §§17200 *et seq.*; and

☐ Attorneys' fees pursuant to Cal. Civ. Proc. Code §1021.5.

### *DiSimone*

The Plaintiffs in the action pending in Superior Court for the County of Los Angeles, Nicolle DiSimone v. Aurora Dairy, et al, seeks certification of the following class:

All California residents who purchased milk produced by Aurora and Vander Eyk that was labeled and certified as "organic" but which was not produced in accordance with organic principles and/or the legal requirements to qualify as organic milk during the period commencing on the date four years preceding the filing of this complaint through and including the present date.

The Plaintiffs in the DiSimone action seek relief under the following counts:

☐ First Cause of Action Class Action for Unfair Competition Under California Business and Professions Code Section 17200 (Unfair, Fraudulent or Illegal Business Acts and Practices); and

☐ Second Cause of Action - Unfair Competition Under California Business and Professions Code Section 17200 (Unfair, Fraudulent or Illegal Business Acts and Practices).

The Plaintiffs in the DiSimone action claim that that they have been injured "due to the fraudulent, unlawful and unfair business practices of the Defendants in that they have paid additional money for a product 'organic' milk, which was in fact neither organically produced nor handled in accordance with the applicable statues and regulations required by law for food products designated as 'organic'". The DiSimone Plaintiffs are seeking an order compelling the defendants to disgorge the money that was unlawfully obtained and restitution of the amounts paid by the class during the applicable period.

### The New York Litigation

Page 11

There are two actions pending in New York: <u>Hillary White and Lynn Michalson v. Aurora Dairy Corp.</u> and <u>Ilsa Lee Kaye v. Aurora Organic Dairy.</u>

### *White*

The Plaintiffs in the <u>White</u> action seek certification of the following class:

> All persons or entities who purchased organic milk produced by Defendant in the Consumer Protection Statutes during the Class Period.

The Plaintiffs in <u>White</u> seek relief under the following counts:

- ☐   Count I – Violation of State Consumer Protection Statutes; and

- ☐   Count II – Unjust Enrichment.

### *Kaye*

In the <u>Kaye</u> action it is alleged that organic milk is sold as an alternative to ordinary milk, it is produced in a way that is more humane to the dairy cows, and is purported to produce a healthier and more nutritious product without the use of chemicals or steroids.  It is also alleged that the price of organic milk is more than double the price of the ordinary non-organic milk produced and sold.  The Plaintiffs seek restitution and injunctive relief under the following counts:

- ☐   Count I:  Violation of State Consumer Protection Statutes; and

- ☐   Count II:  Unjust Enrichment.

### **The Minnesota Action**

In the action, <u>Patrick and Caryn Hudspeth v. Target Corp.</u> pending in the District Court for the District of Minnesota it is alleged that the Plaintiffs paid a premium price for milk purchased at Target that was falsely represented to be "organic".  The Plaintiffs are seeking relief under the following Counts:

- ☐   First Cause of Action – Target's Violation of the Minnesota prevention of Consumer Fraud Act, Minn. Stat. §§ 325F.68, et seq, and Various Similar Acts;

- ☐   Second Cause of Action – Common Law Unjust Enrichment; and

- ☐   Third Cause of Action – Breach of Express Warranty.

### **THE NSC COVERAGE**

For the policy period May 1, 2005 – May 1, 2006, National Surety Corporation provided general liability coverage to Aurora Dairy through policy number S 86 MXX 80843533.  The general liability coverage was renewed by NSC for the policy period May 1, 2006 – May 1, 2007 through policy number S 86 MXX 80859105.  During both policy periods, the coverage was subject to a $1,000,000 "each occurrence" limit of liability and a $2,000,000 aggregate.  The liability coverage was provided through form number CG0001 12-04.

Page 12

The insuring agreement that applies to "bodily injury" and "property damage" provided:

### Section I – Coverages

### Coverage A Bodily injury and Property Damage Liability

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies. We will have the right and duty to defend the insured against any **suit** seeking those damages. However, we will have no duty to defend the insured against any suit seeking damages for **bodily injury** or **property damage** to which this insurance does not apply. We may at our discretion investigate any **occurrence** and settle any claim or **suit** that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III - Limits of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

   b. This insurance applies to **bodily injury** and **property damage** only if:

      (1) The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**;

      (2) The **bodily injury** or **property damage** occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is an Insured and no **employee** authorized by you to give or receive notice of an **occurrence** or claim, knew that the **bodily injury** or **property damage** had occurred, in whole or in part. If such a listed insured or authorized **employee** knew, prior to the policy period, that the **bodily injury** or **property**

Page 13

> **damage** occurred, then any continuation, change or resumption of such **bodily injury** or **property damage** during or after the policy period will be deemed to have been known prior to the policy period.

