# EXHIBIT D

Case No. 1:08-cv-01236-CBS-BNB   Document 122-5   filed 02/25/11   USDC Colorado   pg 2
of 25
Case 4:07-cv-01701   Document 1-2   Filed 10/04/2007   Page 1 of 24

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| KRISTINE MOTHERSHEAD and | ) | |
| LEONIE LLOYD, | ) | |
| Individually and on behalf of all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Cause No.: |
| | ) | |
| **v.** | ) | Division: |
| | ) | |
| AURORA DAIRY CORPORATION, | ) | |
| d/b/a Aurora Organic Dairy | ) | JURY TRIAL DEMANDED |
| **Serve:** | ) | |
| The Corporation Trust Company | ) | |
| Corporation Trust Center, 1209 Orange St. | ) | |
| Wilmington, DE 19801 | ) | |
| | ) | |
| Defendant. | ) | |

**CLASS ACTION COMPLAINT**

COME NOW Plaintiffs, individually and on behalf of a similarly situated class, and for

their Class Action Complaint, by and through their attorneys, state that Aurora Dairy

Corporation, doing business as Aurora Organic Dairy (hereinafter "Aurora") committed unfair

and deceptive practices and was unjustly enriched by marketing and selling milk alleged to be

organic, at prices much higher than non-organic milk, when Defendants knew or should have

known that its milk did not meet the standards of organic certification.

**PARTIES**

1.  Plaintiff Kristine Mothershead is a resident of the City of St. Louis, Missouri.

2.  Plaintiff Leonie Lloyd is a resident of the City of St. Louis.

3.  Aurora is incorporated in Delaware and has its principle place of business in Colorado.

1

4. Aurora was founded by Mark Retzloff and Marc Peperzak in 2003.  Boht Retzloff and Peperzak were former stakeholders in Horizon, another large factory organic milk producer.   This year, Aurora is expected to have over $100 million in sales.

5. Store brand labels, like those produced by Aurora, account for about 10% of the total organic milk sold in the United States annually. Organic milk accounts for about 3% of all milk sales.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction in that the amount in controversy exceeds $5 million and Plaintiffs and Defendant are diverse in citizenship. 28 U.S.C.A. 1332(d)(2)

7. This Court has personal jurisdiction over Defendant because it engaged in the transaction of business within the Missouri, introduced products into the stream of commerce throughout Missouri, engaged in illegal activities in Missouri, and should have reasonably anticipated being subject to the jurisdiction of Missouri courts.

8. Venue is appropriate in this Court because Plaintiffs purchased the milk in St. Louis County and Defendant transacts business within this district, including the City of St. Louis and St. Louis County. A substantial part of the events occurred in this district. 28 U.S.C.A. 1391(a).

## JURY TRIAL DEMANDED

9. For all Counts in this Complaint, Plaintiffs seek a jury trial for all appropriate issues.

Case No. 1:08-cv-01236-CBS-BNB   Document 122-5   filed 02/25/11   USDC Colorado   pg 4
of 25
Case 4:07-cv-01701     Document 9-2     Filed 10/04/2007     Page 3 of 24

## GENERAL ALLEGATIONS

10. Ms. Mothershead purchased Kirkland Signature Organic milk from Costco, located at
    4200 Rusty Rd, St Louis, MO 63128.

11. Ms. Mothershead has three small children who consumed the milk she purchased.

12. Ms. Mothershead began purchasing the Aurora produced milk approximately two years
    ago.

13. The milk was sold in a "three-pack" of half-gallon containers.

14. The Kirkland Signature milk purchased by Ms. Mothershead was produced by Aurora
    and sold under Costco's independent label.

15. Ms. Mothershead has purchased at least 30 gallons of milk produced by Aurora in the last
    two years.

16. She began purchasing Kirkland Signature Organic milk from Costco, 4200 Rusty Rd, St
    Louis, MO 63128,  approximately two years ago.

17. The milk was shared with her two young children.

18. The milk was sold in a "three-pack" of half-gallon containers.

19. The Kirkland Signature milk purchased by Ms. Lloyd was produced by Aurora and sold
    under Costco's store label.

20. Ms. Lloyd, in the last two years, has purchased at least one hundred and fifty gallons of
    milk produced by Aurora.

