```
                                                                    1

 1                IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF COLORADO

 3       Case No. 08-cv-01236-CBS-BNB

 4       ═══════════════════════════════════════════════════════════

 5       ACE AMERICAN INSURANCE CORPORATION, et al.,

 6            Plaintiffs,

 7       vs.

 8       AURORA DAIRY CORPORATION,

 9            Defendant.

10       ═══════════════════════════════════════════════════════════

11              Proceedings before CRAIG B. SHAFFER, United States

12       Magistrate Judge, United States District Court for the

13       District of Colorado, commencing at 10:03 a.m., April 8,

14       2011, in the United States Courthouse, Denver, Colorado.

15       ═══════════════════════════════════════════════════════════

16              WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

17       ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...

18       ═══════════════════════════════════════════════════════════

19                                APPEARANCES

20              GARRICK   L.   GALLAGHER   and   BETHANY   K.   CULP,

21       Attorneys at Law, appearing for the plaintiffs.

22              LIVIA KISER, DANIEL WAKE, TROY OLSEN, MARK MESTER,

23       and JOEL A. PALMER, Attorneys at Law, appearing for the

24       ═══════════════════════════════════════════════════════════

25                               MOTION HEARING
```

2

1        APPEARANCES (continued)
2   defendants.
3             P R O C E E D I N G S
4        (Whereupon, the within electronically recorded
5   proceedings are herein transcribed, pursuant to order of
6   counsel.)
7             THE CLERK: All rise.  Court is in session.
8             THE COURT: Please have a seat.  There you go.
9             Okay, this is 08-cv-1236, ACE American Insurance
10  Corporation, et al., versus Aurora Organic Dairy.  I will
11  take appearances of counsel.
12            MS. CULP: Beth Culp for National Surety
13  Corporation.
14            THE COURT: Okay.
15            MS. CULP: Also American.
16            MR. GAHHAGHER: Garrick Gallagher for ACE American
17  and Indemnity Insurance Company of North America.
18            MR. PALMER: Joel Palmer for Nationwide.
19            MR. OLSEN: Troy Olsen for General Fire & Casualty.
20            THE COURT: Okay.
21            MR. MESTER: Mark Mester and Liv Kaiser for Aurora
22  Organic Dairy.
23            MR. WAKE: Your Honor, Daniel Wake for Aurora.
24            THE COURT: Okay.  I mean, do you want to say
25  something?

3

1            MS. KISER: He introduced me, so we're all good.
2            THE COURT: I know, but, I mean, if you wanted to
3    speak for yourself, I certainly want to afford you that
4    right.
5            MS. KISER: I appreciate that, Your Honor. I
6    certainly will do so at the appropriate time.
7            THE COURT: Yes, I wouldn't -- don't follow the
8    lead of these guys.
9            All right. We are here ostensibly to take up
10   Document 104, which is Plaintiffs/Counterclaim Defendant's
11   National Surety Corporation's and American Insurance
12   Company's Motion to Reopen, Oral Argument Requested. Then
13   I've read all of these responses and I read the replies, and
14   there seems to be a theme running through all of this that
15   you had a mediation scheduled in March and that I should sit
16   by and, at a minimum, should not do anything until the March
17   17th medication.
18           So why don't you tell me what happened on March
19   17th. I'm assuming you didn't resolve your differences, but
20   maybe I'm cynical.
21           MR. MESTER: Your Honor, if I may, I'm Mark Mester.
22   We did not resolve them but the mediation is continuing, we
23   did not not resolve them either. We had three days
24   scheduled in March before the mediator and it was a three-
25   way mediation, so it involved the carriers, obviously

4

1    Aurora, and also the retailer defendants who are defendants
2    in the underlying actions.
3         The discussions were productive.  I certainly
4    think progress was made.  We are in the process of putting
5    together an offer that will be made to the plaintiffs in the
6    next week or two, at which point, as I understand, they will
7    be making a counteroffer, and the mediator has agreed to
8    stay involved, and then to schedule in the near term another
9    session.  We did not do the third day because it was
10   concluded it would be more productive to get some additional
11   information, which is the other thing that we're doing,
12   we're providing additional information to the plaintiffs
13   with respect to a couple of the -- a couple of the retailer
14   defendants.  They felt they needed more information in order
15   to formulate a coherent demand, so we're doing some of those
16   things.  Sorry.
17        THE COURT: So what do you all think I should do?
18        MS. CULP: Well, Your Honor, it's our motion,
19   National Surety Corporation, and I think that we have
20   reached a consensus in our meeting this morning in terms of
21   what we'd like.  One, we would like you to reopen the case,
22   because it gives us incentive to do what we need to do,
23   which is essentially we need to work out an agreement going
24   past -- as you may recall, we have an interim funding
25   agreement, we have two carriers who've been paying, two who