To fall within this insuring agreement the following requirements must be met:

- ☐ The insured must be legally required to pay damages as a result of "bodily injury" or "property damage" caused by an "occurrence";

- ☐ The "bodily injury" or "property damage" must occur during the policy period; and

- ☐ Prior to the policy period no insured can have had knowledge of the "bodily injury"; "property damage"; "occurrence"; "claim"; or "suit".

Coverage is provided only for "damages." Amounts representing disgorgement or restitution do not constitute "damages".

The term "property damage" is defined as follows:

    17.   **Property damage** means:

        a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

        b.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

The economic losses complained of were not the result of physical damage to or loss of use of tangible property.

The term "bodily injury" is defined as follows:

    3.   **Bodily injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

No plaintiff in the pending litigation alleges that he or she sustained "bodily injury", "sickness" or "disease" as a result of the conduct complained of.

    13.   **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

The Plaintiffs in the underlying actions do not allege that they sustained "bodily injury" or "property damage" as a result of an "accident".

The general liability coverage that applies to "bodily injury" and "property damage" is subject to the following exclusion:

This insurance does not apply to:

    a.    Expected or Intended Injury

        **Bodily injury** or **property damage** expected or intended from the standpoint of the insured.  This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

The Company reserves the right to rely on this exclusion as a basis for denying coverage for the Mothershead action.  This serves as the another basis for the Company's denial of coverage to all of the other actions.

The insuring agreement that applies to the "personal injury and advertising injury" provides:

**Coverage B Personal and Advertising Injury Liability**

1.    **Insuring Agreement**

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of **personal and advertising injury** to which this insurance applies.  We will have the right and duty to defend the insured against any **suit** seeking those damages. However, we will have no duty to defend the insured against any **suit** seeking damages for **personal and advertising injury** to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or suit that may result. But:

        (1)    The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

        (2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

    b.    This insurance applies to **personal and advertising injury** caused by an offense arising out of your business but only if the offense was committed in the **coverage territory** during the policy period.

No damages are sought in any of the pending actions for "personal and advertising injury," a term defined as follows:

14. **Personal and advertising injury** means injury, including consequential **bodily injury**, arising out of one or more of the following offenses:

   a.  False arrest, detention or imprisonment;

   b.  Malicious prosecution;

   c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e.  Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f.  The use of another's advertising idea in your **advertisement**; or

   g.  Infringing upon another's copyright, trade dress or slogan in your **advertisement**.

In addition, the coverage provided for "personal and advertising injury" is subject to the following exclusion that would serve as an alternative basis for denying coverage under this insuring agreement.

   This insurance does not apply to:

   g.  Quality or Performance of Goods - Failure to Conform to Statements

   **Personal and advertising injury** arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your **advertisement**.

## THE AIC COVERAGE

As noted above, The American Insurance Company also provided liability coverage to Aurora and certain related entities under the policies described in the following chart:

| POLICY PERIOD | NUMBER | NAMED INSURED | LIMITS |
|---|---|---|---|
| 6/1/05 – 6/1/06 | 643 FRM80250251 | Aurora Dairy Corp. | 1mm/2mm |

| 6/1/05 – 6/1/06 | 643 FRM0664651 | Aurora Organic Dairy Tx. Inc.<br>Aurora Dairy Corp.<br>TXAGR Real Estate Holdings, LLC | 1mm/2mm |
|---|---|---|---|
| 6/1/06 – 6/1/07 | 643 FRM80255328 | Aurora Dairy Corp. | |
| 6/1/06 – 6/1/07 | 643 FRM06646251 | Aurora Organic Dairy TX., Inc.<br>Aurora Dairy Corp.<br>TXAGR Real Estate Holdings, LLC | |

The liability coverage was provided under these policies through Farm Liability Coverage Form – FL 00 20 01 98. Under each policy, the coverage was subject to a $1,000,000 limit of liability that applied to each occurrence and a $2,000,000 aggregate.