21. Ms. Lloyd washes out the cartons of milk and builds "blocks" out of them as toys for her
    children.  Two cartons produce one block. In approximately the last three months, Ms.
    Lloyd has purchased enough milk to allow her kids to produce 50 blocks.  Various photos
    of a sample container of milk produced by Aurora and purchased by Ms. Lloyd are

included as **Exhibits A-B**.  A photo of the "blocks" used by her children is included as **Exhibit C.**  Sample receipts containing proof of Ms. Lloyd's purchases are included as **Exhibit D.**

22. Both Ms. Lloyd and Ms. Mothershead purchased organic milk because they did not desire to ingest non-organic milk and did not wish to expose their families to non-organic milk.

23. Both Ms. Lloyd and Ms. Mothershead purchased organic milk, believing that such milk was produced in a way that promoted healthy and humane treatment of dairy cows.

24. Aurora is the country's largest private-label producer of organic milk and packages store-brand organic dairy products for Wal-Mart, Costco, Target, Safeway, Wild Oats, Publix and other grocery chains.

25. Aurora sells milk to other stores, but these stores sell the milk under their own store brand.

26. For example, Costco sells organic milk under its own label, Kirkland Signature.  The milk is produced by Aurora and distributed to Costco.  Aurora represents to Costco and Plaintiffs and Class that the milk is "organic."

27. Aurora is a newcomer to the organic dairy industry, beginning its operations in 2003.

28. Aurora's business model was to take traditional confinement dairies and convert them to organic dairies.

29. Aurora, as part of its development, purchased land in Platteville, Colorado.  It began operating a dairy farm in Platteville that consisted of approximately 4,200 cows.

30. The Platteville facility consisted of approximately 200 acres of farmland.

Case No. 1:08-cv-01236-CBS-BNB   Document 122-5   filed 02/25/11   USDC Colorado   pg 6
of 25
Case 4:07-cv-01701   Document 9[?25   Filed 10/04/2007   Page 5 of 24

31. Aurora has additional dairies in Dublin, Texas and throughout Colorado.  The Dublin
    Facility at one time contained approximately 3,200 cows.

32. Aurora processes all of its milk in its milk plant located next to its Platteville, Colorado
    dairy farm.  Milk from the other ranches is transported to the Platteville facility by
    refrigerated trucks.

33. The milk is pasteurized, or ultra-pasteurized, processed into whole, 2%, 1% or skim milk,
    and "bottled" into half-gallon cartons.

34. In addition to providing labels for other stores, Aurora has its own label, High Meadows.
    Upon information and belief, much of this milk is distributed through Publix.

35. All milk sold by Aurora is labeled and advertised as "organic."

36. Aurora actively markets the benefits of "organic" products on its website.  See, for
    example, http://www.auroraorganic.com/aodweb/site/itemcontent.aspx?icategoryid=6.

37. Aurora suggests that organic production benefits small farmers and preserves rural
    communities.

38. Aurora sells its milk at a lower price than almost all organic producers, large and small,
    and has allowed store labels to be sold at prices lower than those charged by other
    organic producers or distributors.

39. Aurora milked its cows three times per day and kept them confined in feed lots.

40. Small organic farmers generally milk their cows twice a day and allow them to graze.

41. Aurora's immense production of "organic" milk has glutted the market, driven down
    prices, and made it difficult for small farmers who produce real organic milk to compete.

42. Aurora was able to charge lower prices for its milk because it did not obey the rules
    regarding organic certification.

43. Scientific research has consistently confirmed that free grazing cows produce a higher quality and more nutritious milk than cows that are confined to feed lots. This is true even if the cows in the lots are fed organic grains.

44. Aurora's certification for its dairy farms was provided by Quality Assurance International (hereinafter "QAI").

## AURORA'S ALLEGED ILLEGAL ACTIVITY

45. Upon information and belief, Aurora has engaged in a number of activities which violate the standards for organic milk production as set out in  the Organic Food Products Act of 1990 (OFPA), as amended (7 U.S.C. 6501 et seq.) and the regulations pertaining to the Act, (7 C.F.R. 205.1 *et seq.*)

46. Various organic watchdog groups have voiced similar concerns, including the Cornucopia Institute and the Organic Consumers Association.