5

1    have not, so we have an issue to resolve among ourselves,
2    hopefully, as to, one, whether there was a duty to defend;
3    two, how it should be shared.
4         We're hoping we can resolve that.  If we can't, we
5    will come to you -- our proposal is in 30 days with the
6    scheduling order -- for teeing up that discrete issue,
7    because that discrete issue is based on the original
8    complaint in the Mothershead action, which really has been
9    rendered moot by events, including the fact that there's a
10   new amended master class action complaint that was
11   theoretically drafted to conform with the Eight Circuit's
12   limited (inaudible).
13         THE COURT: Right, I read the Circuit decision,
14   right.
15         MS. CULP: Okay.  So that is our proposal.  That's
16   one issue that we have to work out is whether or not there
17   was any obligation to pay that $1.4 million, and, if so, how
18   it should have been shared among the carriers.
19         The other issue is a going forward issue, assuming
20   that despite everyone's best efforts we cannot resolve the
21   underlying litigation how the defense will be shared.  And
22   again, we've had preliminary discussions this morning.  I
23   think there was the -- the catchphrase of the morning was
24   "cautious optimism" that we'll be able to work that out.
25         THE COURT: I know, I read the -- I read the

1   newspapers, and the Congress seems to be, you know -- you
2   know, suffering from cautious optimism too --
3           MS. CULP: That's true.
4           THE COURT: -- and as a government employee, I'll
5   let you know on Monday how that all works out.  All I know
6   is I've been declared indispensable, which means on Monday
7   I'll be working for free, so it's probably a good thing that
8   you're here today.
9           MS. CULP: That's right, that's true, you and the
10  (inaudible).
11          THE COURT: Because I'm going to be very crabby on
12  Monday.
13          MS. CULP: Right, right.  The air traffic
14  controllers and federal court judges are there.
15          But that would be our proposal.
16          THE COURT: Well, no, the air traffic controllers
17  are apparently asleep, so that's --
18          MR. MESTER: They shouldn't get paid.
19          THE COURT: Whether they're indispensable or not
20  really is no longer an issue.
21          MS. CULP: But that's our proposal, Your Honor.
22  We'd like the case reopened, we'd like 30 days to either get
23  -- come back to you with what our agreements are, and maybe
24  even can dismiss this lawsuit, or with -- we'll tee up a
25  summary judgment on that discrete issue of the past defense

7

1   costs and, in all likelihood, holding in abeyance going
2   forward.
3              MR. MESTER: Your Honor, from our perspective, we
4   have no objection to the reopening, we agree that the 30
5   days make sense.  We're hopeful that we can in fact reach
6   agreement on each of the issues in this case.  Whether we
7   can settle the underlying action, I think that's a different
8   question, it's more complicated, but I'm more than cautious
9   about the (inaudible) -- which I guess means I'm not fit for
10  Congress -- that we can get it resolved, this issue, these
11  set of issues amongst ourselves, and I think the 30 days
12  makes sense.
13             I think there is some disagreement what the
14  schedule ought to be if we don't agree in 30 days, but
15  that's something we can address down the road.
16             THE COURT: We can talk about that at the
17  scheduling conference.
18             All right.  Well, then I take it, when I parse
19  through all of these comments, Document 104, which was the
20  motion to reopen, for all intents and purposes at this point
21  it's an unopposed motion.
22             MR. MESTER: Yes, Your Honor.
23             THE COURT: So based on that assessment and that
24  characterization, I'll go ahead and grant Document 104, the
25  motion is granted and the case is reopened.