The insuring agreements to the Farm Liability policies provided:

### Section I - Coverages

### Coverage H - Bodily Injury and Property Damage Liability

1. **Insuring Agreement**

   a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies. We will have the right and duty to defend the **insured** against any suit seeking those damages. However, we will have no duty to defend the **insured** against any suit seeking damages for **bodily injury** or **property damage** to which this insurance does not apply. We may at our discretion investigate any occurrence and settle any claim or **suit** that may result. But:

      (1)   The amount we will pay for damages is limited as described in SECTION **II** - LIMITS OF INSURANCE; and

      (2)   Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under Coverage H or I or medical expenses under Coverage J.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under the ADDITIONAL COVERAGES.

   b.   This insurance applies to **bodily injury** and **property damage** only if:

          (1)     The **bodily injury** or **property damage** is caused by an **occurrence**; and

          (2)     The **bodily injury** or **property damage** occurs dining the policy period.

    c.     Damages because of **bodily injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the bodily injury.

    d.     **Property damage** that is loss of use of tangible property that is not physically injured will be deemed to occur at the time of the occurrence that caused it.

## Coverage I - Personal and Advertising Injury Liability

**1.**    **Insuring Agreement**

    a.     We will pay those sums that the **insured** becomes legally obligated to pay as damages because of **personal injury** or **advertising injury** to which this insurance applies. We will have the right and duty to defend the insured against any suit seeking those damages. However, we will have no duty to defend the **insured** against any **suit** seeking damages for **personal injury** or **advertising injury** to which this insurance does not apply. We may at our discretion investigate any **occurrence** or offense and settle any claim or **suit** that may result. But:

          (1)     The amount we will pay for damages is limited as described in SECTION **II** - LIMITS OF INSURANCE; and

          (2)     Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under Coverages **H** or **I** or medical expenses under Coverage **J**.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under the ADDITIONAL COVERAGES.

    b.     This insurance applies to **personal injury** only if caused by an offense:

          (1)     Committed during the policy period; and

(2)  Arising out of personal activities or out of operations usual or incidental to **farming,** excluding advertising, publishing, broadcasting or telecasting done by or for you.

c.  This insurance applies to **advertising injury** only caused by an offense committed:

(1)  In the coverage territory during the policy period; and

(2)  In the course of advertising your farm-related goods, products or services.

The definitions of "bodily injury" "property damage" and "occurrence" found in the Farm Liability policies do not differ from the definitions found in the general liability coverage provided by NSC and the analysis set out above also applies to the policies issued by AIC. Similarly, the definitions of "personal injury" and "advertising injury" do not differ materially from the definitions found in the general liability policies issued by NSC. Accordingly, the analysis relating to the general liability policies also applies under the Farm Liability policies. However, the Farm Liability policies incorporate the following exclusion which AIC relies on to deny coverage.

This insurance does not apply to:

i.  Business Pursuits

**Bodily injury** or **property damage** arising out of or in connection with a business engaged in by an **insured**. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the business.

This exclusion does not apply to an insured minor involved in self-employed business pursuits that are occasional or part-time and customarily undertaken on that basis by minors.

For the purposes of this exclusion, the term "business" is defined as follows:

3.  **Business** means a trade, profession, occupation, enterprise or activity, other than **farming** or **custom farming**, which is engaged in for the purpose of monetary or other compensation

Here, Aurora's potential liability arises out of representations it made as a processor and wholesaler of organic milk. Accordingly, AIC also relies on the "Business Pursuits" exclusion to deny coverage under the policies issued by AIC.

Page 19

As explained above, NSC has determined that it will retain counsel to defend Aurora in the Mothershead action.  NSC will reimburse Aurora for the reasonable fees and costs incurred in responding to the Mothershead action.  Both NSC and AIC reserve the right to file a declaratory judgment action seeking a declaration that they have no obligation to defend or indemnify the insured for the relief sought in this litigation.  Both NSC and AIC reserve the right to recover back defense costs incurred in the event it is determined there is no coverage.  On behalf of both NSC and AIC, I ask that you advise me of any information you have that you believe may affect the determination concerning the coverage available under the policies.  Both NSC and AIC expressly reserve the right to modify their coverage determinations.  Nothing contained in this letter should be deemed a waiver of the terms or conditions of the policy.  The Company expressly reserves the right to rely upon any term or condition of the contract or any other ground which may be found to limit or preclude coverage.

Sincerely,
National Surety Corporation and The American Insurance Company
One of the Fireman's Fund Insurance Companies

Lee Trail, SCLA
Core Claims

Dennis Mason, MBA, SCLA
Core Claims Director

cc:    Premier Insurance
       2600 Rose Hill Road
       Ste 101
       Boise, ID.  83705