47.  The USDA has investigated Aurora and found significant problems.

48. Despite federal law outlining the requirements for organic certification of milk, despite complaints by non-profit groups and despite extended investigations, upon information and belief, Aurora, beginning in 2003 and continuing through the present, has continually labeled milk as "organic" when in fact it does not comply with organic requirements.

49. Specifically, upon information and belief, Aurora has violated organic certification standards in the following ways.

50. Aurora failed to provide a total feed ration that included pasture, failed to establish and maintain appropriate pasture conditions and failed to establish and maintain access to pasture, thereby violating 7 C.F.R. §§ 205.237(a), 205.238(a)(3) and 205.239(a)(2).

51. Aurora allowed conventional cows to be milked as organic before the cows completed the required one-year period of continuous organic management and purchased other conventional cows that had not been under organic management from at least the last third of gestation, thereby violating 7 C.F.R. § 205.236(a)(2).

52. Aurora often allowed "organic" cows to be managed at non-organic ranches, and then returned the cows to Aurora facilities for milking, thereby violating 7 C.F.R. §§ 205.236(b)(1).

53. At multiple facilities, Aurora used non-organic bedding materials for its cattle (which are animals which sometimes consumer their bedding), thereby violating 7 C.F.R. § 205.239(a)(3).

54. Aurora also failed to

   a)  maintain and provide adequate documentation to assure compliance with organic standards regarding things such as utilization of off-site facilities for management of cattle;  and

   b)  provide notice to certifying bodies regarding changes to its approved Organic System Plans.

55. Because of the actions described above, the milk produced by Aurora was not organic.

56. As such, Aurora mislabeled milk as organic when it was not.  This is a violation of the National Organic Program (NOP) regulations, (7 C.F.R. part 205), and constitutes a willful violation of 7 C.F.R. §§ 205.102, 205.200 and 205.400(a).

57. Some of the illegal activity engaged in by Aurora has been investigated by the USDA and non-profit organizations.

58. Despite these investigations, and clear evidence that Aurora willfully or negligently sold milk as "organic" when it was not, Aurora has taken no action to refund to consumers the profits it gained from representing that its milk was organic since 2003.

59. Upon information and belief, the mark-up that Aurora was able to gain from the sale of "organic" milk was significant, totaling millions of dollars per year.

<u>**COUNT I**</u>
**UNJUST ENRICHMENT**
**On Behalf of a Nationwide Class**

60. Plaintiffs and Class hereby incorporate all preceding paragraphs as if fully stated herein.

61. Plaintiffs and Class paid prices for Defendant's milk that were much higher than the prices of non-organic milk.

62. Plaintiffs and Class did not receive organic milk in exchange for the price they paid.

63. The money received by Defendant from members of the proposed class, totaling tens of millions of dollars, constituted a benefit to Defendant.

64. Defendant knowingly received money from Plaintiffs and Class as result of the sale of its milk, which Defendant knew was not organic

65. Because the milk sold by Defendant was not organic, but was represented to be organic, it would be unjust for Defendant to retain the profits from the sale of its milk to Plaintiffs and Class.

66. The retention of the money by the Defendant is unfair to plaintiffs. To allow Defendant to retain those ill-gotten monies would constitutedamages to Plaintiffs and Class.

67. Plaintiffs and Class are entitled to restitution for any money they paid when they believed that they were buying organic milk produced by Defendant, when they were actually buying non-organic milk.

8

68. Plaintiffs and Class seek restitution as set out in the "Prayer for Relief – Count I" of this Complaint.

## CLASS ALLEGATIONS FOR COUNT I

69. Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant Federal Rule of Civil Procedure 23. The claims in Count II asserted are brought on behalf of a nationwide class of consumers.

70. The class is defined and described as follows:

> **All persons who, in the United States, since January 1, 2003, purchased milk which was produced by Aurora and contained, anywhere on the carton or container, the word "organic."**
>
> Excluded from the proposed class are Defendant and its officers, directors, and employees, as well as employees of any of defendant's subsidiaries, affiliates, successors or assignees. Also excluded are the immediate family members of the above persons. Also excluded is any trial judge who may preside over this case.