8

1    Now, you tell me, I'm happy to set this in 30
2    days.  If you think you need a little bit more -- I mean,
3    it's sort of a catch-22.  If I give you more time, there's
4    the possibility that that time will used productively.  If
5    I give you more time, there's also a possibility that you'll
6    get just bogged down in extracurricular wrangling.  So tell
7    me where I draw that delicate balance.
8    	MR. MESTER: Your Honor, from our perspective, the
9    number I had in my head was 45, but if my colleagues on the
10   other side prefer 30, I don't object to that either.
11   	MS. CULP: No, sir, I'm ready to (inaudible).
12   	MR. MESTER: 35.
13   	THE COURT: He was thinking 45, which would get us
14   to about the week of May 23 or so.
15   	Okay, here's the problem I've got.  I will
16   basically be out of pocket from June 1st to June 14 so I
17   wanted to do this in May, and beyond that, it's really more
18   up to you.
19   	MS. CULP: Your Honor, I would -- I would like not
20   to have it that week because it's my 60th birthday, and I
21   plan to take that whole week off.
22   	THE COURT: Or that's a card you could play.  I
23   mean, I'll leave it up to you.
24   	MS. CULP: Could we do -- could we do 35 days, Your
25   Honor?

9

```
 1                    THE COURT: Whatever day you want.
 2                    MS. CULP: That's -- that's what we'd like.
 3                    THE COURT: You guys -- you guys pick.
 4                    MS. CULP: 35 is what we would like, Your Honor.
 5                    THE COURT: 35 days.  So now I have to do the math.
 6          So 35 days would get us to, by my rough calculation, May
 7          13th, and that's fine.  I've got a settlement conference the
 8          morning of May 13th, so we have to do it on a Friday
 9          afternoon, and I don't know if you folks want to do that.
10                    MR. MESTER: Your Honor, I have a -- excuse me.  I
11          have a conflict, I have a class action for American Honda
12          where I have and C and C in San Diego on the 13th.
13                    THE COURT: Okay.  Well, I can either move it
14          earlier that week or I can move it to the week of the 16th.
15          It doesn't matter to me, you tell me.
16                    MS. CULP: The week of the 16th would be fine.
17                    UNIDENTIFIED SPEAKER: That's fine.
18                    THE COURT: Okay.
19                    MR. MESTER: May 20th?
20                    UNIDENTIFIED SPEAKER: Or earlier in the week is
21          fine, too, whatever.
22                    THE COURT: I -- and again, where are all you --
23          and I should know this, and I apologize in advance.  Where
24          you all folks coming from?  I'm assuming most of you are not
25          local, is that fair?
```

AVERY/WOODS REPORTING SERVICE, INC.
455 SHERMAN STREET, SUITE 250, DENVER, CO  80203
303-825-6119      FAX 303-893-8305

                                                                10

1               MS. CULP: Arizona, Chicago, Minnesota.
2               THE COURT: Well, I mean, the reason I'm saying is
3     I've got a choice, it's really up to you.  I could have a --
4     I could do this at 1:30 on Wednesday the 18th, and that
5     might  allow most of you to fly in the morning and then get
6     out the same day.  Or I could do it the morning of the 19th,
7     which would require you to fly in the night before.  It's up
8     to you.
9               MR. MESTER: Your Honor, I have to be in New York
10    on the 17th, so that's my only -- and I don't get out until
11    the morning of the 18th.
12              THE COURT: So it sounds like you want to do it --
13    okay, well, I could still do it the afternoon of the 19th if
14    you want to do it in one day, and I suspect you probably --
15              MR. MESTER: That works for everybody.
16              THE COURT: Okay.  Well, why don't we set this --
17    Linda, we'll set this for 1:30 on Thursday, May 19.  I'll
18    ask the parties to provide me with a proposed scheduling
19    order by May 16th, because I know you've got something on
20    the 13th and you're going to want to probably prepare for
21    that, so just get me a proposed scheduling order by May 16,
22    and, at this point, that's probably as much as we can and
23    should do.
24              Now, obviously in your proposed scheduling order,
25    to the extent that you can identify areas where there is

11

1  agreement, that's great.  To the extent that there are areas
2  of disagreement, obviously flag those, because that's
3  probably (inaudible) to both of our discussion.  All right?
4       I think we're set unless somebody has something
5  else they want to talk about.
6       MR. MESTER:  Thank you, Your Honor.
7       THE COURT:  Absolutely, folks.  Good luck in your
8  discussions, and if you still have a problem, I'll see you
9  on the 19th.  Thank you all.
10      THE CLERK:  All rise.  Court is in recess.
11
12      (Whereupon, the within hearing was then in
13  conclusion at 10:14 a.m. on April 8, 2011.)
14
15      I certify that the foregoing is a correct
16  transcript, to the best of my knowledge and belief, from the
17  record of proceedings in the above-entitled matter.
18
19      /s/ Bonnie Nikolas                    June 09, 2011
20      Signature of Transcriber              Date
21
22
23
24
25