71. The requirements for maintaining this action as a class action are satisfied, as set forth immediately below:

72. The proposed class is so numerous and so geographically dispersed that the individual joinder of all absent class members is impracticable. While the exact number of absent class members is unknown to Plaintiffs at this time, it is ascertainable by appropriate discovery and Plaintiffs, upon information and belief, alleges that the proposed class may include thousands of members. The requirement of numerosity is therefore satisfied.

73. Common questions of law or fact exist as to all proposed class members and predominate over any questions which affect only individual members of the proposed class. These common questions of law or fact include:

    a.   Whether Defendant failed to provide a total feed ration that included pasture;

b.   Whether Defendant entered conventional dairy animals into organic milk production before they completed one year of continuous organic management;

c.   Whether Defendant labeled and represented milk as organically produced when such milk was not produced and handled in accordance with the National Organic Program regulations;

d.   Whether Defendant failed to maintain adequate records under NOP regulations;

e.   Whether all milk produced by Aurora was tainted;

f.   Whether Aurora misrepresented its milk to the retailers and customers who purchased it;

g.   Whether Plaintiffs and Class were damaged by paying organic prices for non-organic milk;

h.   Whether Defendant's milk was "organic."

i.   Whether Plaintiffs and Class are entitled to damages;

j.   Whether Defendant's conduct rises to the level of willfulness so as to justify punitive damages;

k.   Whether an injunction in necessary in order to prevent Aurora from continuing to engage in illegal activity.

74. The claims of the Plaintiffs are typical of the claims of the class.  Plaintiffs purchased milk produced by Aurora that was labeled organic.  Plaintiffs paid a higher price for the "organic" milk than they would have for non-organic milk.

75. Plaintiffs will fairly and adequately represent the interests of the members of the class. Plaintiffs have no interest adverse to the interests of the members of the class. Plaintiffs have retained competent attorneys who have experience in class action litigation.

76. A class action is a superior method for the fair and efficient adjudication of this controversy. The adjudication of a separate action by individual members of the class would create a risk of a) inconsistent or varying adjudications with respect to individual members of the class; or b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.  Upon information and belief, Aurora has provided its falely labeled milk to hundreds of thousands, perhaps millions, of individuals.  In addition, a nationwide class will allow for the resolution of identical claims in an efficient manner that avoids fragmented state-by-state litigation in which inconsistent results could occur.  There is no meaningful deviation between unjust enrichment laws throughout the country.

77. Questions of law or fact common to the members of the class predominate over any questions affecting only individual members.  There is no special interest in the members of the class individually controlling the prosecution of separate actions; the damages sustained by individual class members is relatively small; and the expense and burden of individual litigation make it impossible for the class members individually to address the wrongs done to them.

Case No. 1:08-cv-01236-CBS-BNB   Document 122-5   filed 02/25/11   USDC Colorado   pg 13
of 25
Case 4:07-cv-01701   Document 1   Filed 10/04/2007   Page 12 of 24

78. There will be no difficulty in managing this lawsuit as a class action.  Evidence relating to Aurora's alleged violations will be applicable to all members of the class; there are accepted means for notifying class members who purchased the milk in question and much of the evidence regarding the alleged violations has been chronicled by governmental and non-profit agencies.

## PRAYER FOR RELIEF – COUNT I

Plaintiffs and Class request that the Court enter judgment in their favor and against

Defendant as follows:

a. Ordering that this action be maintained as a class action pursuant to this Court's powers under Federal Rule of Civil Procedure 23(c) and defining the class as:

> **All persons who, in the United States, since 2003, purchased milk which was produced by Aurora and contained, anywhere on the carton or container, the word "organic."**
> Excluded from this proposed class are defendant and its officers, directors, and employees, as well as employees of any of defendant's subsidiaries, affiliates, successors or assignees.  Also excluded are the immediate family members of the above persons.  Also excluded is any trial judge who may preside over this case.

b. Ordering that Defendant disgorge all money paid by Plaintiffs and Class for Defendant's fake organic milk , returning such money to the Plaintiffs and the Class;

c. Certifying Plaintiffs as class representatives and appointing Plaintiffs' counsel as counsel for the Class;

d. Awarding Plaintiffs and Class compensatory damages, to include any fees and interest illegally charged, and further awarding any damages caused by such payments;

e. Awarding Plaintiffs and Class their consequential and incidental damages;

f. Awarding Plaintiffs and Class pre-judgment and post-judgment interest as provided by law;

Case No. 1:08-cv-01236-CBS-BNB   Document 122-5   filed 02/25/11   USDC Colorado   pg 14
Case 4:07-cv-01701   Document 1   Filed 10/04/2007   Page 13 of 24
of 25

g.  Awarding Plaintiffs and Class punitive damages as provided by law;

h.  Imposing a constructive trust and equitable lien against all money paid by the Class to and

wrongfully withheld by Defendant;

i.  Entering a Preliminary and Permanent Injunction prohibiting Defendant from engaging in the

illegal activities identified in this Complaint;

j.  Entering an Order that defendant abide by the terms of the spoliation letter attached to the

Complaint (**Exhibit E**);

k.  Enjoining Defendant from continuing to engage in the unlawful activities described herein,

specifically including any labeling of milk as organic when it is not;

l.  Awarding Plaintiffs and Class such other and further relief as may be just and proper.


## <u>COUNT II</u>
### Violations of Mo.R.S. 407.010 *et seq.*
### On Behalf of a Class of Missouri Consumers

79. Plaintiffs and Class hereby incorporate all preceding paragraphs as if fully stated herein.

80. Plaintiffs and Class purchased organic milk produced by Aurora.

81. This milk was purchased for personal or household use.

82. The milk constitutes a "good."

83. The milk purchased by Plaintiffs and Class contained the word "organic" in its name or

on its labeling.

84. Upon information and belief, the milk produced and labeled by Aurora was not organic

pursuant to the OFPA and accompanying regulations.

85. Similarly, if Aurora produced any milk that happened to be organic due to fortune, it had

no way to identify what milk was organic what milk was not.  Despite this, it represented

to Plaintiffs and Class that its milk was organic.

86. Aurora failed to disclose that its milk was not organic.  This was deceptive, unfair, and a material omission.

87. Plaintiffs and Class purchased the milk at a price that was much higher than the market price for non-organic milk.

88. The representations made by Defendant and described above constitute an unfair and deceptive business practice in violation of Missouri Revised Statute 407.010 *et seq.*

89. Defendant's unfair and deceptive practices were committed willfully and with full knowledge of the illegality of the acts.

90. As a result of Defendants' illegal practices, Plaintiffs and Class suffered ascertainable loss in that they:

    a.  Paid an inflated price for the milk they purchased;

    b.  Were tricked into buying "organic" milk that wasn't organic.

    c.  Exposed themselves, their family and friends to pesticides, hormones, antibiotics and other chemicals which were prohibited under organic standards; and

    d.  Were coerced into supporting a factory farm which treated animals inhumanely in violation of organic standards that requires otherwise.

91. Plaintiffs and Class seek relief as described in "Prayer for Relief- Counts II ."


## CLASS ALLEGATIONS FOR COUNT II

92. Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant Federal Rule of Civil Procedure 23. The claims in Count II are brought on behalf of a statewide class of consumers.

93. The class is defined and described as follows:

14

Case No. 1:08-cv-01236-CBS-BNB   Document 122-5   filed 02/25/11   USDC Colorado   pg 16
of 25
Case 4:07-cv-01701   Document 1   Filed 10/04/2007   Page 15 of 24

> **All Missouri residents who, since 2003, purchased milk which was
> produced by Aurora and contained, anywhere on the carton or
> container, the word "organic."**
>
> Excluded from the proposed class are Defendant and its officers, directors, and
> employees, as well as employees of any of defendant's subsidiaries, affiliates,
> successors or assignees.  Also excluded are the immediate family members of the
> above persons.  Also excluded is any trial judge who may preside over this case.

94. The requirements for maintaining this action as a class action are satisfied, as set forth
immediately below.

95. The proposed class is so numerous and so geographically dispersed that the individual
joinder of all absent class members is impracticable. While the exact number of absent
class members is unknown to Plaintiffs at this time, it is ascertainable by appropriate
discovery and Plaintiffs, upon information and belief, alleges that the proposed class may
include thousands of members. The requirement of numerosity is therefore satisfied.

96. Common questions of law or fact exist as to all proposed class members and predominate
over any questions which affect only individual members of the proposed class. These
common questions of law or fact include:

a. Whether Defendant failed to provide a total feed ration that included pasture;

b. Whether Defendant entered conventional dairy animals into organic milk production
before they completed one year of continuous organic management;

c. Whether Defendant labeled and represented milk as organically produced when such
milk was not produced and handled in accordance with the National Organic
Program regulations;

d. Whether Defendant failed to maintain adequate records under NOP regulations;

15

Case No. 1:08-cv-01236-CBS-BNB   Document 122-5   filed 02/25/11   USDC Colorado   pg 17
of 25
Case 4:07-cv-01701   Document 9-1   Filed 10/04/2007   Page 16 of 24

e.   Whether all milk produced by Aurora was tainted;

f.   Whether Defendant's milk was "organic."

g.   Whether Aurora misrepresented its milk to the retailers and customers who purchased it;

h.   Whether Plaintiffs and Class were damaged by paying organic prices for non-organic milk;

i.   Whether Plaintiffs and Class were injured;

j.   Whether Plaintiffs and Class are entitled to damages;

k.   Whether Defendant's conduct rises to the level of willfulness so as to justify punitive damages;

l.   Whether an injunction in necessary in order to prevent Aurora from continuing illegal activity.

97. The claims of the Plaintiffs are typical of the claims of the class.  Plaintiffs purchased milk produced by Aurora that was labeled organic.  Plaintiffs paid a higher price for the "organic" milk than she would have for regular milk.

98. Plaintiffs will fairly and adequately represent the interests of the members of the class. Plaintiffs have no interest adverse to the interests of the members of the class. Plaintiffs have retained competent attorneys who have experience in class action litigation.

99. A class action is a superior method for the fair and efficient adjudication of this controversy. The adjudication of a separate action by individual members of the class

Case No. 1:08-cv-01236-CBS-BNB   Document 122-5   filed 02/25/11   USDC Colorado   pg 18
of 25
Case 4:07-cv-01701   Document 21   Filed 10/04/2007   Page 17 of 24

would create a risk of a) inconsistent or varying adjudications with respect to individual members of the class; or b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.  Upon information and belief, Aurora has transacted business with thousands of individuals.

100.     Questions of law or fact common to the members of the class predominate over any questions affecting only individual members.  There is no special interest in the members of the class individually controlling the prosecution of separate actions; the damages sustained by individual class members is relatively small; and the expense and burden of individual litigation make it impossible for the class members individually to address the wrongs done to them.

101.     There will be no difficulty in managing this lawsuit as a class action.  Evidence relating to Aurora's alleged violations will be applicable to all members of the class, there are accepted means for notifying class members who purchased the milk in question, the class is comprised of people who purchased Defendant's "organic" milk in Missouri, and much of the evidence regarding the alleged violations has been chronicled by governmental and non-profit agencies.

**PRAYER FOR RELIEF – COUNT II**

Plaintiffs and Class request that the Court enter judgment in their favor and against Defendant as follows:

Case No. 1:08-cv-01236-CBS-BNB   Document 122-5   filed 02/25/11   USDC Colorado   pg 19
of 25
Case 4:07-cv-01701   Document 1   Filed 10/04/2007   Page 18 of 24

a.  Ordering that this action be maintained as a class action pursuant to this Court's

powers under Federal Rule of Civil Procedure 23(c) and defining the class as:

**All Missouri residents who, since 2003, purchased milk which was
produced by Aurora and contained, anywhere on the carton or container,
the word "organic."**

b.  Certifying Plaintiffs as class representatives and appointing Plaintiffs' counsel as

counsel for the Class;

c.  Awarding Plaintiffs and Class compensatory damages for their ascertainable losses,

to include any fees and interest illegally charged, and further awarding any damages

caused by such payments;

d.  Awarding Plaintiffs and Class their consequential and incidental damages;

e.  Awarding Plaintiffs and Class pre-judgment and post-judgment interest as provided

by law;

f.  Awarding Plaintiffs and Class punitive damages as provided by law;

g.  Imposing a constructive trust and equitable lien against all money paid by the Class to

and wrongfully withheld by Defendant;

h.  Awarding Plaintiffs and Class attorneys' fees and costs as provided by law;

i.  Entering a Preliminary and Permanent Injunction enjoining Defendant from

continuing to engage in the unlawful activities described herein, specifically

including any labeling of milk as organic when it is not;

j.  Entering an Order that defendant abide by the terms of the spoliation letter attached to

the Complaint (**Exhibit E**);

k.  Awarding Plaintiffs and Class such other and further relief as may be just and proper.

## COUNT III
### NEGLIGENCE
**On Behalf of a Class of Missouri Consumers**

102.    Plaintiffs and Class hereby incorporate all preceding paragraphs as if fully stated herein.

103.    Defendant had a duty to describe its milk accurately and in compliance with the requirements of the NOP.

104.    Defendant had a duty to make certain that its milk conformed to the representations made by Defendant.

105.    Defendant had a duty to provide all pertinent information to consumers regarding any possibility that Defendant's milk was not what it purported to be.

106.    Defendant breached its duty by indicating that its milk was "organic" when Defendant knew or should have known that the milk was not organic, or that, in the alternative, Defendant could not be certain what milk was organic and what milk was not.

107.    As a direct result of Defendant's negligence, Plaintiffs and Class suffered harm in that they:

a.  Paid an inflated price for the milk they purchased;

b.  Were tricked into buying "organic" milk that wasn't organic.

c.  Exposed themselves, their family and friends to pesticides, hormones, antibiotics and other chemicals which were prohibited under organic standards; and

d.  Were coerced into supporting a factory farm which treated animals inhumanely in violation of organic standards that requires otherwise.

108.    Defendant's actions were the direct and proximate cause of Plaintiff's damages.

Case No. 1:08-cv-01236-CBS-BNB   Document 122-5   filed 02/25/11   USDC Colorado   pg 21
of 25
Case 4:07-cv-01701   Document 91   Filed 10/04/2007   Page 20 of 24

## CLASS ALLEGATIONS FOR COUNT III

109.    Plaintiffs bring this action on behalf of themselves and all others similarly situated

pursuant Federal Rule of Civil Procedure 23. The claims in Count II are brought on

behalf of a statewide class of consumers.

110.    The class is defined and described as follows:

> **All Missouri residents who, since 2003, purchased milk which was produced by Aurora and contained, anywhere on the carton or container, the word "organic."**

> Excluded from the proposed class are Defendant and its officers, directors, and employees, as well as employees of any of defendant's subsidiaries, affiliates, successors or assignees.  Also excluded are the immediate family members of the above persons.  Also excluded is any trial judge who may preside over this case.

111.    The requirements for maintaining this action as a class action are satisfied, as set

forth immediately below.

112.    The proposed class is so numerous and so geographically dispersed that the

individual joinder of all absent class members is impracticable. While the exact number

of absent class members is unknown to Plaintiffs at this time, it is ascertainable by

appropriate discovery and Plaintiffs, upon information and belief, alleges that the

proposed class may include thousands of members. The requirement of numerosity is

therefore satisfied.

113.    Common questions of law or fact exist as to all proposed class members and

predominate over any questions which affect only individual members of the proposed

class. These common questions of law or fact include:

a.   Whether Defendant failed to provide a total feed ration that included pasture;

Case No. 1:08-cv-01236-CBS-BNB   Document 122-5   filed 02/25/11   USDC Colorado   pg 22
of 25
Case 4:07-cv-01701   Document 91   Filed 10/04/2007   Page 21 of 24

b.   Whether Defendant entered conventional dairy animals into organic milk production
     before they completed one year of continuous organic management;

c.   Whether Defendant labeled and represented milk as organically produced when such
     milk was not produced and handled in accordance with the National Organic
     Program regulations;

d.   Whether Defendant failed to maintain adequate records under NOP regulations;

e.   Whether all milk produced by Aurora was tainted;

f.   Whether Defendant's milk was "organic."

g.   Whether Aurora misrepresented its milk to the retailers and customers who purchased
     it;

h.   Whether Plaintiffs and Class were damaged by paying organic prices for non-organic
     milk;

i.   Whether Plaintiffs and Class were injured;

j.   Whether Plaintiffs and Class are entitled to damages;

k.   Whether Defendant's conduct rises to the level of willfulness so as to justify punitive
     damages;

l.   Whether an injunction in necessary in order to prevent Aurora from continuing illegal
     activity.

114.     The claims of the Plaintiffs are typical of the claims of the class.  Plaintiffs

purchased milk produced by Aurora that was labeled organic.  Plaintiffs paid a higher

price for the "organic" milk than she would have for regular milk.

115.     Plaintiffs will fairly and adequately represent the interests of the members of the

class. Plaintiffs have no interest adverse to the interests of the members of the class.

Plaintiffs have retained competent attorneys who have experience in class action

litigation.

116.     A class action is a superior method for the fair and efficient adjudication of this

controversy. The adjudication of a separate action by individual members of the class

would create a risk of a) inconsistent or varying adjudications with respect to individual

members of the class; or b) adjudications with respect to individual members of the class

which would as a practical matter be dispositive of the interests of the other members not

parties to the adjudications or substantially impair or impede their ability to protect their

interests.  Upon information and belief, Aurora has transacted business with thousands of

individuals.

117.     Questions of law or fact common to the members of the class predominate over

any questions affecting only individual members.  There is no special interest in the

members of the class individually controlling the prosecution of separate actions; the

damages sustained by individual class members is relatively small; and the expense and

burden of individual litigation make it impossible for the class members individually to

address the wrongs done to them.

118.     There will be no difficulty in managing this lawsuit as a class action.  Evidence

relating to Aurora's alleged violations will be applicable to all members of the class,

Case No. 1:08-cv-01236-CBS-BNB   Document 122-5   filed 02/25/11   USDC Colorado   pg 24
of 25
Case 4:07-cv-01701   Document 1   Filed 10/04/2007   Page 23 of 24

there are accepted means for notifying class members who purchased the milk in question, the class is comprised of people who purchased Defendant's "organic" milk in Missouri, and much of the evidence regarding the alleged violations has been chronicled by governmental and non-profit agencies.

### PRAYER FOR RELIEF- COUNT III

Plaintiffs and Class request that the Court enter judgment in their favor and against Defendant as follows:

1.  Ordering that this action be maintained as a class action pursuant to this Court's powers under Federal Rule of Civil Procedure 23(c) and defining the class as:

    **All Missouri residents who, since 2003, purchased milk which was produced by Aurora and contained, anywhere on the carton or container, the word "organic."**

    a.  Certifying Plaintiffs as class representatives and appointing Plaintiffs' counsel as counsel for the Class;

    b.  Awarding Plaintiffs and Class compensatory damages for their ascertainable losses, to include any fees and interest illegally charged, and further awarding any damages caused by such payments;

    c.  Awarding Plaintiffs and Class their consequential and incidental damages;

    d.  Awarding Plaintiffs and Class pre-judgment and post-judgment interest as provided by law;

    e.  Awarding Plaintiffs and Class punitive damages as provided by law;

f.  Imposing a constructive trust and equitable lien against all money paid by the Class to and wrongfully withheld by Defendant;

g.  Awarding Plaintiffs and Class attorneys' fees and costs as provided by law;

h.  Entering a Preliminary and Permanent Injunction enjoining Defendant from continuing to engage in the unlawful activities described herein, specifically including any labeling of milk as organic when it is not;

i.  Entering an Order that defendant abide by the terms of the spoliation letter attached to the Complaint (**Exhibit E**);

j.  Awarding Plaintiffs and Class such other and further relief as may be just and proper.


**SIMON PASSANANTE, P.C.**


By: ___/s/  John Campbell_____
            John Simon, # 4371
            Erich Vieth, #4608
            John Campbell, #543242
            701 Market Street, Suite 1450
            St. Louis, MO 63101
            314-241-2929
            Fax: 314-241-2029
            Email: jcampbell@simonpassanante.com